# EXHIBIT 14

D.     The prisoner is to be escorted to the release sally and released through the release sally port and exit the building through the visitor corridor that leads to the Facility Lobby.

    1.     If the prisoner does not have a ride from the Facility and he does not have enough money for the bus he will be given a non-collect phone call to find a ride or be given a bus token.

## 310.10     RELEASING PRISONER FUNDS

A.     All funds remaining in a prisoner's commissary account will be returned in the following manner.

    1.     Up to twenty dollars in cash will be returned to the prisoner upon his release from the facility, if the prisoner has this amount in his commissary account.

        a.     The remaining amount of money in the prisoner's account, if any, will be returned in the form of a check.

    2.     Verification of commissary balance will be made by corrections personnel prior to return of prisoner funds.  For prisoners in need of bus fare with less than $2.00 commissary balance, bus tokens may be issued.

        a.     Issue of bus tokens fare will be noted on the "Give Cash/Write Check" screen, the bus token slip filled out and the slip dropped in the safe.

    3.     The property sheet will be signed by the prisoner after all of his property and money are returned. The deputy returning the property and money will also sign the property sheet.

## 400.00     MEDICAL AND HEALTH SERVICES (ACA 2-5260) (MH-1,2,3) (NCCHC J-01).

Adequate medical and dental care shall be made available to all full-time inmates of the Davis County Jail. The Health Authority will assure that all medical services rendered meet a standard that ensures a reasonable effort has been made to provide adequate health care, and does not demonstrate indifference to the health and safety of prisoners.

**Revised 4/25/2017**

Health care is the sum of all action taken, preventative and therapeutic, to provide for the physical and mental well being of a jail population.  Health care, among other aspects, includes medical and dental services, personal hygiene, dietary and food services, and environmental situations.

**Deliberate Indifference** refers to the denial of actual medical treatment of an inmate's, "serious" medical needs.   A health condition will be considered, "serious"

A.      If it has been diagnosed by a physician as mandating treatment or

B.      If it is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.


**401.00          ADMINISTRATION**


**401.01          RESPONSIBLE HEALTH AUTHORITY (MH-3) (ACA 2-5260, 2-2563) (NCCHC J-01).**

The Davis County Jail has under contract a designated health authority responsible for the health care services of the jail.  The health authority's responsibility includes all levels of health care.  He assures quality and accessibility of all health services provided to inmates.

It will be the responsibility of the health authority and/or his associates to review the quality of health services in the jail and report any deficiencies to the jail administration.

The health services of the Davis County Jail will be monitored on an ongoing basis. Each member of the health services staff will report any problem or deviation from accepted procedure to the health authority.

The health authority will have the responsibility of reporting yearly to the Davis County Sheriff and the Davis County Commission on the status of the health care system in the Davis County Jail.

The health authority will coordinate the medical programs with the jail administration. The health authority will advise in all aspects of medical care and review annually the health services policy and procedure manual.

**401.02          ADMINISTRATIVE MEETINGS AND REPORTS (NCCHC J-03),(2-5262)**

Revised 4/25/2017

To assure the quality and effectiveness of the health care program, a statistical report will be prepared by the health authority and submitted to the jail administrator monthly. A consolidated report will be submitted annually to the jail administration and the Sheriff. The statistical report will include the following information:

A.   MEDICAL INFORMATION

    1.   Number of inmates refused for medical/mental reasons and referred back to the arresting agency.

    2.   Number of inmates examined by the jail physician.

    3.   Number of inmates requiring emergency care that were handled in the jail.

    4.   Number of inmates requiring emergency care from paramedics and or transportation to hospital.

    5.   Number of inmates transported to outside medical facilities.

    6.   Any diagnostic testing done in the jail.

        a.   Number of X-rays done in the jail.

        b.   Number of tests collected in the jail and sent to an outside laboratory.

        c.   Number of EKG's or cardiac enzyme tests done in the jail.

        d.   Number of ultrasounds done in the jail.

    7.   Number of surgical procedures performed in the jail.

    8.   Number of inmates diagnosed as having a contagious disease and indicates which disease is present.

B.   PHARMACEUTICAL

    1.   The number of prescriptions ordered by the jail physicians.

    2.   Number of controlled substances ordered by jail physicians.

C.    MENTAL HEALTH

1.    Number of inmates referred and requesting mental health counseling.

2.    Number of inmates seen by physician for mental health medication.

3.    Number of inmates referred for further counseling outside the facility.

D.    DENTAL

1.    Number of inmates requesting dental care.

2.    Number of inmates referred to follow-up care outside the facility.

3.    Number of extractions performed in the jail.

4.    Number of temporary fillings performed in the jail.
.
E.    OTHER INFORMATION

1.    Number of suicide attempts and information related to incident.

2.    Any death that occurs in the jail and information related to the incident.

F.    MONTHLY MEDICAL COSTS

1.    Pharmacy services.

2.    X-Ray services.

3.    Laboratory services.

4.    Equipment and supplies.

5.    Ambulance services.

6.    Hospital and ER services.

7.    Outside clinics and doctor's offices.

8.    Other.

**Revised 4/25/2017**

**401.03**      **POLICIES AND PROCEDURES** (UJS MH-1,2) (NCCHC J-04) (ACA 2-5263).

Policies and procedures governing health care, health services, administration and management of the Davis County Jail health care program will be developed and written.  Each policy, procedure and program is reviewed annually and revised as necessary under the direction of the health authority.  The policy and procedures will be available to health care staff on the X-Drive.  Medical staff will be responsible to follow the policies and procedures.

**401.04**      **INTERNAL QUALITY ASSURANCE** (UJS MH-1,2) (NCCHC J-05), (ACA 2-5263).

The health services of the Davis County Jail will be monitored on an ongoing basis. Each member of the health services staff will report any problem or deviation from accepted procedure to the health authority.

The health authority and/or his designee will review health service records at least monthly and meet with a quality assurance committee at least quarterly to discuss the results of the chart reviews.

A.     The quality assurance committee will consist of:

    1.     The Health Authority.

    2.     Representatives from:

       a.     Nursing

       b.     Mental Health

       c.     Dentistry

       d.     Jail administrative staff

B.     Committee members will review and report on the following items:

    1.     Written orders and procedures are being complied with.

    2.     Appropriate use of treatment plans.

**Revised 4/25/2017**

3.      Completeness and legibility of the medical record.

4.      Types of medications ordered.

5.      Implementation and countersigning of treatment protocols.

6.      Appropriate care of inmates.

7.      Budget review and planning.


**401.05      PEER REVIEW (UJS MH-3), (NCCHC J-06), (ACA 2-5263).**

To assure appropriate and quality health care to the inmates in the Davis County Jail, the health authority will make provisions for appropriate methods of monitoring all aspects of health care.

The jail will strive to provide medical, dental and mental care to meet the routine and emergency health care needs of inmates.


**401.06      SPECIAL NEEDS PATIENTS (UJS MH-24), (NCCHC J-07),(ACA 2-5275).**

Inmates appearing to have significant medical or psychiatric problems be referred to the medical staff for evaluation and/or follow up.  Consultation between the administration and medical staff will be necessary to ensure the following:

A.    Proper housing assignments:

1.      Inmates with a contagious medical condition will be housed in an isolation cell to prevent spread of a communicable disease.

2.      Inmates found to be suicidal and requiring a close watch may be housed in Medical until cleared by a mental health worker.

3.      Any inmate with a significant medical need may be housed in Medical at the discretion of the nurse on duty and health authority. This inmate will be monitored by jail medical staff and be seen by a physician or his designee at the next scheduled sick call.

B.    Program assignments:

1.      Recreation will be available for special needs patients to the same extent as general population inmates unless the health services staff recommends some restrictions.  All such restrictions must be documented and reviewed periodically.  Inmates receiving behavior modifying medications or medications subject to abuse, including controlled medications will not be permitted to participate in inmate worker programs unless permitted by the health authority.

C.      Disciplinary measures:

1.      Rules and regulations apply to all inmates, therefore, any infraction of these rules and regulations by any inmate subjects them to discipline. The medical staff shall be consulted when considering disciplinary action against special needs patients.

D.      Transfers to other institutions.

1.      Health services staff will be informed prior to the time of transfer so they may:

a.      Evaluate the inmate for medication need before or during the transfer.

b.      Discuss, with transporting personnel, special considerations that may have to be taken, such as, seizure precautions, violent behavior and any special health considerations to protect the health and safety of the inmate and personnel.

c.      Health staff will provide instructions and summary of care for the receiving institution.

### 401.07      SHARING OF INFORMATION (UJS MH-28), (NCCHC J-07), (ACA 2-5292).

To provide a vehicle for sharing information between health care providers and the security staff when such information is relevant to an inmate's health and well being, the safety and security of inmates and staff, or the health and well being of the staff. Medical and booking records will be filed separately.

A.      The medical staff may have access to information contained in the inmate's

booking record when the physician believes this information may be relevant to the inmate's health and course of treatment.

B.     Security staff will be apprised of certain medical and mental conditions of inmates which would aid the deputy in responding should a crisis occur.  The deputy will not have access to the inmate's medical record.   Deputies will be informed by the health staff of appropriate information including:

　　　1.     Diabetic conditions

　　　2.     Epilepsy

　　　3.     Suicidal ideation

　　　4.     Special medications

　　　5.     Special diets

　　　6.     Contagious diseases

　　　7.     Special Medical Equipment and or needs

　　　8.     Pregnancy

　　　9.      Any other condition that affects housing conditions, security or transportation needs

**401.08**     **NOTIFICATION OF NEXT OF KIN** (UJS MH-26), (NCCHC J-09), (ACA 2-5286).

In the event an inmate receives a serious injury, becomes seriously ill or has died while incarcerated at the jail, the jail commander and/or jail administration will be notified immediately.  A member of the jail administration will be responsible for the notification of next of kin or legal guardian.

A.     Serious Illness or Injury

　　　1.     If an inmate receives a serious illness or injury and the medical staff has referred the inmate to an outside agency for diagnosis, treatment or hospitalization and it is necessary to transport the inmate to an outside facility, the nursing staff will notify the shift sergeant and/or the jail

administration of the problem.

    2.    The method in which the next of kin are notified will be determined by the jail administration after evaluation of the incident; taking into consideration the possible security risk while the inmate is outside the secure facility.

    3.    At the time of admission to the Davis County Jail, an inmate is requested to give the name and phone number of the person he wishes to be contacted in case of emergency.

B.    Death

    1.    In the event that an inmate has expired within the security perimeters of the jail, jail administration will notify the next of kin.

    2.    Personnel discovering the body will:

        a.    Request all inmates in the area be locked down and immediately notify:

            1)    Health services personnel

            2)    Shift supervisor

            3)    Jail administration

    3.    Secure the area and remain with the body.

    4.    The shift supervisor or jail administration will notify the Davis County Sheriff's Detective Division and will:

        a.    Relinquish the body and area to the detectives when they arrive.

        b.    The Detective Division will:

            1)    Notify the medical examiner

            2)    Conduct the investigation

    5.    Jail administration will notify the next of kin in a timely manner.

    6.    Notification of next of kin will be documented, to include:

**Revised 4/25/2017**

a.      Date

b.      Time

c.      Person notified

d.      Person making notification

e.      Manner in which notification was made.

**401.09      NOTIFICATION OF MEDICAL EXAMINER/FORENSIC INFORMATION (NCCHC J-10).**

To assure that all deaths of inmates within or under legal custody of the Davis County Jail will be properly investigated and a post-mortem examination be performed to determine cause of death.

State law requires that an autopsy be conducted on all deaths occurring in any correctional institution. (State Code 26-20-7, 26-20-8, 26-20-9).

A.      If an apparent death is discovered within the jail security perimeter, the health services staff and/or the shift supervisor will be notified.

B.      The health services staff will appraise the situation and if no vital signs are evident, the shift sergeant will be notified to contact the paramedics and the Sheriff's Detective Division.

C.      The shift commander staff will secure the area until the arrival of the paramedics and the Sheriff's Detective Division.

D.      The Detective Division will:

1.      Preserve the scene

2.      Conduct the investigation

3.      Notify the medical examiner

4.      Notify the county attorney on-call

**401.10**      **DISASTER PLAN** (NCCHC J-12), (ACA 2-5266).

To assure health services is an intricate part of the overall jail disaster plan, the health authority and jail administrator will be responsible to provide an operational procedure for the timely and orderly delivery of medical services in the event of a natural or man-made disaster.

The health services disaster plan will be incorporated in the overall contingency plan (Refer to 232.06).

The health services unit plan will include, but not be limited to, the following:

A.    Alert Systems

B.    Communications

    1.    Health services staff assignments

C.    Evacuation

D.    Safety and security of the health services unit

E.    Triage

F.    **PROCEDURE**

    1.    Alert systems

        a.    Observation, upon detection by jail staff, immediate notification will be made to the control room staff member by:

            1)    Telephone

            2)    Radio

            3)    Intercom

    2.    The control room deputy will then follow the guidelines outlined in the jail disaster plan (refer to 232.04)

    3.    Communications

**Revised 4/25/2017**

a.   The health services medical section will:

   1)   Respond to emergency requests.

   2)   Establish triage area for incoming emergency medical units, paramedics and ambulances.

   3)   Maintain the medical section if required.

   4)   Prepare for evacuation.

   5)   Notify health services administration by phone or pager if additional staff is required.

4.   Evacuation

   a.   Evacuate all inmates in an orderly and controlled manner to the triage area.

   b.   Inmates and medical personnel will move to area furthest from danger as specified by the command post.

   c.   Medical staff will offer assistance to inmates in the medical unit to expedite their arrival at the evacuation area.

5.   Safety and Security of the Health Services Unit

   a.   The health services unit is considered a high risk security area due to presence of:

   1)   Medications

   2)   Medical Supplies

   3)   Equipment

   4)   Problem inmates

      a)   Medical

      b)   Mental

Revised 4/25/2017

b.     Emergency situations may create confusion, anxiety and possibly trauma.  Within the health services unit the health service staff will:

   1)     Lockdown and secure their areas to prevent theft of:

      a)     Medication

      b)     Supplies

      c)     Equipment

   2)     Maintain a close observation of the inmates in the units for:

      a)     Emotional reactions

      b)     Aggravation of medical problems

   3)     Exhibit a calm professional attitude to help stabilize inmates.

6.     Triage: (The sorting or selecting of patients to determine the priority of care to be rendered to each.)

   a.     The health services unit will contact the tactical command post for authorization to establish a triage area.  When authorized, designated medical personnel will establish the triage area and will have available emergency medical equipment.

   b.     Triage all inmates brought to the area as follows:

      1)     Highest priority - Must be transported first and treated immediately.

      2)     Second priority - Transportation and treatment may be deferred.

      3)     Lowest priority - Transported or treated last, obviously dead.

## 401.11     ENVIRONMENTAL INSPECTIONS (UJS MH-6), (NCCHC J-13), (ACA 2-5264).

To assure a safe and sanitary environment for inmates and staff in the Davis County

Jail, health and sanitation inspections will be conducted in conjunction with safety and security inspections on a continuing basis.  (Refer to 804.00).

Health services unit shall be cleaned and observed daily by health services staff.

The health authority will review the written inspection reports.

## 402.00      PERSONNEL

## 402.01      LICENSURE (UJS MH-3), (NCCHC J-15), (ACA 2-5270).

Health care personnel providing services to the inmates in the Davis County Jail will be currently licensed and/or certified to perform their duties.

A.     To provide verification, copies of license or certificates will be on file with the Davis County Jail Commander.

B.     Copies of licenses and/or certificates will be retained and displayed in the health services unit.

C.     All health care personnel, working in the jail are required to meet the same certification and licensure requirements as do health care professionals who provide services to persons not incarcerated.

## 402.02      JOB DESCRIPTIONS (UJS MH-8), (NCCHC J-16), (ACA 2-5270).

To assure that job descriptions, approved by the health authority, are written for all personnel providing health care in the Davis County Jail.

A job description will be written defining the duties and responsibilities of each member of the health services staff.

A.     The job descriptions should be approved by the health authority and the Sheriff's Office and the County Department of Personnel Management.

B.     Each job description will be reviewed yearly and revised if needed.  They will be kept on file with the jail commander.

**Revised 4/25/2017**

**402.03**        **LIAISON STAFF** **(UJS MH-8), (NCCHC J-17), (ACA 2-5271).**

To provide health personnel and jail personnel trained in limited aspects of health care which does not require qualified health personnel. The use of Interns, students and correctional deputies may be assigned to work in the medical area of the jail and they will be supervised by actual health care staff.

A.     Interns, students and correctional deputies assigned to medical services, who are certified in first aid and CPR or as an EMT will function under the responsibility of the health authority.  They will initiate and/or assist in inmate care requiring these skills.

B.     Correctional deputies in the intake area will conduct receiving screening in the absence of health services screening personnel.  They will:

   1.     Document the screening on the computer generated medical screening form (DCJ Form 401).

   2.     Refer an inmate with health problems, medical and/or mental, to the health services staff immediately.


**402.04**        **STAFFING LEVELS** **(UJS MH-7), (NCCHC J-18), (ACA 2-5268).**

To provide personnel for the performance of health care services in the Davis County Jail.

The health authority will have the responsibility of reporting to the jail administration the status of health care personnel functioning under his/her supervision.

The jail administration, in cooperation with the health authority, shall be responsible for staffing the jail health services unit with licensed health certified personnel.

The jail health services unit consists of, but is not limited to, the following personnel:

A.     MEDICAL

   1.     One (1) Health authority, physician (contract)

   2.     One (1) Medical supervisor, RN

   3.     Twelve (12) full time RN's and (2) part time RN's

**Revised 4/25/2017**

    4.      One (1) Medical Secretary

B.    MENTAL HEALTH

    1.      One (2) Licensed Clinical Social Worker

    2.      One (1) Psychiatrist or mid-level practitioner under the direction of health authority

    3.      On call crisis worker

C.    CORRECTIONAL

Correctional deputies certified in first aid and CPR or as EMTs will function under the responsibility of the health authority or his designee.

D.    MEDICAL STAFF RESPONSIBILITIES

    1.      Performing emergency care

    2.      Screening incoming inmates

    3.      Providing access to a physician

    4.      Observing inmates in restricted areas

    5.      Passing of medication as prescribed

    6.      Conducting physical examinations

    7.      Seeing patients in clinics

    8.      Reviewing policies, procedures and protocols

    9.      Monitoring medical records

    10.    Holding staff and in service meetings

    11.    Reviewing results of laboratory and other diagnostic tests

    12.    Developing individual treatment plan

**Revised 4/25/2017**

13.     Developing and updating patient care notices

14.     Prisoner blood draws for drugs and alcohol in intake

**402.05        TRAINING FOR HEALTH CARE PROVIDERS (UJS MH-22), (NCCHC J-19), (ACA 2-5271).**

The Davis County health authority in cooperation with the jail administration will provide training in orientation and in the policies and procedures manual to ensure their understanding and to achieve proper implementation of their purpose.

A.     ORIENTATION OF PERSONNEL

Newly hired personnel will attend orientation classes, including but not limited to:

1.     Learning the chain of command

2.     Touring the jail

3.     Introduction to all units of the jail

4.     Orientation to duties on all shifts

5.     Davis County Personnel Orientation

6.     Baseline and annual TB testing

B.     TRAINING

1.     CPR certification classes will be given yearly.

2.     A minimum of 4 hours annually of training in security procedures will be required for medical staff.  Areas of training may include the following:

a.     Use of force

b.     Approaching subjects

c.     Inmate management

d.     Inmate discipline procedures

**Revised 4/25/2017**

3.      A program of continuing training is provided to the health services personnel.  The classes are based on the requirements of health care in the jail and may include the following:

      a.      Staff and inmate relations

      b.      Interpersonal communications

      c.      Stress management

      d.      Discretionary decision making

      e.      Incident reports

      f.      Spillman training

## 402.06      CPR TRAINING (UJS MH-22), (NCCHC J-21), (ACA 2-5271).

All jail staff members shall be trained in basic emergency first aid procedures.

A.      It shall be mandatory for all line staff and medical personnel to be certified in Cardiopulmonary Resuscitation (CPR).

1.      All line staff shall maintain current CPR certification annually.

## 402.07      MEDICATION ADMINISTRATION  (UJS MH-20), (NCCHC J-22), (ACA 2-5272).

Medication administration is the act in which a single dose of an identified drug is given to a patient.

Persons administering medications do so under the direct supervision of the health authority and have received training appropriate to their assignment. They are accountable for administering medications according to orders, and recording the administration of medication in a manner on a form approved by the responsible physician.

A system of controls is established to assure administration of medication to inmates in the Davis County Jail.

Revised 4/25/2017

Training will be conducted or approved by the jail health authority and jail administration or their designees.

A.      Medication administration training to include, but not be limited to, the following:

      1.      Medication procedure

            a.      Dispensing by the pharmacist

            b.      Distribution

            c.      Administration

            d.      Accountability

            e.      Security of medications and supplies

            f.      Inventories

            g.      Documentation

            h.      Accountability

            I.      Stop orders

            j.      Formulary

**402.08      OPEN**

**402.09      INMATE WORKERS (NCCHC J-24), (ACA 2-5272).**

Inmates incarcerated in the Davis County Jail will not be authorized to perform any duties related to health services including:

A.      Performing direct patient care services

B.      Schedule health care appointments

C.      Determine access of other inmates to health care services

D.      Handle or have access to surgical instruments, syringes, needles, medications or

health records

E.      Operate medical equipment

F.      Inmates are not allowed in the Med. Prep. Room.

G.      Janitorial services of the treatment rooms, exam rooms, nurse's station, and doctor's offices will be the responsibility of the health services staff and jail custodians.

## 403.00      SUPPORT SERVICES

## 403.01      FIRST AID KITS (UJS MH-21), (NCCHC J-25), (ACA 2-5265).

To assure medical supplies are immediately accessible for the purpose of providing first aid in all areas of the jail.

A.      First aid kits, approved by the health authority, shall be available in each of the pod control rooms, Intake, and the Work Center.

B.      First aid kits shall be large enough to accommodate the proper contents for Davis County Corrections Department, as determined by the medical authority, and shall contain standard emergency response items, including oxygen treatment equipment.

   1.   The contents of the first aid kits shall be arranged so that each desired package can be located quickly.

   2.   Materials in the first aid kits shall be wrapped so that unused portions remain clean.

   3.   Emergency medications shall only be included in first aid kits secured in the Medical offices.

C.      Inspections and replenishment of the kit will be conducted on a monthly basis and/or as needed.

   1.   Inspections will be made by a member of the health services staff and replenished from health services stock supply.

   2.   The monthly inspection will be documented with copies routed to health authority.

3.      The medical packs shall be kept sealed until used.

a.      After the medical pack has been opened for use, the "Emergency Kit" - inventory sheet shall be adjusted to reflect what was used by the staff member opening and using the equipment. This form shall be forwarded to the nursing staff with the opened pack for restocking and sealing.

**403.02      EQUIPMENT, SUPPLIES AND PUBLICATIONS (UJS MH-17), (NCCHC J-26), ACA (2-5264).**

To provide the means for the delivery of health care to the inmates in the Davis County Jail.

A.      Jail administration, in cooperation with the health authority, shall be responsible for the provision of all equipment, supplies, materials and publications adequate for the delivery of health care.  Basic items generally include the following:

1.      Hand washing facility

2.      Examining table

3.      A ceiling exam light or Goose-neck light

4.      Weight scale

5.      Thermometers

6.      Blood pressure cuffs

7.      Stethoscope

8.      Ophthalmoscope

9.      Otoscope

10.     Transportation equipment (e.g., wheelchair and stretcher)

11.     Current medical reference and drug information textbooks

**Revised 4/25/2017**

12.    Obstetrical-gynecological text

B.    Maintain inventory lists of all equipment, supplies, and publications purchased for health services.

## 403.03      CLINIC SPACE (UJS MH-3), (NCCHC J-27), (ACA 2-5264).

To provide sufficient space for the maintenance of an adequate health care delivery system in the Davis County Jail.  Space will be provided to ensure examination and treatment with professional consideration for dignity and feelings of the inmates/patients.

Areas available will include:

A.    Examination and treatment rooms large enough to accommodate the necessary equipment for medical, dental, and mental health care provided in the facility.

B.    Sufficient space for pharmaceutical, medical supplies, mobile emergency equipment, and for the storage of medical records.  Office space with administrative files, writing desks, and shelves for publications.

C.    Private interviewing space with desks, chairs, and lockable file space for mental health services.

D.    A waiting area with seats, access to drinking water and toilet facilities.

## 403.04      LABORATORY AND DIAGNOSTIC SERVICES (NCCHC J-28) (ACA 2-5264).

To assure comprehensive health care for inmates in the Davis County Jail by providing access to outside treatment agencies and on-site diagnostic testing.

Consultant and diagnostic services from community providers will be available to the inmates when deemed necessary by the health authority.

A.    Transportation

1.    Inmates will be transported to the outside medical provider by the transportation department.

**Revised 4/25/2017**

       a.      In the absence of the transportation department, the shift supervisor will be responsible for obtaining transportation for these inmates.

    2.      The type of security needed for high risk inmates will be decided on an individual basis by the jail administration with recommendation concerning the inmate's medical condition from the health services unit.

    3.      Medical services personnel will provide pertinent health information to the consultant services provider.

B.      Limited on-site diagnostic testing will be provided for the inmates and will include multiple test dip-stick urinalysis, finger-stick blood glucose test, peak flow testing, stool blood testing material, cardiac enzyme test, A1C, PT/INR, Pregnancy testing, influenza testing, and strep throat.

## 403.05      HOSPITAL CARE (UJS MH-5), (NCCHC J-29), (ACA 2-5269).

To provide inpatient hospital care for medical and psychiatric patients with conditions warranting such care.

A.      Inmates requiring hospitalization will be transported to the hospital and remain there until cleared for jail by the attending physician.

B.      Inmates will be transported by jail staff, Federal Marshal and/or ambulance depending on the inmate's condition and incarceration status.

C.      Inmates will be guarded by Davis County Corrections Deputies 24 hours a day at the hospital, unless specified otherwise by the jail administration.

D.      A summary of the inmate's condition, current medications and treatment in jail will accompany the inmate.

## 403.06      PHARMACEUTICAL CONTROLS AND RESTRICTIONS (UJS MH-20), (NCCHC J-30), (ACA 2-5288).

A.      To protect the health of the inmates in the Davis County Jail through proper administration of pharmaceuticals.

    1.      Specific guidelines for the acquisition, stock maintenance, distribution and accounting of all pharmaceuticals will be maintained.

2. The jail will comply with all applicable state and federal regulations regarding prescribing, dispensing, administering, and procuring pharmaceuticals.

3. A system of control is established to prevent pilferage and maintain accountability of all medications used in the facility.

4. Quarterly pharmacy inspections will be conducted by contracting pharmacist with a written report detailing violations or concerns to the health services administrator and jail administration.

B. The Davis County Jail will provide pharmaceutical sufficient to meet the needs of the inmates. There will be mandatory adherence to jail and pharmacy security regulations. The health services unit will utilize a formulary for those medications used in the Davis County Jail.

1. The formulary will list all drugs by:

   a. Trade name

   b. Generic name

   c. Therapeutic category

2. Where appropriate, dispensing information will be included with the drug listing.

3. The formulary will include a specific list of:

   a. Banned drugs

   b. Controlled substances

   c. Restricted drugs

   d. Non-prescription (over-the-counter drugs)

   e. The formulary will be revised as necessary to provide for the addition of newly discovered drugs and the deletion of obsolete drugs.

4. All drugs will be ordered from a reputable pharmacy supply house or local

pharmacy as specified by the health authority or his designee and be authorized and ordered by the medical staff.

5. Prescription medication which will be ordered only by the attending physician, psychiatrist or dentist will:

   a. Include "Stop Orders" for behavior modifying medications, drugs subject to abuse and all drugs which could have detrimental effects if given over a specified amount of time.

   b. Be re-ordered only upon re-evaluation of the inmate.

      1) The physician will:

         a) Review the chart and\or examine the inmate.

         b) Renew the medication as indicated.

6. Maintain an inventory of Controlled Substance Act drugs and pharmaceutical equipment.

   a. All unused drugs will be disposed of by the crime lab or (2) two medical staff members with proper documentation.

   b. Maximum security storage will be reviewed.

7. An emergency medication kit will be maintained in the health services unit.

   a. It will be inventoried and restocked weekly and\or as needed by the contracted pharmacist in cooperation with the nursing staff and health authority.

   b. It will contain emergency drugs as designated by the health authority and the pharmacist.

      1) Controlled substances will be contained in a locked area separate from the other emergency medications in a locked wall narcotic safe.

      2) Drugs used from this supply will be documented.

      3) Access to the emergency medication kit will be allowed only

to the RN's and paramedics.  A detailed log will be made and maintained documenting all accesses to the narcotics safe.

8.    NARCOTIC SAFE PROCEDURES;

In order for a paramedic to receive medications from the jail nursing staff, he/she must bring to medical the following; **1) the entire narcotic medication pouch** from the paramedic kit, **2) An incident #** or Case # for the medication being replaced (even if the medication is simply expired and being replaced) **3) any unused portion** of the medication to be destroyed, **4) the broken seal** from the paramedic narcotic pouch, (if the paramedic does not bring the broken seal, it must be documented on their incident report as to why).
These are the steps that must be followed in order for a medication to be distributed to the Paramedic:

a.    The paramedic will bring the above items to the nurse on duty.

b.    The nurse will open the Narcotic safe on the wall and write down the seal # removed on the SCHEDULED NARCOTIC CABINET RECORD form.

c.    The nurse will check the appropriate box according to the medication being removed and write the quantity removed.

d.    The nurse will also document on the yellow narcotic count card what was removed and how many are remaining.  The paramedic does not need to sign the yellow card.  The Incident # will be written on the yellow card next to the patient's name.

e.    The paramedic will place the new medication into the paramedic narcotic pouch and the nurse and paramedic will place a new red seal on the pouch before it leaves the medical unit.  No narcotic will be allowed to leave the jail medical unit in the pocket of a paramedic; it must be placed in their pack and sealed first.

f.    The nurse and the paramedic will then perform an official narcotic count of everything in the safe before it is then locked and resealed. The nurse will then write down the seal number that is replaced on the wall safe on the SCHEDULED NARCOTIC CABINET RECORD form.

**Revised 4/25/2017**

g.      Any unused or expired narcotic brought in by a paramedic will be destroyed immediately by the nurse and the paramedic in the medical unit sink and be documented on the SCHEDULED NARCOTIC CABINET RECORD form.  **Do not place any expired or partially used narcotics back into the safe.**

h.      The paramedic will then fill out the patient's name and Incident # on the SCHEDULED NARCOTIC CABINET RECORD form.  Both the nurse and paramedic will then sign and place their ID# on the form. If the medication is simply expired and wasted, the paramedic will check the box that states it is expired and under patients name will place the paramedic pack number and still list the Incident number on the form.

### 403.08      MEDICATION DISTRIBUTION AND ADMINISTRATION (UJS MH-18), (NCCHC J-30), (ACA 2-5289).

Medication rounds will be conducted by Facility Medical personnel.

A.      Prescribed medications will be contained in an individual and properly labeled prescription container and will be placed in the designated area in the medication preparation room.

B.      Over-the-counter medications will be placed in labeled containers in the medication preparation room and given at the discretion of the nurse.

C.      Medications will be passed to each housing unit. The nurse conducting med pass will be accompanied by a deputy. As the nurse and the deputy enter the unit, medication rounds will be announced by the pod control staff.  The inmate will come to the front of the unit or cell with a cup of water and his ID card to receive the medication.

1.      The name of the inmate will be checked to assure proper identification before administration of the medication.

2.      The medications will be administered as indicated on the medication order.

3.      The deputy will direct the inmate to open his mouth to ensure that the inmate swallowed his medication.

**Revised 4/25/2017**

D.    Medications will be administered according to the "5 R's" of proper medication administration:

   1.    Right patient.

   2.    Right medication.

   3.    Right dose.

   4.    Right time.

   5.    Right route.

E.    Instructions and warnings written on the label by the pharmacist will be taken into account by the nurse.

F.    All medications not taken by the inmate will remain in the prescription container and the lack of response will be documented.

G.    Nurses will routinely document all medications delivered at med pass.

H.    Medications will be dispensed one dose at a time with the exception of specific medications designated by the health authority to be allowed to be held by the inmate. "Keep on person (KOP)" medications will be designated by a signed KOP contract.  To include but not limited to:

   1.    Asthma inhalers (such as Albuterol)

   2.    Nitroglycerin (3 tablets).

I.    Restricted medications will be crushed prior to administration. Including:

   1.    All controlled substances, unless contraindicated by the manufacturer.

   2.    Muscle relaxants.

   3.    Pain medications and analgesics.

   4.    Medications that are subject to high abuse.

J.    All medications, with the exception of those medications which the inmate is allowed to retain in his possession, will be taken by the inmate in the presence of

Revised 4/25/2017

the issuing jail staff member.

K.   Inmate workers and/or other inmates <u>will never handle or administer</u> any medication.

L.   After the medication has been taken, the deputy will check the inside of the mouth, under the tongue and lips.

    1.   Any inmate found "cheeking" medications or with medication of any kind in his/her possession will be subject to disciplinary action. (Refer to Inmate disciplinary infractions and procedures.)

    2.   Any inmate found with medication of any kind in his/her possession, will be subject to disciplinary action.

        a.   Inmates caught selling, trading or otherwise abusing any medical supplies or equipment issued by the jail will be subject to disciplinary action.

        b.   An incident report will be required and documented on the inmate's progress report.

        c.   Medication will be stopped until reviewed by the physician.

M.   Inmates will not be forced to take their prescribed medicines.

    1.   The doctor should be notified as soon as possible if this situation occurs in life threatening instances.

N.   Inmates pretending to have injuries or illnesses, or otherwise deliberately abusing themselves, will be subject to disciplinary action.

    1.   "Credibility" will be determined by medical and/or mental health personnel.

O.   Inmates found falsifying tests necessary for proper medical diagnostic evaluations or treatment will be subject to disciplinary action.

P.   The nurse will observe for any reaction or side effects from medication and will:

    1.   Immediately discontinue the medication.

    2.   Document findings in the inmate's chart for evaluation by the physician,

psychiatrist or dentist.

Q.    If severe side effects are noted the nurse will:

1.    Immediately discontinue the medication.

2.    Notify prescribing physicians immediately.

**403.09        COMMON MEDICAL TRANSLATIONS**

| | | |
|---|---|---|
| qd | - | Every day/daily/once a day |
| bid | - | Twice daily |
| tid | - | Three times daily |
| qid | - | Four times daily |
| prn | - | As necessary |
| gtts | - | Drops |
| X | - | Times |
| tab | - | Tablet |
| cap | - | Capsule |
| a.c. | - | Before meals |
| p.c. | - | After meals |
| hs | - | Bedtime or hour of sleep |
| stat | - | Immediately |
| p.o. | - | by mouth |
| n.p.o. | - | nothing by mouth |
| c | - | With |
| s | - | Without |

**403.10        PHARMACEUTICAL SECURE STORAGE (UJS MH-20), (NCCHC J-30), (ACA 2-5288).**

A system of controls is established to prevent pilferage and maintain accountability of all medications used in the facility.

A.    All medicines shall be placed and locked in the medicine cabinet in the infirmary. This includes common non-prescription drugs as aspirin, antacids, laxatives, ointments, cold tablets,  etc.

1.    All scheduled controlled narcotics are to be locked in the medication cart or the narcotic safe in the infirmary.

**Revised 4/25/2017**

      a.     Only the jail RN's will have authorization to enter this safe.

      b.     At no time will inmates be allowed access into the medication preparation area of the jail.

## 403.11    SHARPS AND NEEDLE COUNT

A.    A supply of syringes is maintained on each medication cart, in each exam room treatment cart and in the pharmacy. Each supply is inventoried daily by a nurse. The main supply of syringes and needles is located in a secure supply closet in the health services clinic area. The main supply is inventoried and restocked weekly by a member of the health services staff.

## 403.12    ACCIDENTAL SHARPS EXPOSURE (to be added at a later date)

## 404.00    CARE AND TREATMENT

## 405.00    REGULAR MEDICAL SERVICES

## 405.01    RECEIVING SCREENING (UJS MH-12), (NCCHC J-31), (ACA 2-5273).

Intake screening will be performed on all inmates presented for incarceration at the Davis County Jail.  Screening prevents inmates who pose a health or safety threat to themselves or others from being admitted to the facility's general population.

Observation of inmates during the screening may prevent suicide, detect symptoms of drug withdrawals, recognize the signs of trauma the inmate may have received, and if he requires medical attention that would make that inmate medically unacceptable (Section 301.02.B).

A.    Receiving screening will be conducted during the initial booking process at the Davis County Jail and will be performed by medical staff and/or health trained correctional staff members.  This screening will include:

    1.    Initial screening for emergency medical or psychiatric needs.

    2.    Visual inspection for signs of trauma and/or wounds, infections, infestations, indications of drug abuse, and skin conditions.

    3.    Documenting medical history

    4.    Documenting inmate's behavior and appearance.

**Revised 4/25/2017**

B.   Receiving screening will be documented on the medical screening form (DCJ Form 401).

C.   Inmates posing immediate health or safety threats to themselves or others are treated as follows:

1.   Any inmate with an obvious life threatening condition and/or injury or disease not treated prior to entrance to the jail will be refused admission to the jail.

2.   Inmates who are unconscious will be refused admission to the jail.

3.   Inmates who are having convulsions will be refused admission to the jail.

a.   If the arresting officer reports that the inmate has had convulsions since he has encountered him that too is an indication to have the inmate medically cleared before admission to the jail.  This is true even if the inmate seems fine now.

D.   Inmates with any significant external bleeding will be refused admission to the jail.  This is a matter of judgment. If the inmate has a small cut or wound which is bleeding, he may be admitted.  But, if he is bleeding profusely or, in fact, more than just slightly, do not accept him/her. A wound may need sutures.

E.   Inmates with obvious fractures (broken bones) will be refused admission to the jail.

1.   There are two kinds of fractures: open and closed.  In an open fracture, a part of the bone has broken through the skin. If such a fracture is noticed, do not accept the inmate. Other signs of fractures include pain, deformity in the injured area, inability to use a limb, swelling, and bruising.  If an inmate's arm or leg looks like it is not working right, the limb may be fractured.

F.   Inmates with any signs of serious head injuries will be refused admission to the jail.

1.   Head injuries can be very serious. Any injury to the head may indicate cervical or brain injury.  If there is a serious cut or bruise on the head, do not accept the inmate.  If there is clear or bloody fluid coming from the

nose or ears, do not accept the inmate.  If one of the pupils of his eyes is much larger than the other, do not accept him except in cases where the unequal size has been present for a long period of time. If he is very dizzy or is having a lot of trouble walking, do not accept the inmate.  If he feels numb or very weak on one side of the body, do not accept the inmate. If he has vomited and has a history of head trauma do not accept the inmate. And, of course, if he is unconscious or even stuporous, do not accept the inmate.

G.      Inmates who may have neck or spine injury will be refused admission to the jail.

1.      If an inmate has pain in the spinal area or if there is obvious deformity in the spinal area, do not accept the inmate.  If he has lost muscle function or has areas of numbness in his arms or legs, there is possible spinal cord damage.

H.      Inmates with any other sort of severe injury will be refused admission to the jail.

1.      If he is obviously seriously injured in any other way, do not accept the inmate. He may have been in a fight or accident and have received a wound or internal injury which requires medical attention.  If he has severe bruises, if he is having difficulty moving or walking, if he seems to be in severe pain - act cautiously and do not accept him without medical clearance.

I.      Inmates who cannot walk under their own power could be seriously injured, ill or under the influence of drugs or alcohol. A determination must be made as to whether the inmate is simply intoxicated or has some disease rendering him immobile.  Professional judgment will need to be used in these matters.

J.      Inmates displaying any signs or symptoms of possible internal bleeding will be refused admission to the jail.

1.      Internal bleeding can result from an accident, injury, allergic reaction, heart attack, blood clot and so on.  Internal bleeding can be a very serious situation, one in which immediate medical attention is necessary.  The signs and symptoms of internal bleeding are the same as those of shock. They include paleness, cold clammy skin, sweating, fast pulse, dizziness or faintness, nausea or vomiting, feeling of weakness, feeling of confusion, agitation or fright.  If these signs and symptoms are noticed in an inmate, the possibility of internal bleeding should be suspected and the inmate

should be refused and not accepted without medical clearance.  In particular, refuse to accept any inmate with blood around the eyes or ears. That is a symptom of later stages of internal bleeding.

K.   Inmates with severe abdominal pain will be refused admission to the jail unless there is medical clearance.

    1.   Severe abdominal pain could be caused by a number of conditions:  Food poisoning, bleeding ulcer, allergic reaction, acute appendicitis, drug overdose or withdrawal, etc. The inmate should definitely be examined by a physician before being admitted to the jail.  If the abdominal pain does not seem serious and there does not appear to be anything else wrong with the inmate, he may be accepted.

L.   If an inmate seems very confused, if he does not seem to know who he is or where he is or what is happening, have him professionally evaluated before acceptance.

    1.   Inmates who seem confused or disoriented may be mentally ill, emotionally disturbed, may be suffering from an adverse drug reaction, may have recently suffered a severe head injury, or they may be otherwise ill. He may be just momentarily confused or he may be in need of medical or psychiatric aid.  It is not the medical screener's job to diagnose the inmate's problem; it is the screener's job to have him examined and evaluated before admittance into custody.

M.   Inmates displaying signs of drug, alcohol abuse, or withdrawal should not be accepted until they have been seen and cleared by a physician.  Drug overdose can be a very serious matter, particularly if the person has taken several kinds of drugs.  For example many people combine alcohol with barbiturates or other drugs.  In some cases, the person can have convulsions which can lead to coma and eventually death.

    1.   Some possible signs of drug abuse: confusion or disorientation, hallucinations or delirium, inability to stand or walk, slurred speech, very rapid or shallow breathing, lethargy, severe agitation or aggressiveness, sudden collapse, dilated or pinpoint pupils, restlessness, track or needle marks on arms or legs, and feeling of being very hot or very cold. With alcohol users, alcohol can often be smelled on their breath, but it is unknown if they have combined alcohol with other drugs.

    2.   It must be a matter of judgment whether or not to accept such an inmate.

**Revised 4/25/2017**

Remember, however, that the screener cannot diagnose the condition, and it might be more serious than seems apparent. So when using judgment and common sense, it is determined the inmate may have a problem, do not accept him until he has been medically cleared.

3.   Remember also that the above signs and symptoms might indicate other problems as well.  A diabetic, for example, might display some of these symptoms if he has had too much or too little insulin.  In addition, a mentally ill or emotionally disturbed person might seem to be under the influence of drugs.

4.   This is a case in which the arresting officer might be able to supply specific information.  He may know whether or not the person has used drugs, and he might know the specific drugs used. Such information would certainly be helpful to the examining physician.

5.   Also, if an inmate <u>states</u> that he has taken an overdose of drugs, even if it is not apparent that this is so, do not accept him.  For example, he may say something like, "I just took a whole bottle of Valium."

N.   If a pregnant inmate is bleeding from the vagina, do not accept her; that may be a serious situation. However, if the bleeding is just "spotting" and if she says that she has been having such spotting for some time, there is usually no problem and she can be admitted to the jail.  She should, however, be seen by the jail physician.

1.   If a pregnant woman is having cramps or abdominal pain, she should not be accepted. This is especially important if she is also having severe headache and/or blurred vision.  The cramps or pain may be insignificant, or they may be a symptom of something quite serious, such as pre-eclampsia.

2.   If a pregnant woman is obviously very sick or weak, especially if she is feverish, she should not be accepted.

O.   Inmates exhibiting behavior indicative of psychiatric disorders or suicide threat (delusions, hallucinations, communication difficulties, speech and posturing, impaired level of consciousness, disorganization, memory defects, depression or evidence of self mutilations) will not be accepted without a medical clearance.

P.   Inmates that are incoherent and/or uncooperative due to alcohol or drug use but are accepted will require: See Section 301.04

**Revised 4/25/2017**

1.    An initial evaluation obtaining as much information as possible with emphasis on observation.

    a.    Time, date, inmate's name, vital signs and an explanation why the form was not completed will be noted.

2.    A more comprehensive interview as soon as the inmate is more coherent and cooperative.

3.    Retention in the temporary holding unit.

4.    An evaluation of the level of consciousness and/or any deterioration of condition, every 15 minutes.

5.    Referral to an emergency room if condition deteriorates to the point the inmate requires treatment from an outside agency.

Q.    Inmates with a communicable disease:

1.    Refer to outside treatment agency for diagnosis and/or clearance, if necessary.

2.    If an inmate is accepted with a communicable disease:

    a.    The acceptance will be determined by the medical problem and/or the seriousness of the crime.

        1)    Place in an isolation cell and notify Medical immediately.

3.    Inmates claiming to be on medication:

    a.    A nurse will obtain the following information:

        1)    Purpose of medication

        2)    Dosage

        3)    Description of medication

        4)    Name of physician prescribing

**Revised 4/25/2017**

       5)      Date of prescription

       6)      Last dose

       7)      Pharmacy

b.      The nurse will verify above information by calling:

       1)      Prescribing physician and or inmate's pharmacy

       2)      Hospital

       3)      Family to obtain:

            a)      Prescription number, date, physician, name of medication.

            b)      Purpose of medication

4      Receiving screening includes:

a.      Filling out <u>Screening Form </u>(DCJ Form 401) completely.

b.      Using professional terminology.

c.      Having inmate sign <u>Release of Information</u> (DCJ Form 405) form.

5.      When screening is completed:

a.      Report to shift sergeant any medical problem of which he needs to be aware:

       1)      Communicable disease

       2)      Epilepsy

       3)      Suicide risk

       4)      Special Diets

       5)      Housing conditions, equipment or any other special needs

      b.      Make appropriate referrals to jail medical staff.

            1)      Alert nurse when there is an immediate need for medication.

## 405.02    ACCESS TO TREATMENT (UJS MH-10), (NCCHC J-32), (ACA 2-5274).

To communicate to inmates the availability of health services within the Davis County Jail and the method of obtaining the services.

Information about health care services will be communicated to all inmates upon their arrival to jail.  The instructions will be given verbally and/or written.

A.    Access to treatment information will include, but not be limited to:

    1.    Doctor's sick call

    2.    Emergency medical care

    3.    Mental health needs

    4.    Dental clinic

B.    This information will be communicated to each inmate:

    1.    Verbally

        a.    At the time of intake screening

            1)    If the inmate does not speak English, an interpreter will be provided whenever possible.

        b.    Orientation video shown each weekday morning.  See Section 207.h.3.t

    2.    Written

        a.    Inmate rules and regulations will be posted in the housing units, available to the inmate to read.

    3.    Health services information will include:

    a.      Emergency - If you require emergency health care, contact a staff member.

    b.      Medical services are available. Inform the nurse at Med Pass or complete a request form.

          (1)     Obtain Medical Request Form from Nurse during Med Pass.

          (2)     Return the completed form to the nurse at Med Pass.

## 405.03      NURSE HEALTH ASSESSMENT (UJS MH-12), (NCCHC J-33), (ACA 2-5274).

All inmates shall receive a medical assessment by a nurse prior to being placed in population.  This medical screening will include:

A.     Current vital signs

B.     Current weight

C.     Current T.B. test or chest x-ray

D.     Current medications

E.     Special diet requirements

F.     Medical history

G.     Medical equipment needed

H.     Suicide Watch if needed

I.     Inmate Worker clearance

J.     Mental Health history

K.     Mental Health screening

Follow-up care from medical screening shall be initiated by the nurse who performs the health assessment.  Follow-up care will include:

Revised 4/25/2017

A.      Identifying any medical condition that requires follow-up with a physician or PA and scheduling an appointment in clinic as needed.

B.      Identifying any serious medical need that cannot wait until routine sick call and notifying the on-call physician or PA and when indicated and if instructed, ensuring proper transport to an outside medical facility or hospital for an emergent situation.

C.      Initiating special housing recommendations for inmates that require them ie. (lower level, lower bunks, handicap cells, crutches, or other medical accommodations)

D.      Identifying inmates that may require housing in the medical infirmary due to a serious medical condition, such as withdrawals or a contagious disease.

E.      Initiating Suicide Watches, if indicated and determining the need for a Crisis Worker to be called in from Behavioral Health.

F.      Standard mental health referrals for general depression, anxiety, or other mental health issues, to the jail Social Worker during normal business hours.

G.      Obtaining a Medical Release of Information for medical records needed for continuity of medical care when needed.

## 405.04       MENTAL HEALTH (UJS MH-24), (NCCHC J-34), (ACA 2-5276).

Inmates requesting mental health assistance will be referred to Davis County Mental Health for a screening examination by the assigned social worker. Those diagnosed as having mental illness or retardation shall be under the care of the Davis County Mental Health while incarcerated in the Davis County Jail.

## 405.05       DAILY HANDLING OF NON-EMERGENCY MEDICAL REQUESTS (UJS MH-4), (NCCHC J-35), (ACA 2-5278, 5279).

To assure timely access to health care through triage all inmate health (medical and psychological) complaints shall be referred promptly to the health services unit following developed procedures.  Procedures will be developed for timely triaging of inmate health complaints by qualified health personnel.  Methods of communication between inmates and jail staff will be outlined to expedite the triaging of complaints.

**Revised 4/25/2017**

A.   All inmates will be provided with a means to communicate health complaints to the health services personnel. These means may include:

    1.   An Inmate Medical Request Form (DCJ Form 444) or standard Inmate Request Form (DCJ Form 501)will be provided on which the inmate may write his medical request.

        a.   Forms are available for inmate from the floor officer or nurse to be given to inmate upon request.

        b.   When completed, the request form will be given to a member of the health services staff or jail staff member.

    2.   All inmates may voice health complaints to the health services personnel during routine medication rounds through the jail.

C.   Emergencies not requiring transport.

    1.   When the deputy is notified of the problem, he will contact a member of the health services staff by phone, radio, or intercom.

    2.   Health services personnel will respond immediately to any emergency call. All emergency evaluations and action taken will be documented and placed in the inmate's chart.

D.   Upon receipt of the sick call request form, medical personnel will:

    1.   Evaluate the inmate within a reasonable period of time depending on the severity of the complaint.

    2.   Initiates appropriate action.

        a.   Refer to sick call, those inmates with medical needs that need attention by a physician or PA.

        b.   Initiate treatment per protocols, for conditions that can be treated by a nurse when following facility doctor authorized medical protocols. Have treatment record co-signed by physician or PA at next regular sick call.

**Revised 4/25/2017**

    c.      Routine dental needs will be referred to facility dentist at the next scheduled dental clinic.

    d.      Mental Health referrals and follow-up evaluations for suicide watches shall be scheduled to be seen by a mental health counselor.

**405.06      SICK CALL (UJS MH-14), (NCCHC J-36), (ACA 2-5278, 5279).**

To assure scheduled access to health services for non-emergency illness or injury the Davis County Jail will provide access to sick call for all inmates with health complaints. Sick call will be conducted under the direction of a licensed physician or his designee. All pertinent medical information will be properly documented.

A.    Sick call will be conducted five days a week. Sick call will be:

    1.    Conducted by a licensed physician or his designee.

    2.    Assisted by qualified health personnel:

        a.    RN's, LPN's, and/or EMT's

    3.    Held in a medical exam room.

B.    Inmates evaluated at sick call:

    1.    Will be selected from those inmates requesting to see the physician. Upon receipt of inmate's medical complaint:

        a.    A member of the health services staff will:

            1)    Evaluate the inmate by removing him/her from the housing pod if indicated and assessing his/her complaint.

            2)    Observe the inmate throughout the day, noticing any behavior that justifies the complaint.

    2.    Those inmates who have indicated a physical ailment or medical condition, not amounting to an emergency or a condition if left untreated would compromise the inmate's health or be life threatening, during their Medical Screening at intake will be scheduled for sick call within 10 days

**Revised 4/25/2017**

of intake for evaluation.

C.    The jail physician will make a medical assessment of the inmate's complaint and will:

    1.    Review the findings of medical staff.

    2.    Assess results of prior treatment and review tests:

        a.    Laboratory

        b.    X-rays

    3.    Order necessary diagnostic tests:

        a.    Blood will be drawn in the jail by qualified personnel.

            1)    Physician may recommend blood be transported to an outside agency for testing.

        b.    Inmates in need of STD testing will have their blood drawn at the jail. The blood specimen will be transported to the State Health Laboratory.

            1)    STD counseling should be done by the Davis County Health Department nursing staff.

        c.    Inmate's in need of X-rays will be taken in the facility as much as possible; if this is not possible the inmate will:

            1)    Medical staff will have an outside agency mobile x-ray unit respond.

            2)    Be transported to local hospital or care center.

    4.    Order appropriate medication.

    5.    Communicate findings with inmate.

    6.    Make future appointments.

**Revised 4/25/2017**

7.      Document in inmate's medical record:

    a.      Medical findings

    b.      Treatment plan

    c.      Orders

D.      Nursing protocol will be followed by the medical department in the absence of a physician.

E.      The jail physician will perform any minor surgeries not warranting transportation to an outside treatment agency.

F.      Follow-up care:

1.      All follow-up appointments will be scheduled for sick call.

2.      If the inmate is not seen on the day of the appointment, it will be noted and he/she will be rescheduled until:

    a.      He is actually seen.

    b.      He is released from jail.

    c.      The chart/file is reviewed and there no longer exists a need for follow-up.

## 405.07      TREATMENT PHILOSOPHY (UJS MH-28), (NCCHC J-37), (ACA 2-5291).

To assure that inmates receiving health care in the Davis County Jail are treated both with dignity and respect as well as maintaining:

A.      Privacy for the inmate will be a primary consideration when providing medical treatment or procedures.  The inmate will be informed of the medical treatment and procedures to be performed. Medical attendants of the same sex as that of the inmate will be present during medical procedures when indicated.  Rectal and pelvic examinations or any surgical procedure will be performed by the physician only when indicated for medical reasons after receiving written, witnessed,

informed consent from the inmate.

B.     The documentation of a Treatment Plan. Health care professionals providing medical, mental health, or dental care to inmates should document a Treatment Plan for each prisoner requiring treatment.  This will ensure a continuity of treatment and appropriateness of treatment between different providers. Treatment Plans will also assist in detecting and eliminating manipulative behavior from inmates in playing one medical provider against another.


**405.08**          **GRIEVANCE MECHANISM (NCCHC J-38).**

Inmates incarcerated in the Davis County Jail will have a defined grievance procedure as outlined in the Jail Policy and Procedure Manual.  (Refer to 520.01)

A.     Grievances must be submitted to the jail health services administrator in writing. Floor officers will secure assistance for illiterate inmates.

B.     A written grievance will be accepted by any floor deputy to whom it is presented, and will be forwarded to the jail health services administrator immediately.

C.     Upon receipt by the health services administrator, the grievance will be marked with the date of receipt of grievance.

D.     The inmate will be given a written response within ten (10) calendar days of the receipt of the grievance.

E.     Copies of all medical grievance documents will be filed in the inmate medical records.

F.     Depending on the nature of the complaint, it is responded to by either a member of the jail administration or medical staff.


**405.09**          **MEDICAL ORDERS (NCCHC J-39).**

To assure treatment by personnel other than a physician or dentist are performed pursuant to direct orders from authorized personnel.

A.     Personnel performing treatments in the Davis County Jail will:

        1.     Be trained prior to performing the treatment.

**Revised 4/25/2017**

2.      Perform the treatment following orders written and signed by the jail physician, psychiatrist or dentist.

3.      Document the action.

**405.10      STANDING ORDERS AND PROTOCOLS (UJS MH-2), (NCCHC J-40), (ACA 2-5279).**

To provide a means for the identification of medical conditions and the care of minor ailments of the inmates in the Davis County Jail treatment protocols and first aid procedures will be developed by the jail physician, psychiatrist and/or dentist under the direction of the health authority to be utilized by authorized personnel.

A.      Protocols will:

1.      Be appropriate to the level of skill and preparation of the practitioner who will carry them out.

2.      Comply with relevant State practice acts.

3.      Be documented in the inmate's chart with time, date and signature of the personnel providing the care.

4.      Be countersigned in the medical record by the responsible physician.

B.      First Aid procedures:

1.      Written by the health authority, will include instructions for the identification and care of minor ailments such as:

a.      Upper Respiratory infections

b.      Athletes foot, rashes

c.      Minor cuts and abrasions

d.      Burns

e.      Ear infections

**Revised 4/25/2017**

  f.  Constipation, diarrhea

  g.  Ectoparasite treatment

  h.  Withdrawal protocols

  i.  Others written by jail health authority

2. First aid procedures may include orders for over-the-counter medications. Administration of these medications by RN's or LPN's will be:

  a.  Documented in the inmate's medical records

  b.  Co-signed by the health authority

## 405.11 INFECTION CONTROL PROGRAM (UJS MH-16), (NCCHC J-41), (ACA 2-5280).

To prevent and control infections of staff and/or inmates in the Davis County Jail will:

A. Have in effect an infection control program which includes:

  1. Surveillance

  2. Cleaning and disinfection techniques

  3. Prevention techniques

  4. Treatment

  5. Reporting

B. Policies and procedures will be followed pertaining to but not limited to the following diseases.

  1. Tuberculosis:

    a.  Inmates stating they have TB on arrival to the jail will be placed in isolation until the existence of the disease is verified.

      1)  Removal of the inmate from isolation will be based on the

information received.

b.      Inmates with active TB will be provided with a mask when transported outside the jail.

1)      Transportation staff will be alerted of inmate's conditions.

2.      HIV (AIDS)

a.      Blood for HIV screening will be drawn on order of physician and/or medical staff.

1)      All inmates tested will be counseled by medical staff trained to counsel or the Davis County Health Department.

2)      Inmates with positive HIV without symptoms of AIDS will remain in general population.

3)      Inmates with positive HIV with symptoms of AIDS may be isolated for their protection.

a)      The jail physician may indicate to the appropriate court that the County's best interest would be served by having the person released from jail to seek treatment.

4)      If the inmate has seen a private physician, the private physician will be consulted regarding prior treatments and medications.

b.      Correctional deputies and health services staff will be provided with gloves when: (refer to Exposure Control section of the policy)

1)      Handling any inmate if any body fluids are involved.

2)      Handling any items contaminated with body fluids.

3)      Drawing blood.

4)      Razors provided to inmates will be placed in proper container for disposal. (Refer to 802.00).

**Revised 4/25/2017**

    3.      Head Lice or other external parasites

    4.      Other contagious diseases:

        a.      Inmates will be isolated by authority of medical health staff if necessary.

            1)      Area will be decided based on type of disease.

        b.      The condition of inmates will be followed by the health services staff and jail physician.

        c.      Following removal of an inmate from isolation, the cell including walls, beds, mattresses, linens and toilets will be cleaned and disinfected.

        d.      Transportation staff will be alerted of inmate's condition.

            1)      Confidentiality guidelines will be followed. (Refer 400.07)

        e.      Specific immune therapy will be administered as indicated:

            1)      Gamma and/or tetanus toxoid will be given as per physician's order.

## 405.12      HEALTH PROMOTION AND DISEASE PREVENTION (UJS MH-13), (NCCHC J-42), (ACA

To provide accurate medical information to inmates at risk of developing a health problem.  To educate inmates about existing and/or chronic health problems in order to speed recovery, prevent relapse or halt progress of the disease.
To include the inmate, whenever possible, in his own health care.  Preventative medical information will be provided to the inmates in the Davis County Jail.  Included will be instructions for self care for chronic conditions.

A.      Inmates at risk of developing an illness or that have a chronic disease may be identified during receiving screening, the health appraisal and/or observation of the inmate by the health services personnel.

**Revised 4/25/2017**

B.     The health services unit will provide preventive measures against disease on an individual basis as the need arises.

C.     Inmates will be instructed in dental hygiene by the dentist during dental clinic.

D.     Inmates diagnosed as hypertensive will receive an explanation of his condition with emphasis on diet, medication and medical follow-up.

E.     Personal hygiene will be emphasized.

F.     A nutritional diet will be provided to all inmates in the Davis County Jail.

G.     Diabetic inmates will be individually instructed regarding the disease.

H.     Pregnant female inmates will be referred to pre-natal clinics or other health care provider clinics for care and counseling upon release.

I.     Physical fitness will be emphasized as provided during the exercise program.

J.     Instruction concerning chronic disease and disability will be provided by the physicians and health services staff on an individual basis.

K.     Instructions regarding over-the-counter medication following release will be provided to inmates needing the information.


### 405.13     CONTINUITY OF CARE (UJS MH-4)  (NCCHC  J-43) (ACA  2-5260).

The health services staff will make every effort to provide continuity of medical care by attempting to obtain previous medical history and sharing information when appropriate.

A.     When the inmate indicates during the screening process he/she is under the care of an outside medical provider.

     1.     He will be asked to complete a request for and consent to release information.

         a.     The signed form will be sent to the medical provider if the condition warrants knowledge of medical history.

         b.     The outside medical provider will be contacted by telephone if immediate information is needed by the nurse on duty.

B.   The inmate will be referred to the jail physician for follow-up.  He will:

    1.   Evaluate the condition.

    2.   Initiate treatment based on diagnosis and/or information received from outside provider.

    3.   Continue treatment program during the inmate's confinement if indicated and appropriate.

C.   The health services staff will provide a summary of medical information to any correctional facility to which the inmate is transferred. (DCJ Form 417, USM Form 553)

    1.   The transportation unit will notify health services prior to the inmate's transfer.

    2.   A summary will be sent to or accompany the inmate to the facility (DCJ Form 405).

D.   The health services unit will forward medical summaries when:

    1.   Requested by an outside medical provider.

        a.   Request must be accompanied by a release signed by the former inmate.

E.   Medical information will be released to the attorney representing an inmate when:

    1.   He presents a written authorization signed and acknowledged by the inmate or self authenticated document.

        a.   In the case of a deceased inmate, signed by the personal representative or the heir.

F.   Inmates identified during incarceration as having long term or potentially serious conditions will be:

    1.   Initially treated by the jail physician.

    2.   Transported to an outside treatment provider for work-up and treatment as

indicated by the jail physician.

G.    Inmates diagnosed as testing positive for HIV, active AIDS or other sexually transmitted diseases will be:

    1.    Referred to the Davis County Health Department for follow-up if treatment is not completed before release.

H.    Inmates receiving psychotropic medication, if need of medication or requiring further psychiatric care, will be:

    1.    Referred by psychiatrist and/or social workers to the appropriate outside facility.  They will make appointments for the inmate.

I.    Inmates in need of follow-up for alcohol or drug withdrawal will:

    1.    Be referred to outside agencies by psychiatric, social workers or the inmate him/herself.

## 405.14    EMERGENCY MEDICAL AND DENTAL CARE  (UJS MH-4), (NCCHC J-44), (ACA 2-5266).

To provide emergency medical and dental services 24 hours a day.

A.    Procedures, authorized by the responsible health authority and coordinated with the facility administration, will be formulated to assure medical and dental services are provided with efficiency and expediency on a 24-hour basis. The procedures will include:

    1.    Emergency evacuation of the inmates from within the facility.

    2.    Use of an emergency medical vehicle.

    3.    Use of one or more designated hospital emergency rooms or other appropriate health facilities.

    4.    Emergency on-call physician, dental services, and crisis workers.

    5.    Security procedures to provide for the immediate transfer of the inmate when medically necessary.

B.   Emergency medical and dental care is care for an acute illness or an unexpected health need that cannot be deferred until the next scheduled sick call or clinic. An emergency is a medical problem that cannot be dealt with by the attending personnel.

1.   When a medical emergency occurs within the jail security perimeters the health services personnel will be contacted immediately by:

a.   Telephone

b.   2-way Radio

c.   Intercom system

2.   The staff member contacting the health services personnel will give a brief synopsis of the situation, to alert the responding personnel as to what supplies and/or equipment will be needed.

3.   Health service personnel when receiving an emergency call will:

a.   Respond immediately carrying the necessary medical supplies and/or equipment with him.

b.   Evaluate inmate's status.

c.   Provide emergency care.

d.   Alert shift sergeant if paramedics or ambulance are needed.

e.   Remain with inmate until condition is stable and/or inmate is transferred to outside treatment.

4.   The health services unit is centrally located in the jail providing access to any area within a reasonable length of time.

5.   Correctional deputies, trained in first aid and certified in CPR, are on duty with immediate access to all inmates on a continual basis, 24-hours per day.

6.   If an emergency situation occurs outside the jail perimeters to inmate workers on work detail, the supervisor of the work detail will:

**Revised 4/25/2017**

    a.    Call 911 if emergency treatment is required.

    b.    Transport the inmate back to jail if he/she is not taken to a treatment agency.

    c.    Notify jail administration if he/she is taken to an outside treatment agency.

7.    When dental emergencies occur health services personnel will:

    a.    Call jail dentist

    b.    Call inmate's private dentist

        1)    On advice from jail or private dentist, or if they cannot be reached, the inmate will be transported to an emergency dental agency.

    c.    Emergency transportation to outside treatment agencies:

        1)    Ambulance

            a)    Life threatening situations.

        2)    Transportation officers:

            a)    During on-duty hours.

            b)    Using sheriff's office emergency vehicles.

        3)    Corrections Deputies:

            a)    When transportation officers are not available.

        4)    Arresting agency:

            a)    If the inmate is not accepted for booking.

8.    When paramedics and/or ambulance is needed:

    a.    Health services personnel will call the watch commander.

**Revised 4/25/2017**

    b.    The Watch Commander alerts Central Control and dispatch.

    c.    Central Control provides expedient access for the emergency vehicle.

9.    A member of the jail executive staff will be notified immediately upon any inmate being transported for emergency medical care.

## 405.15      DENTAL CARE  (UJS MH-6), (NCCHC J-45), (ACA 2-5277).

The Davis County Correctional Facility will provide, through a qualified, contracted dentist, adequate dental care to help maintain an inmate's oral and dental health. Dental care will be provided to each inmate, upon request, by a licensed dentist on contract.

Dental treatment is not limited to extractions when the health of the inmate would otherwise be adversely affected as determined by the dentist.

A.    The dentist will conduct a clinic a minimum of four hours per week.

B.    Dental clinic will be held in the dentist facility provided in the jail.

C.    Inmates requesting to see the dentist will:

    1.    Have their names placed on the dental list by filling out the sick call request (DCJ Form 501) or contacting one of the health services staff.

D.    The severity of the inmate's complaint will be screened by the health services staff.

    1.    Inmates requiring emergency care, including but not limited to abscesses and injuries resulting from broken teeth will be referred immediately to:

        a.    The jail dentist

        b.    Emergency dental services (Refer to 405.14.A.7)

    2.    Names of inmates requiring routine dental care, non-emergency will:

        a.    Be placed on the dental list to be seen by the dentist.

**Revised 4/25/2017**

3.    The control pod where the inmate is housed will be notified in advance of impending dental clinic for inmate.

E.    The dentist will document his evaluation, findings and treatment on the dental form in the inmate's medical record.

F.    Follow-up clinic visits:

1.    Inmate's names will be placed on dental list by any member of the staff assessing patients or following orders of the dentist.

G.    Toothbrushes and fluoride toothpaste will be available for all inmates from the jail commissary.

## 405.16    ECTOPARASITE CONTROL (UJS MH-16), (NCCHC J-46).

To assure the elimination of inmate infestation all inmates will be screened as part of the process of transferring them to the general population.

Whenever the presence of lice and/or body vermin is recognized, a member of the jail medical staff will be notified.

A correctional deputy will supervise the delousing procedures as outlined to ensure that all procedures are properly followed.

If upon completion of the medical screening it is determined the incoming inmate is suffering from body parasites such as crabs, lice, or other vermin, the following procedures will be followed:

A.    The inmate will be given a delousing agent approved by the physician and told to follow procedures.

1.    Pubic lice or body lice:

a.    Apply prescribed medication to affected parts and shampoo in.

b.    Wait 4 minutes and then shower with warm water and soap.

c.    To remove dead lice and mites, use a fine tooth comb.

2.    Head lice and mites:

Revised 4/25/2017

      a.     Apply prescribed medication to scalp and hair.

      b.     Rub thoroughly with fingers.

      c.     Wait 4 minutes.

      d.     Shower, rinse hair thoroughly.

      e.     One thorough application is usually effective.

3.     Housing Unit contamination:

      a.     If a parasite infestation occurs in a housing unit, all inmates will be instructed to thoroughly scrub the entire cell block with a disinfectant agent supplied by the medical staff or the jail.

      b.     Spray and scrub the mattresses, walls, bunks, tables, stools, showers, etc., with solution.

      c.     When the entire housing unit has been scrubbed and is dry, fresh bedding and linen shall be issued.

      d.     All inmates will shower and apply the appropriate medicated agent as directed by the jail medical staff. Inmates will be issued fresh clothing after their shower.

      e.     Inmates will not return to their cell areas and will not exchange clothing and linens until they have showered.

B.    All clothing will be cleaned and fresh clothing provided after the delousing procedure has been followed.

## 405.17    MEDICAL DIET (UJS FS 12, 13, 14), (NCCHC J-47), (ACA 2-5230, 5231, 5232).

To provide therapeutic diets to those inmates whose health condition necessitates alteration from the regular jail diet.  Therapeutic diets will be provided to all inmates requiring them.  Diets will be delivered to each inmate following procedure outlined in Food Service Policy 600.07.  Special diets will be:

**Revised 4/25/2017**

A.    Prepared under order from the jail physician, dentist or nursing staff.

B.    Based on a recognized standard unless otherwise indicated in the diet manual.

C.    Ordered on diet order forms routed to the food services supervisor by health service personnel.

D.    Evaluated for nutritional adequacy by a registered dietitian at least every six months.

  1.    Copies of the diets will be retained by the Food Services Contractor (Canteen Corp) for dietitian's review.

E.    All diets will be prepared by the jail food services contractor (Canteen Corp).

F.    The doctors and/or dentist diet order will be documented in the inmate's medical record.

## 405.18    EXERCISE (NCCHC J-48).

The opportunity to exercise is available to the inmates in the Davis County Jail.  Inmates will be encouraged to take advantage of the hour they are given daily for physical exercise.

Outdoor exercise courts are available for inmate use.  Inmates will be allowed use of the outdoor court 1 hour every day, weather permitting. In the case of ice, snow or standing water on the outdoor courts, inmates will remain inside.

Inmates may play handball, jog, walk, exercise, or stretch in the outdoor courts. Inmates will not be required to participate in the exercise program, but will be given the opportunity.

On days when the outdoor exercise courts are unavailable because of inclement weather, inmates will be encouraged to exercise in the housing area. Inmates may walk, jog in place, stretch, or do aerobic exercises in the day room or their cells. Stationary exercise equipment may be available in some day rooms.

## 405.19    SMOKING  (NCCHC J-49).

The Davis County Jail is a no smoking facility. Smoking is not allowed in any portion of

the building.

A.     Any tobacco product is considered contraband.

## 405.20     PERSONAL HYGIENE (UJS SE-9), (NCCHC J-50), (ACA 2-5244,5258).

To ensure the availability of items necessary for the maintenance of personal hygiene. All inmates incarcerated in the Davis County Jail will receive necessary provisions to maintain personal hygiene, cleanliness and personal appearance.

The Davis County Jail will have an established commissary program to provide inmates with sufficient items to care for their personal hygiene.  The commissary also makes available to those inmates with funds, writing material, candy and other confections (excluding gum), envelopes and toilet articles (Refer to 510.00).

A.     Inmates will receive clean clothing once a week.

B.     Shower facilities are provided to all inmates; one shower a day is recommended. A minimum of three showers a week shall be required.

C.     Inmates shall keep themselves in a state of cleanliness at all times.

    1.     Razors will be available Monday, Wednesday and Friday at 04:30 upon request.

    2.     Kitchen Workers will receive razors and shave daily

D.     Items provided by the jail include:  (Refer 510.00, 313.00)

    1.     Soap

    2.     Toothbrush and fluoridated toothpaste

    3.     Toilet paper

    4.     Sanitary napkins

## 406.00     ENHANCED WELFARE MONITORING (MEDWATCHES)

A.     Inmates who require increased monitoring are placed in a status which provides

enhanced monitoring levels.  This monitoring level is provided for inmates who are not known to be experiencing current suicide ideation.  The frequency and nature of the monitoring will be set on a case-by-case basis by the responsible jail staff in consultation with the health-care provider.

## 406.01      HEALTH EVALUATION OF INMATES IN SEGREGATION (NCCHC J-51).

To assure that inmates assigned to isolation or segregation units in the jail will receive daily monitoring of all health complaints by health services personnel.

Inmates segregated from the general population will have the same access to medical care as other inmates in the Davis County Jail.  Rounds will be documented and medical complaints made by the inmates will be noted by the health services staff member.

A.      The health services staff will make a minimum of one round per shift to monitor the condition of each inmate assigned to the following areas of the jail:

   1.      Recovery cells

   2.      Behavior modification cell

   3.      Protective custody

## 406.02      INTOXICATION AND WITHDRAWAL  (UJS MH-25), (NCCHC J-52), (ACA 2-5281).

To ensure treatment and observation of intoxicated inmates.  The health authority or designee will be responsible for providing procedures for the clinical management of these inmates.  When indicated, all inmates will be provided with access to medical services for evaluation and treatment of withdrawal.

A.      A brief drug history will be taken on all inmates incarcerated in the Davis County Jail at the time of the initial intake screening.

B.      If an inmate is enrolled in an organized drug maintenance program or under the care of a physician for drug maintenance or withdrawal, an attempt will be made by the Health Services Unit to contact those parties to obtain any pertinent information.

**Revised 4/25/2017**

C.      Inmates with physiological drug dependence who develop signs or symptoms of drug withdrawal will be evaluated by a member of the Medical Service Staff.

D.      All inmates found to be withdrawing from a physiological addicting drug will be treated in accordance with recommended medical practice. Treatment will be determined by the individual needs of the inmate, as well as the type and severity of the drug withdrawal.

   1.      Inmates will be transported to an outside treatment agency:

      a.      When serious medical problems are combined with withdrawal.

      b.      When inmates are experiencing life threatening intoxication or withdrawal.

E.      The decision for referral to community resources may be made by the jail physician and/or his designee.


**406.03        CHEMICALLY DEPENDENT INMATES  (UJS MH-25), (NCCHC J-53), (ACA 2-5281).**

To ensure diagnosis and individualized care of chemically dependent prisoners, treatment plans will be developed for each prisoner who is diagnosed or considered to be dependent upon chemical substances by the physician or his designees. "Substance dependence" is defined according to the Diagnostic and Statistical Manual for Mental Disorders (4th Ed. 2000). Those substances include, but are not limited to, alcohol, opiates and opioids, amphetamines, cocaine, and depressants.

A.      The physician will determine the appropriate treatment and care plan:

   1.      Pharmacological:

      a.      An individualized drug regime based on the prisoner's symptoms and medical condition.

         1)      Methadone and Suboxone maintenance is not generally available from medical services in the jail.

         2)      Prisoners, who are not pregnant and who are currently enrolled in a Methadone or Suboxone treatment program

**Revised 4/25/2017**

with a qualified and certified outside treatment agency may be permitted to continue usage if that agency agrees in writing to provide service to the prisoner inside the facility; subject, however, to the condition that the permitted amount of Methadone or Suboxone shall be reduced regularly for a period not exceeding 30 days.

3)    Prisoners, who are not pregnant and who are not currently enrolled in a Methadone or Suboxone treatment program with a qualified and certified outside treatment agency will not be permitted to continue Methadone or Suboxone usage; subject, however, to Subsection (5).

4)    Pregnant prisoners enrolled in a Methadone program may continue in a methadone program subject to the approval of the physician and in compliance with a treatment and care plan approved by the physician.

5)    If an inmate is chemically dependent upon Methadone or Suboxone at the time of placement in the facility under sentence, the prisoner may, if the physician deems it appropriate and reasonably necessary for the health of the prisoner, be permitted Methadone or Suboxone in an amount which shall be reduced regularly for a period not exceeding 30 days.

**406.04    COMMUNICABLE DISEASE AND ISOLATION** (UJS NH-16), (NCCHC J-54).

To ensure prevention of the spread of disease by isolation of the inmate the Davis County Jail will provide housing areas to meet the requirements of ventilation and isolation for inmates with communicable disease.

A.    Inmates diagnosed with communicable disease will be treated individually as their condition warrants including being placed in isolation if indicated by medical personnel.

B.    The jail physician, after diagnosis, will order treatments and medications.

C.    Procedures, developed by the health authority, will be followed regarding general instructions of specific diseases including:

Revised 4/25/2017

    1.      Tuberculosis

    2.      AIDS

    3.      Other communicable disease

D.    Each isolation area will be provided with:

    1.      Separate toilet

    2.      Hand washing facility

    3.      Soap to be discarded after inmate is removed from isolation

    4.      Individual towels

E.    Housing for inmates with airborne diseases will be properly ventilated.

F.    To prevent spread of infection to others, general isolation procedures include:

    1.      Carry-out isolation techniques as required by disease.

    2.      Use masks effectively:

        a.      Change frequently - a moist mask is not effective.

        b.      Refrain from handling mask while in use.

    3.      Use gown as indicated by disease:

        a.      Use gown once and discard in the appropriate provided receptacle.

    4.      Use gloves when indicated by inmate's condition.

        a.      Use gloves once and discard.

    5.      Wash hands immediately after contact with each patient and after contact with material that may be contaminated and is potentially infectious.

    6.      Disinfect and handle all wastes with due precautions.

**Revised 4/25/2017**

    a.    Place in bag in cells.

7.    Control dissemination of droplets:

    a.    Encourage patient to cover nose and mouth when coughing or sneezing.

    b.    Wrap contaminated tissues and articles in paper before disposal.

8.    Maintain cleanliness of cell.

9.    To provide for physiologic support:

    a.    Ensure adequate hydration in the event of excessive fluid loss through vomiting, diarrhea or excessive sweating.

        1)    Encourage liberal fluid intake.

    b.    Reduce fever.

        1)    Administer antipyretic drugs as prescribed.

    c.    Measure and record temperature, pulse and respirations frequently.

    d.    Weigh patient periodically.

10.    To provide symptomatic relief:

    a.    Combat general aching and malaise.

        1)    Administer analgesics.

        2)    Encourage oral hygiene.

        3)    Limit physical activity.

    b.    Relieve cough

        1)    Administer cough suppressants as ordered.

    c.    Relieve anxiety and depression.

**Revised 4/25/2017**

      1)     Refer to mental health if indicated.

      2)     Recognize loneliness of isolated patient.

d.     Isolate carriers and contacts as well as inmates with the disease when possible.

e.     Educate the staff and inmate with regard to:

      1)     The manner in which infections are spread and the methods of avoiding the infection.

      2)     The importance of seeking medical advice.

      3)     The importance of environmental cleanliness and personal hygiene.

f.     Disposable eating utensils will be provided inmates isolated with diseases indicating their use: Hepatitis A, etc.

g.     All isolated cells will be disinfected and cleaned following the discharge of the patient.

## 406.05    SKILLED NURSING AND INFIRMARY CARE (NCCHC J-55), (ACA 2-5270).

The Davis County Jail provides and maintains an infirmary for the housing and recovery of inmates with medical needs.  Inmates requiring care beyond the scope of the staff and facilities of the jail are transported to appropriate outside treatment providers.

A.     The Davis County Jail maintains a staff of qualified nurses to provide treatment and care to those inmates housed in the infirmary.

     1.     EMT's on the jail staff may be used to assist the nursing staff with the supervision of those inmates housed in the infirmary.

B.     Transfer to the infirmary will be under the direction of the physician, nursing staff and classification.

     1.     An inmate will remain in the infirmary only as long as he/she medically needs to convalesce. After the appropriate convalescent period the inmate

will be placed back into the population in the appropriate classification.

**406.06      PHYSICALLY DISABLED, MENTALLY DISABLED OR MENTALLY ILL (UJS MH-23), (NCCHC J-56), (ACA 2-5276).**

Provide appropriate evaluation and follow-up care for inmates with moderate or severe physical disability, mental illness or developmental disability.

The medical and/or mental health staff will evaluate the need for and initiate the placement and treatment of inmates with developmental or physical disabilities or mental illness.  Treatment plans will be developed by the physician responsible for the care.

A.      All incoming inmates are medically screened on admission to jail.

    1.      Any inmate observed to have a disability is appropriately referred at this time.

    2.      Referrals from correctional and pretrial staff will be evaluated with appropriate action taken.

B.      Inmates not able to be placed in general population because of inability to function physically will be housed accordingly.  The Davis County Jail is equipped with handicap facilities.

**406.07      SPECIAL NEEDS TREATMENT PLANNING   (UJS MH-24), (NCCHC J-57), (ACA 2-5276).**

Inmates with special medical and/or psychiatric conditions requiring close medical supervision will be provided with individualized treatment programs.

A.      Treatment plans will be based on assessment of the inmate's needs and will be developed by the jail physician and/or psychiatrist.

B.      Special medical conditions which require close medical supervision include, but are not limited to:

    1.      Seizure disorders

    2.      Diabetes

    3.    Asthma

    4.    AIDS

    5.    Pregnancy

C.    Inmates will be housed according to the seriousness of their condition.

D.    Inmate's with special needs will be identified:

    1.    During receiving screening:

        a.    Referred to jail medical staff.

    2.    During health assessment if condition is not observed or mentioned by inmate previously.

**406.08**    **SUICIDE PREVENTION MONITORING (MEDWATCHES0 (UJS MH-23), (NCCHC J-58), (ACA 2-5276).**

To prevent suicide in the Davis County Jail by identifying and responding to potentially suicidal individuals inmates entering the jail and at any time during their stay that exhibit suicidal behavior will be immediately referred to medical health services.

A.    Identification at screening.

    1.    All staff members shall receive training in the recognition of suicidal behavior.

        a.    If an inmate has been identified as potentially suicidal, regular documented supervision will be maintained.

        b.    Medical staff will be notified for assessment and designation of the inmate's level of suicide risk.

    2.    A suicide risk evaluation will include:

        a.    information received as a result of the screening process

        b.    statements made by prisoners

        c.    observations by staff and others

    d.    information received from prisoners, family members, or friends

    e.    prisoners' known past suicide ideation

B.    Housing assignment for inmates determined to be potentially suicidal.

    1.    A suicidal inmate should not be placed in isolation unless constant supervision can be maintained.  If a sufficiently large staff is not available that constant supervision can be provided when needed, the inmate should not be isolated.  He/she should be housed with another inmate and checked every 10-15 minutes.

        a.    Room should be without protrusions of any kind that would enable the inmate to hang him/herself.

          1)    Staff should inspect the cell to find features which may require attention before the cells are used to house prisoners experiencing suicide ideation and, if reasonably feasible, to make modifications to reduce the risk.

        b.    It may be necessary to remove the inmates clothes, blankets, waist cords, shoelaces, razor blades, glasses, misplaced tools, pencils, toothbrushes, cleaning fluids, utensils, unused medication and personal items to prevent the inmate from injuring himself or others.

        c.    Surveillance rounds shall be conducted for the sole purpose of observing at risk inmates.

          1)  The frequency and nature of such supervision should be determined based on the level of the risk for individual inmates as set by medical staff.

    2.    Inmates requiring constant supervision should be placed in the Safety Cell (S1), Medical Cells or a vestibule in Fox or Lima.

C.    Medical staff will make necessary referral to mental health staff.

    1.    If medical staff determines there is an immediate need for crisis intervention the on-call Davis Behavioral mental health provider will be called in.

        a. A log entry will be made documenting:

    1)      Date and time of notification

    2)      Name of the person to whom the request for crisis intervention assistance was made.

    3)      Date and time the responder arrived

    4)      Name of the responder

D.    When a suicide attempt is discovered in progress, medical emergency policies will be followed (Refer to 405.14).

    1.    Any actions taken by Correctional and Medical Staff will be documented.

    2.    The jail investigator will conduct an investigation.

E.    Correctional and medical staff will communicate regarding the status of the inmate to provide clear and current information.

F.    Jail administration will be notified of suicide attempts by the Watch Commander and will make the appropriate notifications.

G.    All actions taken by both medical staff and corrections staff will be documented.

## 406.09      SEXUAL ASSAULT (NCCHC J-59).

A.    See DCJ Policy 521.00

## 406.10 USE OF RESTRAINTS (NCCHC J-60), (ACA 2-5283).

To provide means to prevent an inmate from causing physical harm to himself/herself and to prevent deterioration of his/her medical condition.

The use of physical restraints will be initiated by the health services staff for medical reasons only.  The staff will not participate in disciplinary restraint of inmates, except for monitoring their health.  Restraints will be limited to those devices approved by the health authority.

A.   The need for restraints will be determined by a member of the health services staff (medical/mental health).

   1.   The jail physician or psychiatrist will be contacted for authorization.

   2.   In the event that the physician or psychiatrist is unable to be reached, the restraints may be applied with authorization from jail administration.

   3.   If for obvious and immediate jail security reasons a medical inmate must be restrained to prevent the inmate from causing physical harm to himself or others, the order for restraints may be made by supervisory jail staff to be reviewed by jail administration and Medical personnel as soon as practical.

B.   Restraints are to be used only if the inmate is a danger to himself or others.

C.   Restraints will not be used for longer than 24 hours without authorization from the jail physician or psychiatrist.

   1.   Checked every 15 minutes by health services staff; rounds will be documented.

D.   All restraints used in the jail will be applied by correctional staff.

   1.   A member of the medical staff will supervise the application of the restraints for the purpose of:

      a.   Documenting the incident.

      b.   Examining the inmate for injuries.

      c.   Ensuring the restraints are applied properly, not for punishment (Refer 307.00, 228.00).

## 406.11    PREGNANT INMATES (NCCHC J-61).

Pregnant inmates will be afforded similar services and counseling as would be available in the community.  Female inmates who report conditions of pregnancy will be seen by the physician and receive a physical examination.

A.   Inmates remaining in the jail after pregnancy has been diagnosed will receive regular pre-natal care, including medical examinations, advice on appropriate levels of activity and safety precautions, nutrition guidance and counseling.

B.     Non-therapeutic abortions will not be performed at the expense of the Davis County Jail.  Pregnant inmates requesting an abortion will be referred to jail administration for review of written legal opinion on the law relating to abortions in the state of Utah.

C.     Inmates expressing a desire for adoption service:

1.     The health services staff will contact the office of Community Operation, Department of Social Services, Supervisor of Adoption, Salt Lake City, Utah. A social worker from this agency will contact the inmate and assist her with the adoption procedure.

D.     In the event the jail cannot obtain a court release for a pregnant inmate who needs to be transported to a medical facility for delivery the following guidelines will be followed regarding the use of restraints:

1.     Circumstances related to the medical procedures may require removal of restraints to allow the medical provider to adequately examine, assess, or treat the inmate.

2.     Female inmates should not be shackled during delivery or during labor. Neither should the inmate be shackled if the doctor states the restraints would be a health risk to the inmate or the unborn child.

3.     In the event of conflicts between security needs and medical protocols transportation officers should contact the jail administrator or officer-in-charge for instructions.

## 406.12     PRENATAL CARE  (NCCHC J-62).

To provide pregnant inmates with the care necessary for their health and that of their unborn baby the Davis County Jail will provide access to prenatal care and counseling for pregnant inmates.

A.     During the intake screening process if the inmate states she is pregnant:

1.     The inmate may be refused from jail if:

a.     She is within one month of her due date.

b.     She is within three months of her due date and is classified as high

risk:

    1)    Drug or alcohol addiction.

    2)    History of high risk pregnancies.

    3)    History or toxemia or eclampsia.

    4)    Poor nutrition or general health.

    5)    Diabetes, High Blood Pressure

    6)    Complications in current pregnancy.

2.    Inmates claiming to be pregnant who are accepted into jail will be:

    a.    Referred to medical health unit.

    b.    Pregnancy will be verified by medical through:

        1)    Inmate's private physician.

        2)    Blood test.

    c.    Prescribed necessary medications.

    d.    Ordered any treatments indicated.

3.    A nutritionally sound diet will be provided by the jail as ordered by jail physician and the inmate will receive pre-natal vitamins, 8oz of milk and fresh fruit three times daily.

## 406.13    PROSTHESES  (NCCHC J-63), (ACA 2-5282).

To assure medical or dental prosthesis are allowed when the health of the inmate would be adversely affected.  The need for retention of prosthesis by inmates within the jail will be evaluated by medical and security personnel.

A.    Retention of each prosthesis after examination for contraband will be determined as follows:

    1.    The inmate may retain reading glasses and contact lens. Contact lens

solution will be provided by the medical unit.

2.      Hearing Aids may be retained by the inmate. Batteries will be accepted from outside sources.

      a.      Will be provided by Jail if the inmate is unable to supply.

3.      Dental retainers:

      a.      Each situation is to be evaluated separately.

      b.      Retention is determined by need and risk to security.

      c.      The inmate's private dentist will be contacted to determine need.

4.      Dentures:

      a.      Inmate's retain dentures, but are responsible for them.

5.      Eye prosthesis:

      a.      May be retained by inmate.

6.      Leg prosthesis:

      a.      May be retained by inmate after inspection of the prosthesis.

7.      Other items that may be retained by the inmate include:

      a.      Bandages:  Will be inspected and, if necessary, removed and replaced with jail supplies.

      b.      Orthopedic Shoes:  Inmate may retain them on physician's order.

      c.      Corsets, back braces, cervical collars, splints:  Inmate may retain these if ordered by jail physician and all metal stays are removed. Inmates may be placed in a medical observation cell.

      d.      Casts:  May be retained after thorough search.

      e.      Medical Alert Tags:  Inmates may retain on physicians orders.

      f.      Crutches:  Inmate may retain own crutches or receive issue from

jail supply.

g.      Original or replacement prosthesis will be purchased by the inmate in the event:

     1)      The need for the prosthesis existed prior to the incarceration.

     2)      The breakage of the prosthesis was due to inmate's carelessness and/or deliberate destruction.

h.      The jail is responsible for payment if:

     1)      An injury, requiring a prosthetic device for treatment, occurs during incarceration; whether in the jail perimeters or on work detail.

     2)      The inmate will be transported to outside agencies for fitting and ordering of the prosthesis.

I.      When the inmate is issued or allowed to retain any of the above items:

     1)      It will be issued by a member of the health services staff.

     2)      Documented on chart and care notice.

## 407.00      MEDICAL RECORDS

## 407.01      MEDICAL RECORD FORMAT  (UJS MH-1,11), (NCCHC J-64), (ACA 2-5262).

To ensure documentation of health care of inmates as a basis for planning individual care and completeness of the medical record following the initial screening, medical records will be established on all inmates receiving medical intervention requiring treatment.  The method of recording entries and the form and format of the medical record will be approved by the health authority.

A.      The health services medical record will contain medical, dental and mental health records.

B.      The medical records will include:

1.      Problem list.

2.      Receiving screening and health assessment forms.

3.      All findings, diagnoses, treatments and dispositions.

4.      Prescribed medication and their administration.

5.      Reports of laboratory, x-ray, and diagnostic studies.

6.      Progress notes.

7.      Consent and refusal forms.

8.      Release of information.

9.      Discharge summary of hospitalizations.

10.     Reports of dental, psychiatric and other consultations.

11.     Special treatment plans if applicable.

12.     Place, date and time of each medical encounter.

13.     Signature and title of each documenter.

14.     Required past medical records.

C.      Mental health record will be part of the inmate's medical record and will include:

1.      Mental health referral.

2.      Mental health screening form.

3.      Psychiatrists progress notes.

4.      Legal progress notes.

5.      Nurses notes.

6.      Medication administration record.

      7.     Sick call request forms.

D.     All records will be re-activated upon readmission of the inmate.


**407.02**     **<u>CONFIDENTIALITY OF MEDICAL RECORDS (</u>**UJS MH-1), (NCCHC J-65).

To assure that the health record of every inmate is stored securely and that access is controlled and limited to appropriate personnel the health record of each inmate will be maintained as a confidential document and filed separately from all other jail records with access controlled by the health authority and/or his designee.  No reprisal will be made for seeking health care services. No information derived solely from the health record or from the provision of care will be used to initiate or support prosecution or disciplinary action against the inmate.

A.     Computerized medical charting will be secure and password protected.

     1.     Inactive medical records will be retained in a secured location.

     2.     Access to the health records will be restricted on a need to know basis. Only the following medical personnel will have access:

          a.     Health authority or his designee

          b.     Physicians

          c.     Psychiatrists

          d.     Dentist

          e.     Psychologist or social worker

          f.     Nurses

B.     Access to the health records will be granted, with approval from the health authority or his designee to:

     1.     The legal authority representing the health services unit in lawsuits.

     2.     The court when a court order is issued to produce said records.

     3.     Inmate's lawyer when complying with Utah Code 78-25-25.

C.   Health care information in a general summary form may be shared with the jail administration or his designee for the purpose of inmate management, security and/or transportation.  Jail personnel authorized to receive this type of information may include:

   1.   Jail administration

      a.   For the purpose of monitoring jail climate.

   2.   Classification Sergeant

      a.   To provide appropriate information to assist in cell assignment.

   3.   Transportation Unit

      a.   To provide appropriate information to assist in transporting inmates to outside health providers for diagnosis and treatment.

   4.   Inmate Disciplinary Board

      a.   For an explanation of the health and/or psychological status to provide an accurate appraisal of the inmate's infraction.

   5.   When a request is made for health care information the health administrator will:

      a.   Review the health care record.

      b.   Provide the appropriate information requested in general summarized form.


**407.03**     **PATIENT CARE NOTICE**

A patient care notice will be prepared by the medical staff for inmates who require medical care but are not restricted to the infirmary.  The care notice shall contain information and instructions on daily routine patient care for specific or restrictive health related services.  The floor officer will refer to this record for guidance.  An example would be:

A.   Patient is a diabetic and requires a snack at 2200 hours.  The diabetic snack has been prepared and labeled and is available from the kitchen.

B.     Patient is on exercise restriction for medical reasons and is not to participate in strenuous activities.

C.     Patient is receiving a special diet.  This inmate needs to be monitored to assure he is not eating from other trays.

D.     The patient care notice will be placed under "Inmate Restrictions" on IMS. A member of the medical staff will update this file as needed.


**407.04     TRANSFER OF MEDICAL RECORDS (UJS MH-1), (NCCHC J-66).**

To ensure continuity of care for the inmates upon release from the Davis County Jail upon the inmate's release, the health authority or his designee will routinely provide summaries of inmate's health records to other correctional facilities.  Medical records and information will be sent to the correctional facility to which the inmate is sent. Medical records and information will be sent outside the correction system following established guidelines.

A.     The health services personnel will, upon receipt of a formal written request from an outside health provider, forward copies of the inmate/patient health care record covering his/her period of incarceration in the jail.

1.     The formal request must include a "Request for and Consent to Release Information" form signed by the inmate/patient authorizing the treatment provider receipt of the medical record.

B.     The health services unit will provide a discharge summary for correctional facilities to which the inmate is sent.

1.     The information will be delivered to the facility by the transporting agency in a sealed envelope.

2.     The information is sent to the facility (mailed).

3.     The information will be recorded.

a.     Date, time, initial and information dispersed.


**407.05     RETENTION OF MEDICAL RECORD  (UJS MH-1), (NCCHC J-67).**

To ensure records retention for a seven year period and to assist in protecting the medico-legal interest of the inmate, care providers and the Davis County Jail, medical records will be retained according to County legal requirements.

A.     Health service files and records will be retained for a period of (7) seven years following the last health encounter.

B.     The health service administrator will on a yearly basis determine the files to be destroyed.

C.     Files are re-activated any time an inmate re-enters the system within the seven (7) year period.


## 408.00      MEDICAL-LEGAL ISSUES


## 408.01      INFORMED CONSENT  (UJS MH-19), (NCCHC J-68), (ACA 2-5284).

To ensure the inmate is fully informed of proposed treatment and has signed a written agreement for the treatment, the informed consent of inmates will be required for all examination, treatment and procedures governed by the informed consent standards of the community.  Permission will be obtained when the inmate is fully competent.

A.     Prior to the initiation of a medical treatment or procedure, the physician and/or dentist will explain the procedure, consequences, alternatives and risks involved.

B.     The inmate will sign a written informed consent form (DCJ Form 406 Dental) authorizing the specific treatment.

        1.     Consent will be required for, but not limited to, the following:

               a.     Surgical treatment:  Minor surgery

               b.     Invasive examination:  Biopsy.

               c.     Invasive procedures: Lumbar puncture, regional anesthesia, tooth extractions.

        2.     The consent form will be written in terminology understood by the inmate:

               a.     It will be read to the inmate if he/she cannot read.

    b.    An interpreter will be used if available.

    c.    Every reasonable effort will be made to effectively communicate with the inmate.

3.    Should an inmate refuse care for a communicable disease that is considered necessary by the attending physician, a court order may be sought by the jail administration after consultation with the physician.

4.    The informed consent requirement will be waived for the following:

    a.    An emergency which requires immediate medical intervention for the health and/or safety of the inmate.

    b.    Emergency care to the inmate who is unconscious or incoherent.

    c.    Emergency care involving the inmate who is mentally or emotionally disturbed and/or incapable of understanding or communicating with the health services personnel.

        1)    Health services personnel must exercise their best medical judgment in all such cases.

5.    When proceeding with treatment without obtaining informed consent:

    a.    Documentation will be made of:

        1)    All aspects of the inmate's condition.

        2)    Reasons for medical intervention.

## 408.02    RIGHT TO REFUSE TREATMENT (NCCHC J-69).

State law accords persons over the age of 18 years of age the right to refuse health care for personal or religious reasons. To ensure the right of inmates to refuse medical treatment when they are considered competent to do so there will be no blanket refusal for treatment.  By refusing treatment at a particular time, the inmate does not waive his/her right to subsequent health care.

A.    Health care staff will explain the consequences of not receiving the treatment.

B.    The inmate will sign a refusal of treatment form which describes the nature of the

condition for which evaluation, treatment and care are offered and the nature of the service to be provided.

1.      The form will be written in a language understood by the inmate or every attempt will be made to have an interpreter present.
2.      If the inmate's signature will be witnessed by two jail staff members, one must be from the medical unit.

3.      The form will be filed in the inmate's medical file.

4.      All refusals will be documented.  An incident report will be written.


**408.03      FORCED PSYCHOTROPIC MEDICATION  (NCCHC J-70).**

To provide a means to prevent psychotic inmates from harming themselves or others when all other methods have failed, forced psychotropic medication will be administered to inmates refusing medication when emergency situations arise resulting in a danger to the inmate and/or health services and jail staff.

A.      All medications will be prescribed by a licensed physician, exercising his/her best judgment, in accordance with accepted medical practice and based on legitimate needs of the inmate, not for the convenience of the staff.

B.      Decisions for involuntary administration of psychotropic medication will be based on the following:

1.      The physician's evaluation of the inmate based on personal observation or reported observation by the nurse on duty or crisis worker.

2.      The inmate's medical/psychiatric history.

3.      The possible effects of the medication.

4.      Evaluation of the danger to the inmate and others if the inmate is not medicated.

5.      Whether a state of emergency exists in the inmate's condition.

6.      When other treatment alternatives are deemed to be medically inappropriate to the situation, i.e.

        a.      Soft restraints.

      b.      Hard restraints.

      c.      Talking, counseling

C.      Documentation will be made in the inmates chart including:

      1.      The inmate's condition.

      2.      The threat posed.

      3.      The reason for the proposed forcing of medication.

      4.      Other treatments attempted.

D.      If an on-going need for involuntary psychotropic medication extends beyond 24 hours, a psychiatric consultation will be arranged.

      1.      If a need exists for further, prolonged involuntary administration of psychotropic medication extends beyond 72 hours or after a psychiatric evaluation, a court order will be obtained.

## 408.04      Hunger Strike

**Any Inmate or detainee housed within the Davis County Correctional Facility who is refusing to eat or drink for longer than 72 hours will be closely monitored by medical staff.**

A.      Inmates who are found to be not eating and drinking fluids for longer than 72 hours will be promptly referred to medical and mental health staff for evaluation and to determine if the inmate is on a hunger strike or is not eating because of a medical condition or has a significant mental illness preventing rational decision making.

      1.      If the inmate is severely mentally ill, and not competent to make an informed or rational decision to participate in a life sustaining activity, such as eating, the inmate will be moved to the medical unit for a mental health or crisis worker psychiatric consult and medical monitoring of the inmate's physical condition.

      2.      If an inmate is capable of eating and understands but still refuses food and medical / mental health care, nursing staff will obtain a

medical refusal form explaining the possible consequences.  This form will be signed by the inmate and witnessed by a nurse or if inmate refuses to sign form 2 staff members will document that information was given to inmate and he still refused to sign form.  This refusal will be scanned into the electronic medical record and be logged into Inmate Management System as a log entry and an incident report will be made by the nurse.

3.      The inmate will be immediately placed on the sick call list for evaluation by the jail physician or medical staff.  At that time, a housing determination will be made as to the need of close observation in the medical infirmary or a special housing unit by the medical staff and the watch commander.

4.      A meal log will be initiated by the Classification Section and all meals and fluids consumed by the inmate will be logged by the jail staff.  A daily report will be delivered to the medical staff.  The unconsumed portions in the tray will be promptly removed from the medical cell.  This log will continue until such time as a physician or medical staff determines that the inmate is no longer in danger.

5.      Restrictions are placed on all activities such as recreation yard times and inmate programs outside of the housing unit.

6.      Commissary purchases will be immediately restricted to hygiene items only and any commissary food items will be removed from the inmates cell.  Commissary restrictions will remain in place until such time that adequate food consumption is taking place for a minimum of one week.

7.      The following will be monitored at least every 24 hours or as directed by the jail physician or medical staff:

a.      Weight  (have inmate face away from the scale and do not tell inmate what the weight is)

b.      Vital signs

c.      Skin turgor

d.      General appearance and mood

e.      Lab work as directed by physician (UA, CBC, CMP, etc.)

8.    If the inmate is a contract inmate, such as USM, FBOP, ICE, USP, etc. the contracting agency will be notified on the next business day, from when a hunger strike has been identified.

9.    When the physician or medical staff determines it medically mandatory to initiate forced intravenous fluids and or forced feedings via nasogastric tube in order to preserve the inmate's health or life a court order will be obtained by jail administration and the health services supervisor for such. At that time a medical determination will be made if this can be safely done in the jail infirmary or if a referral to a local hospital is required.

10.   Forced nasogastric tube placement and feedings will only take place at the direction of the jail health authority and administered by a registered nurse. The inmate must be under constant supervision while feeding takes place and tube will be removed after each feeding and replaced with each subsequent feeding.

11.   Restraints may be necessary during the tube placement and or the feeding process and will be applied per jail policy regarding restraints.

12.   Restraints will never be applied as punishment for failure to eat.


## 408.05    MEDICAL RESEARCH (UJS MH-29,30), (NCCHC J-71), (ACA 2-5285).

The Davis County Jail does not conduct biomedical, chemical or behavioral research using prisoners as subjects. It will be absolutely prohibited for any inmate to participate in a medical or pharmaceutical test for experimental or research purposes.


## 408.06    ELECTIVE PROCEDURES  (UJS MH-04.03.03)

To assure that medical care is provided in a uniform and consist basis to inmates, a process shall be followed that identifies which medical procedures are necessary versus which procedures are considered **Elective Procedures**.  Inmates are not entitled to receive care that includes elective procedures or in other words, non-essential care. The County is likewise not obligated to pay for services or procedures that are deemed elective.  A medical procedure shall be deemed elective if:

A.   Jail Health Authority will have final say in determining if any medical procedure is elective or necessary.

B.   A physician or PA will assess an inmate at sick call and make a medical recommendation for surgery or outside medical care.  He will then consult with the Jail Health Authority to determine if this condition requires immediate care or care at a level that cannot be provided for inside the jail.

C.   If it has been determined a referral is required for outside medical care, the Medical Services Supervisor will be notified.

   1.   The medical Services Supervisor will notify Jail administration for the need to transport an inmate outside the confines of the jail.

   2.   An appointment will scheduled at an appropriate medical facility and transportation arrangements will be made.

   3.   If an inmate has medical insurance that will cover the medical procedure or surgery, it will be utilized and the county shall become the back-up payer.

   4.   If the procedure cannot wait until the inmate is released from jail, the Medical Services Supervisor may notify the inmate's judge to request a medical furlough for the inmate to be able to seek medical care on his own.

      a)   If the inmate is not able to be furloughed due to his charges or he is deemed an escape risk by the judge or Jail Commander, transportation services will be set up and the inmate may be required to pay for the transportation costs, $80.00 for any elective procedure transport.

      b)   If the inmate is being transported for an elective procedure, he will be responsible for all medical bills associated with the medical visit including labs, tests, consults, and surgery.  When the appointment is made, the inmate will be clearly identified as the only responsible party involved and payment arrangements will be set up by him or his family in advance of such procedure taking place.

      c)   Inmates may not request elective surgery; they must be referred by the jail physician or PA during a sick call clinic.

## 409.00        INMATE HEALTH CARE CO-PAYMENT POLICY

Revised April 25 2017

It is the policy of the Davis County Jail to provide health care, meaning both medical and mental care, for the serious health needs of inmates.  The cost of providing health care will not be a consideration for denying health care to an inmate for serious health problems.  However, to the extent allowed by law, the costs for health care to inmates in certain circumstances may be allocated and the inmate required to pay a co-payment for the health care.

## 409.01      HEALTH CARE NOT REFUSED FOR FINANCIAL REASONS

No inmate shall be refused health care for any serious health matter for financial reasons.

## 409.02      NOTICE TO INMATE OF HEALTH CARE CO-PAYMENTS

A.      Each inmate shall receive orientation and notice of the inmate health care co-pay policy and procedures.

B.      The orientation shall include information as to:

    1.      Which health care services require inmate co-payment fees and which do not;

    2.      The procedures for providing health care services which require inmate co-payment;

    3.      Confirmation that health care will not be refused for serious health matters for financial reasons;

    4.      Deductions from, debits to, and freezing of inmate commissary accounts for inmate health care co-payment fees;

    5.      Indigent Inmate hearings will be determined by classification.

    6.      The fee schedule adopted and implemented pursuant to this policy for inmate health care co-payment fees;

    7.      Ability and policy of Davis County to seek reimbursement from the inmate or the inmate's insurance carrier, if any, as the law may permit.

## 409.03      IMPOSED INMATE CO-PAYMENT FEES

A.    Inmates shall pay a co-payment fee for any health care services which they or their personal physician or other preferred, provided care, may request or initiate.

B.    In addition, the inmate shall pay a co-payment fee for the following health care services to which the inmate maybe referred:

    1.    Institutional or other physician;

    2.    Physician's designee, such as a physician's assistant or nurse practitioner;

    3.    Dentist;

    4.    Psychiatrist or psychologist;

    5.    Nurse; or mental health.

C.    Inmates will not be charged for the following health care services:

    1.    Emergency care;

    2.    Health care visits or services initiated by a health care provider;

    3.    Follow-up health care visits or services referred by the health care provider or jail medical staff member;

    4.    Intake screening referrals;

    5.    14-day physical assessments;

    6.    In-house specialty clinics or services;

    7.    Counseling for HIV or drug abuse;

    8.    Diagnostic tests/ X-rays ordered by the jail physician.


## 409.04    INMATE HEALTH CARE CO-PAYMENT FEE

A.    The inmate will be charged a co-payment fee each health care visit or service for which health care co-payment is imposed under this policy.

B.    The fee schedule for inmate health care co-payments is as follows:

*Physician*          *$10.00*          *Nurse Visit   $3.00*
*Psychiatrist*      *$10.00*          *Mental Health $3.00*
*Dentist*            *$10.00*          *Prescriptions $3.00*
*Medical request forms $1.00*

## 409.05          INMATE HEALTH CARE CO-PAYMENT PROCEDURES

A.     The inmate will complete, sign and submit an INMATE REQUEST FORM (DCJ-444), identifying the health problem and any treatment requests the inmate may have.

B.     If it is determined the health care requested involves a health care visit or treatment which requires an inmate health care co-payment fee, the triage nurse shall prepare a CHARGE DOCUMENT (DCJ-446) describing:

   1.      The health care provided or to be provided;

   2.      The inmate health care co-payment fee for that health care;

   3.      The inmate's signature or confirmation by the triage nurse and another witness that the inmate refused to sign the CHARGE DOCUMENT;

   4.      A statement substantially as follows: "Inmate refuses to sign this CHARGE DOCUMENT for co-payment of health care, but will have their commissary account debited according to the Inmate Health Care Co-Payment Fee Schedule."

   5.      A statement substantially as follows: "If an inmate refuses to sign the CHARGE DOCUMENT, the inmate shall  be given the right to an indigency hearing to be held within five (5) working days of the refusal.  If the inmate fails to meet the criteria for indigency, the inmate health care co-payment fee may be deducted from the inmate's Commissary Account."

   6.      The inmate will be given a copy of the CHARGE DOCUMENT.

C.     If the inmate has signed the CHARGE DOCUMENT, the amount of the inmate health care co-payment fee shall be deducted from his Commissary Account.

D.     Medical co-payments may show as a negative balance on the inmate's commissary account if insufficient funds are available.

## 409.06          INMATE INDIGENCY HEARING (DCJ-445)

If an inmate claims to be indigent, indigency hearings shall be held by Classification within five (5) working days.  The inmate will be given the opportunity to present any information or documentation to substantiate his claim of indigency at the hearing. Pending the hearing and a determination of the inmate's claim of indigency, the inmate's Commissary Account will reflect a negative balance for insufficient funds available. Be frozen in an amount equal to the outstanding inmate health care co-payment fee of the inmate.

## 409.07     INMATE GRIEVANCE PROCEDURE

If an inmate has a grievance about the inmate health care co-payment policy, fee, or procedure, the inmate may submit an Inmate Request/Grievance Form and the grievance shall be considered and acted upon in the same manner as any other grievance.  The inmate may request an accounting and may contest the validity of the inmate health care co-payment charge by this grievance.

## 500.00     INMATE RIGHTS, RULES AND DISCIPLINE (UJS D 01.02.00)

A.     This Chapter addresses the constitutional and statutory rights of inmates of Davis County Correctional Facilities. It is important that all inmates be provided information about those rights and the consequences for failing to obey the Facility rules. All actions taken against inmates will be documented, including those rights or privileges that may be withheld due to disciplinary actions.

## 500.01     DEFINITIONS

A.     The definitions below are to assist staff in defining written policy and processing mail. They are not to be interpreted as any other meaning than that which it was intended.

| | |
|---|---|
| **Bulk-rate mail** | large mass or volume of mail sent at a set rate of postage (for this policy referring to only 3rd and 4th class bulk mailings) |
| **Catalog** | a systematized list, featuring descriptions of items, (e.g. a publication listing items for sale) |
| **Censor** | cutting or blacking out information or otherwise modifying the text of a letter, publications or other documents, or rejecting on the basis of content. |
| **Certified check** | pre-paid check |