BACZYNSKI LAW, PLLC
Daniel M. Baczynski, Bar No. 15530
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555 Phone
*dan@bskilaw.com*

LAW OFFICES OF TAD D. DRAPER P.C.
Tad D. Draper, Bar #4311
12339 South 800 East Ste. 101
Draper, Utah 84020
(801) 553-1700
(801) 255-5588 fax
*Legaljustice3@gmail.com*

**IN THE UNITED STATES DISTRICT COURT**
**STATE OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CYNTHIA STELLA, and the ESTATE OF HEATHER MILLER,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVIS COUNTY, SHERIFF TODD RICHARDSON, MAVIN ANDERSON, JAMES ONDRICEK<br><br>Defendants. | **REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No: 1:18-cv-002<br><br>Judge: Jill Parrish |

Plaintiffs Cynthia Stella and the Estate of Heather Miller, by and through their attorneys, hereby submits this reply memorandum in support of their motion for partial summary judgment.

**INTRODUCTION**

In their memorandum in opposition, Defendants do not and cannot contest any of the material facts that warrant a finding of deliberate indifference. It is undisputed that Davis County operated the jail without medical protocols in violation of jail standards and its own policy.

1

Coupled with the lack of training and supervision, the practice constitutes deliberate indifference. Davis County Jail's lack of oversight allowed Nurse Anderson to provide substandard medical care to inmates. When called to provide medical attention to Ms. Miller, Nurse Anderson did not take or monitor Ms. Miller's vitals (the undisputed standard of care) but rather relied on his bias against inmates in assuming Ms. Miller was merely suffering from withdrawal. It is also undisputed that Nurse Anderson's failed to assess Ms. Miller in violation his personal standards, the standard of care, and jail expectations constituted deliberate indifference. As such, the Court should grant the motion for partial summary judgment.

## RESPONSE TO STATEMENT OF FACTS[1]

**23.** Clerk Rogers at Davis County Jail, who observed Ms. Miller as she hobbled to the stairs and scooted down on her butt, thought it was obvious Ms. Miller needed medical care and found it weird that Ms. Miller was not taken to medical.

*Defendants' Response*: Objection, lack of foundation pursuant to Rule 901. It is likewise disputed. While Clerk Rogers offered his opinion on the events, he does not have medical training and was not qualified to determine whether Ms. Miller should be taken to medical.

**REPLY:** Because Defendants do not elaborate as to the basis for their objection pursuant to Rule 901, Plaintiffs are left to speculate. To the extent Defendants argue the Exhibit is not a copy of the Audio/Video Recording of the AG's Interview of Clerk Rogers, the Exhibit was produced by the AG's Office pursuant to a subpoena issued in this case.. Clerk Rogers is not offering medical testimony but only a layperson's testimony as to the condition of Ms. Miller after she fell from her bunk.

---

1 Facts that are not addressed are not material to the motion for partial summary judgment. To the extent they are undisputed, they may be considered true for the limited purpose of this motion.

24. Nurse Ondricek, the supervising nurse at Davis County Jail, further testified that it was his expectation that a nurse would bring an inmate who was unable to walk to the jail's medical wing for observation.

*Defendants' Response*: Undisputed. However, Ms. Miller was taken to a cellblock used for medical observation, as medical was nearly full. Deputy Lloyd walked through Lima Unit two times before he noticed any changes in Ms. Miller's condition just after 8:00 p.m. ***The Davis County Jail is set up with emergent medical evaluation cells and Lima Housing Unit which houses less acute medical and mentally ill patients. The housing change of Ms. Miller from Kilo Unit to Lima Unit was in line with the policy of other jails. Nurse Anderson's decision to house Ms. Miller in Lima Unit based on his initial evaluation and assessment was appropriate.*** Moreover, had Nurse Anderson assessed Ms. Miller to be a more severe trauma it is likely that he would have housed her in the medical cell.

**REPLY:** Defendants have presented no evidence that "*[t]he housing change of Ms. Miller from Kilo Unit to Lima Unit was in line with the policy of other jails. Nurse Anderson's decision to house Ms. Miller in Lima Unit based on his initial evaluation and assessment was appropriate*"**.** These statements are contradicted by both Nurse Anderson and Nurse Ondricek who admitted that Ms. Miller should have been taken into medical solely due to Ms. Miller's inability to walk without assistance. Exhibit 18 at 21:01 – 23:05; Exhibit 4 at 57:16-25; Exhibit 3 at 38:13-23.

25. Nurse Anderson did not take Ms. Miller to medical even though a bed was available in medical.

*Defendants' Response*: Undisputed. But, Nurse Anderson did not put Ms. Miller in the available bed in the medical unit because she would have shared the cell with an inmate

who was withdrawing from Methamphetamine addiction and vomiting. Nurse Anderson believed Ms. Miller needed a clean, quiet cell to recover.

**REPLY:** Regardless of the situation in medical, the fact remains that medical had a bed available for Ms. Miller. Exhibit 3 at 38:13 – 40:18. As Nurse Anderson and Ondricek have admitted, Ms. Miller should have been taken to medical. Exhibit 18 at 21:01 – 23:05; Exhibit 4 at 57:16-25; Exhibit 3 at 38:13-23. Furthermore, the state of medical in no way excuses Nurse Anderson's failure to assess Ms. Miller prior to her transfer.

**43.** Though Davis County does not have the means to diagnose a ruptured spleen, the Jail would have diagnosed internal bleeding had the Jail monitored Ms. Miller's vital signs.

*Defendants' Response*: Disputed. Dr. Tubbs opined that "Miller's diagnosis likely would not have been apparent to Nurse Anderson based on findings of vital signs. Typically, one would expect elevated blood pressure and pulse immediately following a traumatic event and it is unlikely that Miller would have been found hypotensive and tachycardic at the time of injury."

**REPLY:** The response does not address the allegation that monitoring vital signs would have alerted Davis County to internal bleeding. While true that the initial vital signs would not have indicated internal bleeding, the value of vital signs is charting their progression over a period of time. Exhibit 4 at 31:1-22. While the initial vital signs would have been high, they ultimately would have decreased overtime due to the internal bleeding. Exhibit 4 at 57:3-10. The decrease over time would have alerted Davis County to the internal bleeding. Exhibit 10; Exhibit 4 at 57:3-10.

**44.** Blood loss will result in a high pulse rate, anxiety, narrow pulse pressure, elevated respiratory rate, and increased anxiety or confusion, signs which would have been observable within 1 hour of Ms. Miller's injury.

*Defendants' Response*: Objection based on hearsay (Rule 802) and the lack of foundation (Rule 901). It is also disputed. Deputy Lloyd walked through Lima Unit two times before he noticed any changes in Miller just after 8:00 P.M.

**REPLY:** The allegation derives from Dr. Starr's expert report and therefore satisfies Rule 802 and 901. It is also unsurprising that Deputy Lloyd, who is not medically trained, did not observe high pulse rate, anxiety, narrow pulse pressure, elevated respiratory rate, and increased anxiety or confusion, as these signs would not have been observable from Ms. Miller's door.

**45.** General nursing standards require nurses to take and monitor vital signs following a suspected injury.

*Defendants' Response*: Undisputed. But there was no suspected injury.

**REPLY:** Nurse Anderson was called following the fall in case Ms. Miller suffered an injury. Exhibit 2 at 11:7-13, 13:2-8. The fall was the injury.

**62.** Maintaining written medical protocols is the standard of care for jails across the country.

*Defendants' Response*: Objection based on hearsay (Rule 802) and the lack of foundation (Rule 901). It is likewise disputed. Dr. Tubbs, for example, has written many medical protocols but never a protocol for treating injuries from bunk falls in a jail. Falls in jails happen frequently but the injuries sustained are wide ranging. It would not be possible to write a protocol that would be comprehensive and inclusive of all possible pathology that could result from a fall.

**REPLY:** The fact is based on Todd Vinger's Expert Report, as well as Davis County's own

5

policy. Exhibit 14 at 46. Therefore, the evidentiary basis satisfies Rule 802 and 901. The remaining response is not responsive. Dr. Tubbs does not opine that medical protocols are not required. In fact, his history of drafting protocols supports the statement of fact. Exhibit 15. Plaintiffs are not advocating for a protocol specific for falls because such a protocol would be unworkable. However, if Davis County Jail had general protocols such as those drafted by Dr. Tubbs, Nurse Anderson would have taken and monitored Ms. Miller's vitals and likely saved her life. Exhibit 10.

> 63. For the last six years, Davis County Jail has operated without any medical or nursing protocols in violation of written policy 401.6
>
> *Defendants' Response*: Disputed. They do not have written protocols.

**REPLY:** There is no evidence in the record suggesting Davis County Jail had any medical protocols, written or otherwise. The response is not supported by any evidentiary basis.

> **68/70.** Nurse Ondricek is also expected to review nursing care after a death at the jail. Nurse Ondricek did not do a substantive review of the nursing care provided to Ms. Miller.
>
> *Defendants' Response*: Objection lack of relevance (Rule 402) and lack of probative value (Rule 403). Once more, whatever Nurse Ondricek was expected to do, required to do, and/or did not do after Ms. Miller's death has no bearing on Plaintiffs' claims. Also, disputed since Nurse Ondricek reviewed the incident reports, chart notes, and spoke with Nurse Anderson.

**REPLY:** Nurse Ondricek's responsibilities for supervising the nurses are critical to his supervisory liability. With no medical protocols and no training as to Nurse Ondricek's expectations, there are no uniform standards within Davis County Jail as to medical care. Exhibit

1 at 73-74; Exhibit 4 at 35:2-9. Nurses are supposed to abide by the professional standard for nurses, but Nurse Ondricek takes no steps to evaluate whether the care provided actually meets this minimum standard. Exhibit 4 at 50:5-7. He is willfully blind, as demonstrated in this case where Nurse Ondricek performed only a perfunctory overview of the case (he never even obtained the autopsy report), the perfunctory review indicated violations of his expectations, but Nurse Anderson was not disciplined. Exhibit 4 at 50:5-7.

74. Though Nurse Anderson violated Jail's expectations regarding the standard of medical care, Nurse Anderson was not disciplined for his failures.

*Defendants' Response*: Disputed. There is no evidence that Nurse Anderson breached professional nursing standards in his assessment and evaluation of Ms. Miller. Moreover, Nurse Anderson did not violate the Jail's expectations regarding the standard of medical care. He evaluated Ms. Miller's condition—which at the time of her fall was a sore left side, no evidence of other trauma, and Ms. Miller's self-reported withdrawal from methamphetamine—and moved her to a bottom bunk to recover. He did not take the phone call that reported Ms. Miller was lying partially naked on the ground, with a spot of blood on her chin. As soon as Ms. Miller was brought to medical, he instructed for paramedics to be called and attempted to treat her with the knowledge of her new symptoms.

**REPLY:** Defendants' own expert concedes Nurse Anderson should have taken Ms. Miller's vitals. Exhibit 12. Furthermore, Nurse Anderson himself admitted he should have taken vitals and taken Ms. Miller to medical. Exhibit 19 at 11:29:56-11:31:05. Nurse Ondricek admitted the same. Exhibit 4 at 56:21 – 57:2.

DR. TUBBS' AFFIDAVIT

Dr. Tubbs' affidavit exceeds the scope of his expert report. Fortunately, the additional facts and opinions included in his affidavit are not material to the question of deliberate indifference. Dr. Tubbs admits Nurse Anderson should have taken Ms. Miller's vitals. Furthermore, Dr. Tubbs does not excuse Davis County Jail's failure to implement medical protocols, not does he excuse Nurse Ondricek's failure to train or supervise his nurses. This are the facts material that establish Nurse Anderson, Nurse Ondricek, and Sheriff Richardson acted with deliberate indifference.

**ARGUMENT**

*Nurse Anderson's conduct constituted deliberate indifference to Ms. Miller's medical needs.*

Because jail deputies are not medically trained, they rely on nurses to determine when an inmate requires medical care. Nurse Anderson was called to assess Ms. Miller. He was Ms. Miller's gatekeeper to medical treatment. A gatekeeper acts with deliberate indifference when he "delays or refuses to fulfill that gatekeeper role." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); see also *Estelle v. Gamble,* 429 U.S. 97, 104-5 (1976). Nurse Anderson did not fulfill the role of gatekeeper. He did not send Ms. Miller to medical, he did not order medical observation of Ms. Miller, and he did not assess Ms. Miller's condition prior to denying her medical attention. In the process, Nurse Anderson violated general nursing standards, jail expectations, and his personal practice when he failed to check Ms. Miller's vitals as part of his assessment. Because he did not fulfill the role of gatekeeper, Nurse Anderson acted with deliberate indifference.

Defendants ask the Court to excuse the Nurse Anderson's failings because he assumed Ms. Miller was coming off drugs. The excuse is unavailing. Nurse Anderson knew that he should

have taken Ms. Miller's vitals, and therefore knew the risks associated with the failure to abide by the standard of care. Had Nurse Anderson done the assessment properly, he would have noticed the drop in vitals associated with internal bleeding. Nurse Anderson cannot avoid liability on the basis that he failed to complete the assessment. See *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 432 (10th Cir. 2014) (The Defendants' attempt to avoid liability by conceding they failed to check Mr. Booker's vitals or even look at his face after the incident is therefore misplaced).

### *Nurse Ondricek failed to adequately train and supervise medical staff.*

Nurse Ondricek is liable for his failures as a supervisor. Nurse Ondricek did not implement any uniform standards for providing medical care at the jail. He did not train his nurses as to his expectations, nor did he perform any oversight to ensure the medical care provided did not fall below the standard of care. This lack of oversight allowed Nurse Anderson to provide substandard care to Ms. Miller.

Defendants first argue there is no causal connection between the failure to train and Nurse Anderson's failure to provide medical care. But had Nurse Anderson been training on Nurse Ondricek's expectations, Ms. Miller would not have died. Nurse Ondricek testified his expectation following a fall was for the nurses, at minimum, to take and monitor vitals. Nurse Ondricek also testified his expectation would be for a nurse to take an inmate to medical if the inmate was unable to walk without assistance. Both circumstances applied to Ms. Miller. Had Nurse Anderson been trained, Ms. Miller would have been taken to medical or had her vitals monitored, likely sparing her from death.

The question for causal connection is '[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" Had

Nurse Anderson been properly trained and supervised, Ms. Miller's death could have been avoided.

Defendants further argue that relying on the nurses to practice pursuant to the applicable standard of care cannot be considered deliberate indifference. However, [a] supervisor or municipality may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). There was no training or oversight as to the care provided at Davis County Jail. This egregious lack of supervision was so reckless and negligent that misconduct was almost inevitable. As such, Nurse Ondricek's efforts as a supervisor constitutes deliberate indifference.

### *Sheriff Richardson and Davis County Jail's practice of operating without medical protocols constitutes deliberate indifference.*

Sheriff Richardson operated Davis County Jail as a policy maker without written medical protocols, in violation of Davis County Jail's own policy manual, for six years. The practice of not maintaining written protocols violates the standard of care in jails and serves as evidence that Defendants were aware of the risks associated with the practice. Because medical protocols are considered essential to providing uniform and adequate care, the practice of operating a jail without this essential component constitutes deliberate indifference.

Defendants argue the practice was not a "moving force" behind the Nurse Anderson's failure to provide adequate medical care. Considering taking a monitoring vitals following an injury is the standard of care, medical protocols would have required Nurse Anderson to take and monitor vitals even though Nurse Anderson assumed Ms. Miller's symptoms were caused by drug withdrawal. Had the protocol been followed, Ms. Miller could have avoided her unfortunate death. This close causal connections between the lack of protocols and Nurse Anderson's

substandard care establishes Davis County's practice was the moving force behind the constitutional violation. *Cox v. Glanz*, 800 F.3d 1231, 1255 (10th Cir. 2015)(moving force established by a close causal connection).

Defendants further argue that operating a jail without medical protocols was not "substantially certain" to result in injury. However, Defendants were aware of the importance of medical protocols because medical protocols were required by Davis County Jail policies. The protocols are in fact mentioned and relied upon in the policies on multiple occasions. Furthermore, the standard of practice required Davis County Jail to implement medical protocols. Considering Davis County Jail was so far outside the accepted practices of medical care, it was highly predictable that operating without protocols would result in substandard care. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002)("deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action").

## CONCLUSION

Plaintiff Aus respectfully requests that the Court find Nurse Anderson, Nurse Ondricek, Sheriff Richardson, and Davis County acted with deliberate indifference to Ms. Miller's medical needs.

DATED this 25th day of January, 2019.

/s/ Daniel Baczynski
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on this 25th day of January, 2019, I caused **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** to be filed with the Court through the ECF system, with service provided on the following:

>Jesse C. Trentadue
>Noah M. Hoagland
>Sarah E. Jenkins
>jesse32@sautah.com
>nhoagland@sautah.com
>sjenkins@sautah.com
>SUITTER AXLAND, PLLC
>8 East Broadway, Suite 200
>Salt Lake City, Utah 84111
>Tel: (801) 532-7300
>Fax: (801) 532-7355

/s/     Daniel Baczynski