Jesse C. Trentadue (#4961)
Michael W. Homer (#1535)
Noah M. Hoagland (#11400)
Sarah Jenkins (#15640)
*SUITTER AXLAND, PLLC*
8 East Broadway, Suite 200
Salt Lake City, UT  84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355
jesse32@sautah.com
mhomer@sautah.com
nhoagland@sautah.com
sjenkins@sautah.com
*Attorneys for Davis County Defendants*

**UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CYNTHIA STELLA, and the ESTATE OF HEATHER MILLER,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVIS COUNTY, SHERIFF TODD RICHARDSON, MAVIN ANDERSON, JAMES ONDRICEK,<br><br>Defendants. | **DAVIS COUNTY DEFENDANTS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Civil No. 1:18-cv-00002-JNP<br><br>Judge Jill N. Parrish |

Defendants Davis County, Sheriff Todd Richardson, Marvin Anderson, and James

Ondricek (collectively "Davis County Defendants"), by and through counsel of record,

1

and pursuant to the Court's May 8, 2019 *Order,*[1] hereby submit this *Supplemental Brief in Further Support of Cross-Motion for Summary Judgment.*

## BACKGROUND

At issue are five (5) exhibits that Plaintiffs offered in support of their *Motion for Partial Summary Judgment.* These were: Exhibit 10, Dr. Starr's Expert Report; Exhibit 11, Nurse Schultz's Expert Report; Exhibit 16, Vinger's Expert Report; Exhibit 20, Clerk Austin Roger's 30-minute recorded interview by representatives of the Utah Attorney General's Office; and Exhibit 21, Nurse Daniel Layton's recorded interview. Defendants objected to all of these exhibits on the basis of hearsay and lack of foundation.[2] In addition, Defendants specifically objected to Austin Roger's interview based upon the lack of relevance.[3]

## SUMMARY OF LAW

Pursuant to the provision of *Fed. R. Civ. P.* 56(c)(2), the issue is whether facts that Plaintiffs' referenced in these exhibits could be presented in a form that would be admissible into evidence at trial. In other words, could these facts ultimately be presented

---

[1] Dkt. 51.

[2] Dkt. 41, pg. 5 fn 1.

[3] Dkt. 41, pg. 15, ¶ 33.

in any admissible form at trial.[4] Furthermore, once the objections were made to this evidence, the burden was upon the Plaintiffs to show that the factual material was admissible as presented OR to explain the admissible form that is anticipated at trial,[5] which Plaintiffs failed to do. Plaintiffs' response to Defendants' objections was to state in conclusory fashion that the reports of Dr. Starr and Mr. Vinger's were those of experts which satisfied the admissibility requirements of Rule 801 and 901,[6] and that the recorded interviews were produced by the Attorney General's Office pursuant to a *subpoena.*[7] More importantly, as will be explained for each exhibit, Plaintiffs' cannot provide the facts in a form that would be admissible at trial.

## EXHIBIT 10 - STARR REPORT

Dr. Starr opines in his report that:

> Splenic injuries are effectively treated today due to the ability to recognize these injuries earlier via bedside ultrasound and CT imaging. Both these modalities are readily available at nearly every emergency department in the country. If Heather's vital signs were obtained earlier, her serious and life-threatening condition would have been rapidly recognized by the jail medical staff.[8]

---

[4] *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.,* 452 F.3d 1193, (10th Cir. 2006).

[5] *See Brown v. Perez,* 835 F.3d 1223, 1232-33 (10th Cir. 2016).

[6] *See* Dkt. 43, pg. 5, ¶ 44 and pg. 6, ¶ 62.

[7] *Id.* at pg. 2, ¶ 23.

[8] Exhibit 10, Dkt. 31-10, pg. 3.

Dr. Starr's opinions, however, are not supported by the undisputed evidence. They are, in fact, contrary to the undisputed evidence. Plaintiffs, for example, concede that "Davis County does not have the means to diagnose a ruptured spleen [however] the Jail would have diagnosed internal bleeding had the Jail monitored Ms. Miller's vital signs."[9]

That the nursing staff, including Nurse Anderson, could not have diagnosed Ms. Miller's ruptured spleen is also consistent with the opinion of Dr. Christensen from the Utah Medical Examiner's Office, who stated that "this type of injury would have been difficult to diagnose without being at a hospital."[10] Dr. Christensen stated, "a ruptured spleen is typically diagnosed in three ways: through an ultrasound, a blood count, or actually cutting open a patient. None of these things would have been done by a nurse at a jail." Dr. Christensen also said "that internal injury is often difficult to diagnose through an external examination because the patient often does not know where the pain is."[11]

Similarly, Dr. Tubbs said a ruptured spleen is a rare and unusual event.[12] According to Dr. Tubbs, the incidence of splenic laceration resulting in exsanguination and death is so low that a nurse would not be expected to be able to diagnose it quickly in

---

[9] Dkt. 43, pg. 4, ¶ 43.

[10] *Attorney General Report*, Dkt. 31-1, at 28.

[11] *Id.*

[12] *Tubbs Declaration,* Dkt. 40-1, ¶ 49.

the early stages of the disease.[13] Therefore, even if Ms. Miller was placed in the infirmary for close monitoring it is highly unlikely that the nursing staff would have been able to diagnose and treat this rapidly changing and insidious diagnosis,[14] and Plaintiffs likewise conceded this fact when they stated that: "while true that the initial vital signs would not have indicated internal bleeding, the value of vital signs is charting their progression over a period of time." Plaintiffs insist that Ms. Miller's "vital signs ultimately would have decreased over time due to the internal bleeding... [and that] the decrease over time would have alerted Davis County to the internal bleeding."  More importantly, Dr. Tubbs stated that there is no evidence that Miller's vital signs would have been significantly altered immediately following her fall to suggest to Nurse Anderson that she had suffered

---

[13] *Id.*

[14] *Id.*

a rare and complicated splenic laceration.[15] Simply stated, because they are contrary to the undisputed evidence, Dr. Starr cannot gives his opinions at trial.[16]

## EXHIBIT 11 - SCHULTZ REPORT

Deborah Schultz is a Registered Nurse. It is her conclusory opinion that Nurse Anderson violated the *Utah Nurse Practice Act*,[17] and that "Nurse Anderson's actions, or should I say lack of actions, could also be construed as medical malpractice."[18] Nurse Schultze could not give these opinions at trial because a section 1983 deliberate

---

[15] ***Error! Main Document Only.****Id.* It is also noteworthy that Plaintiffs did not dispute any of the additional facts submitted by Defendants both in opposition to Plaintiffs' *Motion for Partial Summary Judgment* and in support of Defendants' *Motion for Partial Summary Judgment.* This is noteworthy because:

> By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. *The court should accept as true all material facts asserted and properly supported in the summary judgment motion.* But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

*Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002)(emphasis added).

[16] *See Dodge v. Cotter Corp.* 328 F.3d 1212, 1222(10th Cir. 2003)(Expert opinion must be based on he ats).

[17] Dkt. 31-111, pg. 3.

[18] *Id*. at pg. 4.

indifference civil rights claim does not arise from a violation of state law,[19] or from medical malpractice.[20]

## EXHIBIT 16 - VINGER REPORT

Todd Vinger is not a physician, nurse or other type of medical provider. He is a former "jail commander," and he opines that it was extremely irresponsible and indifferent to the health and safety of inmates for the Davis County Jail's leadership not to have "followed their own written policy (401) to create and maintain a *Health and Safety Policy and Procedures Manual*...."[21] Mr. Vinger would not have been able to give that testimony at trial because the Utah Department of Professional Licensing required Davis County to do away with its medical treatment protocols,[22] so it was not a case of Davis County not having treatment protocols, and because the failure to comply with the Jail policy to implement treatment protocols will not support a section 1983 deliberate indifference claim.[23] Furthermore, Mr. Vinger does not offer any opinion to the effect

---

[19] *Margheim v. Buljiko*, 855 F.3d 1077, 1084 (10th Cir. 2017); *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10 th Cir. 1988)..

[20] *See Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996); *Estelle v. Gamble*, 420 U.S. 97, 105-06, 97 S. Ct. 285, 292 (1976).

[21] Dkt. 31-16, pg. 7.

[22] *See Richardson Depo.,* Dkt. 31-13, pgs. 24-28.

[23] **Error! Main Document Only.***See Davis v. Scherer,* 468 U.S. 183, 194-196 (1983); *Smith v. Freland,* 954 F.2d 343, 347-48 (6th Cir. 1992); *Herring v. Keenon,* 218 F.3d 1171, 1179-80 (10th Cir. 2000).

that the failure to have treatment protocols was the proximate cause of any injury to Ms. Miller and he could not give such an opinion due to his not being a physician or other qualified medical professional.[24]

## EXHIBIT 20 - ROGERS RECORDED INTERVIEW

Exhibit 20 is purportedly the complete recording of an interview of Davis County Jail Clerk Austin Rogers by an investigator from the Utah Attorney General's Office.[25]

---

[24]   In fact, none of Plaintiffs' experts offered any evidence of a "causal connection" between the alleged lack of treatment protocols and a violation of Ms. Miller's civil rights.

[25] Dkt. 35.

Mr. Rogers was not under oath. Neither is he a physician or health care provider. Nevertheless, Mr. Rogers says that he thought Ms. Miller should have been taken to the hospital,[26] and that the Jail nurses were "lazy."[27] Mr. Rogers could not offer this testimony at trial because: (1) he is not qualified to give medical opinions, and (2) he did not identify Nurse Anderson as being one of the nurses that he considered to be "lazy."

## EXHIBIT 21 - LAYTON RECORDED INTERVIEW

Exhibit 21 is purportedly the complete recording of an interview of Davis County Nurse Daniel Layton by an investigator from the Utah Attorney General's Office.[28] During that interview, Nurse Layton talks about a telephone conversation that he had with Deputy Lloyd concerning Ms. Miller.[29] The substance of that telephone conversation would not be admissible at trial because it did not involve any of the Defendants, and cannot be imputed to them pursuant to Fed. R. Civ. P. 801.

## CONCLUSION

Based on the foregoing information, the Court should sustain *Davis County Defendants'* objection to the foregoing exhibits and not consider them in ruling on either Plaintiffs' *Motion for Partial Summary Judgment* or Defendants' *Cross-Motion for Partial Summary Judgment.*

---

[26] Dkt. 41, pg. 11, ¶ 23.

[27] *Id.* at pgs. 14-15, ¶ 33.

[28] Dkt. 35.

[29] Dkt. 41, pg. 14, ¶¶ 31 and 32.

DATED this 15th day of May, 2019.

                        SUITTER AXLAND, PLLC

                        /s/ jesse c. trentadue
                        Jesse C. Trentadue
                        Michael W. Homer
                        Noah M. Hoagland
                        Sarah Jenkins
                        *Attorneys for Davis County, Utah; Sheriff Todd*
                        *Richardson, Marvin Anderson, and James Ondricek*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of May, 2019May 15, 2019, I electronically filed the foregoing **DAVIS COUNTY DEFENDANTS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, which sent electronic notification to the following parties:

Daniel M. Baczynski, Esq.
12339 South 800 East, Suite 101
Draper, Utah 84020
*Attorneys for Plaintiffs*

Tad D. Draper, Esq.
Law Offices of Tad D. Draper, P.C.
12339 South 800 East, Suite 101
Draper, Utah 84020
*Attorneys for Plaintiffs*

 /s/ jesse c. trentadue