IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CYNTHIA STELLA, and the ESTATE OF HEATHER MILLER,<br><br>                        Plaintiffs,<br><br>v.<br><br>DAVIS COUNTY, SHERIFF TODD RICHARDSON, MAVIN ANDERSON, and JAMES ONDRICEK,<br><br>                        Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:18-CV-002<br><br>District Judge Jill N. Parrish |

Plaintiff Cynthia Stella ("Stella") filed suit on behalf of her deceased daughter Heather Miller ("Miller"), who died while in the custody of the Davis County Jail. Stella and the Estate of Heather Miller ("Plaintiffs") filed a Motion for Partial Summary Judgment asking the court to grant judgment in their favor on their two federal claims brought under 42 U.S.C. § 1983, which assert violations of Miller's Eighth and/or Fourteenth Amendment rights. Defendants Davis County, Sheriff Todd Richardson, Nurse Mavin Anderson, and Nurse James Ondricek ("Defendants") oppose the motion, contesting certain statements of material fact and objecting under Fed. R. Civ. P. 56(c)(2) to certain evidence on which Plaintiffs rely. Defendants also filed a Cross-Motion for Partial Summary Judgment seeking dismissal of the federal claims on grounds of qualified immunity and asking that the court decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim.

# I.   BACKGROUND

## A. FACTUAL HISTORY[1]

On December 20, 2016, twenty-eight-year-old Heather Ashton Miller ("Miller") was booked into the Davis County Jail. She was assigned to a top bunk in the Kilo housing unit. On December 21, 2016, around 6:00 pm, Miller fell from the top bunk and landed on the concrete floor. Deputy Lloyd, who was the first to respond to the scene, witnessed Miller writhing on the floor. Miller's cellmate, Sherry Ackerman, informed Deputy Lloyd that Miller had slipped on the ladder while trying to get out of the bunk for the headcount and hit her head on the floor. When Ackerman tried to help Miller up, she fell again and hit her left side on a table. Deputy Lloyd called medical. Corporal Johnson also responded to the scene. Miller told Corporal Johnson that her ribs were hurting and that she was unable to breathe. Nurse Anderson arrived shortly after Corporal Johnson. Nurse Anderson and Corporal Johnson helped Miller off the floor and onto her cellmate's bed, where she laid down.

Although Nurse Anderson had been called to perform an initial assessment of Miller, he did not bring any medical equipment with him. Miller told Nurse Anderson her side hurt and that she felt nauseous and dizzy. Nurse Anderson asked her if she was coming off of drugs. Miller responded "meth." Nurse Anderson evaluated her head, neck and spine, and palpated her side. Miller did not obviously react to any spot in particular but kept stating that she hurt over and over. Nurse Anderson then inspected her for any obvious injury, such as bleeding or contusions, but

---

[1] Although the court would ordinarily "construe the facts underlying the grant of summary judgment in the light most favorable to . . . the non-moving party," *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 763 (10th Cir. 2013), in this case, the parties have filed cross-motions for summary judgment. The court therefore provides a neutral summary of the facts, which it will view "in the light most favorable to the nonmoving party" and "draw reasonable inferences therefrom" while evaluating the motions in turn. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012) (citations omitted).

there were no visible external injuries. He did not take her vitals. Nurse Anderson concluded Miller's dizziness must be from methamphetamine withdrawal and gave her ibuprofen.[2]

Nurse Anderson decided that Miller should be moved to a different cell. A patient who has suffered a potentially serious injury or is suffering from withdrawal would normally be transferred to medical. However, medical was crowded, and the only available bunk was in a room with another inmate who was vomiting. Nurse Anderson and Corporal Johnson decided to transfer Miller to the "Lima unit" where she would have her own cell and a bottom bunk.

Miller got up and put on her shoes unassisted. However, once outside of her cell, Miller repeated that she felt dizzy and was unable to walk on her own. Nurse Anderson and Corporal Johnson then assisted Miller to the stairs. It took her twenty seconds to walk twenty feet. When they reached a flight of stairs, Nurse Anderson went to get a wheelchair while Corporal Johnson had Miller sit at the top of the stairs. Johnson then suggested that Miller "scoot down" rather than walk down the stairs. Miller lowered herself down the stairs, step-by-step, in a seated position. At the bottom of the stairs, Miller was able to stand and walk a few steps to the wheelchair. She was assisted into the wheelchair. She was listless and tired and very quiet. Nurse Anderson wheeled Miller to the Lima unit where she was placed on a bottom bunk. Nurse Anderson scheduled a doctor appointment for the following day. Nurse Anderson told Miller to call medical if her condition worsened, but he did not return to check on her or schedule any medical check-ins that evening.

Deputy Lloyd and Corporal Johnson went to retrieve Miller's bedding and effects from the Kilo unit. When they returned, Miller was no longer on the bed, but was lying on the floor with

---

[2] Neither Plaintiffs nor Defendants have offered any evidence as to the symptoms associated with methamphetamine withdrawal.

her head on her shirt. She did not respond to the officers and they thought she was exhibiting signs of someone detoxing from methamphetamine. Officers performed wellbeing checks at 6:33 pm and 7:32 pm. Miller remained on the floor. She did not respond to officers. However, at approximately 8:20 pm, when Deputy Lloyd went to bring toilet paper to Miller's cell, he saw her lying, mostly naked, on the floor. He noticed blood on her chin. He asked if she were okay. She gave him a wave. He did not enter her cell.

Deputy Lloyd then called medical. Nurse Layton answered the phone and asked if there were any signs of a new injury. Deputy Lloyd said Miller had taken her clothes off but appeared to be moving and breathing. Nurse Layton told Deputy Lloyd not to worry about her. Nurse Anderson was in the room with Nurse Layton, but was not aware that Nurse Layton and Deputy Lloyd were talking about Miller and did not hear the full conversation.

Clerk Rogers called into Miller's cell. Miller did not respond. Deputy Lloyd stopped Deputy Lucius. They called Sergeant Wall, a female officer, to come check on Miller. Sergeant Wall arrived. Sergeant Wall said Miller had her leg propped on the toilet. Sergeant Wall saw blood on Miller's forearms and a one-inch gash on her chin. Sergeant Wall asked Miller to get dressed, but Miller would not stand up. She kept rolling around and moaning. The officers observed that she was cold, sweating, and pale in color.

Sergeant Wall called medical. Medical told her to bring Miller to them. Sergeant Wall told Deputy Lloyd and Deputy Lucius that they were moving Miller to medical.  Deputy Lucius went to fetch a wheelchair. Corporal Johnson arrived on scene. Corporal Johnson, Deputy Lucius, Deputy Lloyd, and Sergeant Wall placed Miller in the wheelchair. Miller appeared to start seizing.

The officers brought Miller to medical. When they arrived, Miller was gray and totally flaccid. Nurse Anderson testified that she appeared dead. He told Sergeant Wall to call an

ambulance. Miller slipped from the wheelchair and they placed her on the floor. Nurse Anderson took her blood pressure and her pulse. He attempted to give her oxygen. Miller started thrashing on the floor and kept pulling the oxygen mask off. She was screaming in pain. The ambulance and EMTs arrived at approximately 8:50 pm and left for the hospital at 9:03 pm.

Miller went into cardiac arrest on her way to the hospital. She was pronounced dead at 10:06 pm. The medical examiner reported that Miller died from blunt force trauma to her side, which resulted in a complete transection of her spleen and 1.3 liters of internal bleeding. Miller's mother, Stella Davis, and Miller's estate filed suit against Davis County, Sheriff Richardson, Nurse Ondricek, and Nurse Anderson on January 3, 2018 seeking to recover for Miller's death under 28 U.S.C. § 1983 and the Utah State Constitution.

### B. MATERIAL FACTS

Plaintiffs submitted 74 allegedly undisputed material facts in support of their motion for summary judgment. Defendants contested 43 of those facts and included an additional 59 allegedly undisputed material facts in their opposition. Defendants also objected to the court considering certain exhibits and facts on grounds of hearsay, lack of foundation, lack of relevance, and lack of probative value under Fed. R. Civ. P. 56(c)(2). Plaintiffs then replied to eleven of Defendants' responses and objected to Defendants' additional facts that were based upon a medical report by Defendants' expert, Kennon Tubbs, M.D. ("Dr. Tubbs"). In reply, Defendants ask the court to deem admitted their additional facts to which Plaintiffs did not respond. Under Fed. R. Civ. P. 56(e)(2), when a party does not contest a fact offered by the opposing party, the court may "consider the fact undisputed for purposes of the motion," but the court is not required to do so. The court declines to do so here because, having exercised its discretion under Fed. R. Civ. P. 56(c)(3) to "consider other materials in the record," the court has identified those facts that are actually in dispute.

### C. EVIDENTIARY OBJECTIONS

Under Fed. R. Civ. P. 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." But that "does not mean that [summary judgment] evidence must be submitted 'in a form that would be admissible at trial.'" *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rather, only "the content or substance of the evidence must be admissible." *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (quoting *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)). Defendants object to certain exhibits and facts on which Plaintiffs rely on grounds of hearsay, lack of foundation, lack of relevance, and lack of probative value. The court addresses these objections below.

### 1. Objections Based on Hearsay and Lack of Foundation

In their opposition, Defendants object on grounds of hearsay and lack of foundation to five exhibits on which Plaintiffs rely (Exhibit 10, Dr. Starr's Expert Report; Exhibit 11, Nurse Schultz's Expert Report; Exhibit 16, Todd Vinger's Expert Report; Exhibit 20, Clerk Austin Rogers' interview with a representative of the Attorney General's Office; and Exhibit 21, Nurse Daniel Layton's interview with a representative of the Attorney General's Office) and four facts identified in Plaintiffs' Motion for Summary Judgment (¶¶ 23, 33, 44, and 62).[3] But Defendants' objections are so conclusory and lacking in analysis that they entirely fail to allege why "the content or substance of the evidence" (or even the evidence as submitted) would not be admissible at trial. For example, in their response to paragraph 62 of Plaintiffs' statements of fact, Defendants state: "Objection based on hearsay (Rule 802) and the lack of foundation (Rule 901)." *See* Opp'n Mot. S.J. at 22. And that is the extent of their objection. Defendants' objections to three other statements

---

[3] Defendants also object to ¶ 33 for lack of relevance.

of fact, *see id.* at 11 (objecting to ¶ 23 for lack of foundation) and 15–16 (objecting to ¶¶ 33 and 44 as hearsay and for lack of foundation), and Defendants' objections to the five complete exhibits, *see id.* at 5 n.1 (objecting on "basis of hearsay" and "lack of foundation"), are equally conclusory.

Following oral argument on the cross-motions for summary judgment, the court ordered supplemental briefing on Defendants' previously asserted objections, noting that the objections were conclusory and that it is the objecting party's burden to "make its objection clear; the trial judge need not imagine all the possible grounds for an objection." *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 960–61 (10th Cir. 1993). Defendants filed a supplemental response on May 15, 2019. Plaintiffs responded on May 17, 2019.[4] On June 3, 2019, Defendants filed a motion for leave to file additional objections. Having reviewed both parties' supplemental briefing, the court largely overrules Defendants' objections and denies its motion for leave to file additional objections.[5]

---

[4] Plaintiffs attach three declarations by their experts, Deborah Schultz, Dr. Ken Starr, and Todd Vinger affirming that, if called to testify at trial, they would testify to the facts and opinions contained in their respective expert reports.

[5] Defendants argue that they should be allowed to file additional objections because Plaintiffs' response, captioned "Supplemental Brief on Admissibility of Evidence," was an unauthorized sur-reply memorandum. But Plaintiffs' response, regardless of the title, was not unauthorized. Indeed, the court specifically ordered both parties to provide supplemental briefing on Defendants' evidentiary objections and Plaintiffs' Supplemental Brief was filed in response to that order. *See* ECF No. 51. Defendants also argue that they should be able to address the declarations and affidavits of Plaintiffs' experts attached to Plaintiffs' response brief because they were submitted in an "attempt to correct the fatal flaws in [Plaintiffs'] initial submissions" and are therefore unauthorized. But Plaintiffs' burden under Fed. R. Civ. P. 56(c)(2) is to explain why "the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) adv. comm. cmt. The declarations and affidavits attached to Plaintiffs' brief were submitted in response to Defendants' objections and are therefore proper.

### a. *Exhibit 10, Dr. Starr's Expert Report*

Defendants object to Dr. Starr's Expert Report on grounds of hearsay and lack of foundation and argue that it should be excluded in its entirety. Defendants do not address why the expert report and the statements contained therein constitute hearsay or lack foundation. Instead, they argue that Dr. Starr will not be able to testify at trial because his expert opinions "are contrary to the undisputed evidence." But there is no rule of evidence requiring that expert testimony be based only upon facts that are undisputed.[6] If that were the case, then Defendants' expert Dr. Tubbs would not be allowed to testify either. Dr. Starr has submitted an affidavit that he would testify at trial to the opinions contained in his expert report. The court therefore overrules Defendants' objections to Dr. Starr's expert report at the summary judgment stage, including his testimony regarding the symptoms of blood loss, because those statements can be presented in a form admissible at trial.[7]

### b. *Exhibit 11, Nurse Schultz's Expert Report*

Defendants object to Nurse Deborah Schultz's Expert Report on grounds of hearsay and lack of foundation. Again, they fail to explain why the statements in their current form, as part of an expert report, constitute hearsay or lack foundation. Nevertheless, Defendants argue, assuming that the evidence is inadmissible as offered, that Nurse Schultz may not testify because her opinions go to whether Nurse Anderson violated state law or committed medical malpractice and

---

[6] On the other hand, an expert whose testimony is unreliable under the standard articulated in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) should be excluded. However, aside from citing to *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003), Defendants do not offer any argument that the expert opinions on which Plaintiffs rely should be excluded on grounds of unreliability. *See* Defendants' Supplemental Brief at 6 n.16 (stating "[e]xpert opinion must be based on he ats [sic]").

[7] This testimony provided the evidentiary support for paragraph 44 of Plaintiffs' statement of undisputed facts.

not to whether Nurse Anderson violated Miller's constitutional rights. In other words, Defendants argue that Nurse Schultz may not testify because her opinion is not relevant.

While Defendants are correct that a deliberate indifference claim must be based on more than a violation of state law, the court finds that the standard of medical care, whether defined in the Utah Nurse Practice Act or based upon general nursing standards, is relevant to the elements of a deliberate indifference claim. Plaintiffs must establish that Miller had a serious medical need that Nurse Anderson deliberately ignored. The applicable standard of care is relevant to both the objective and subjective elements of that test. Because Nurse Schultz has signed an affidavit stating that she would testify at trial to the opinions and facts contained in her expert report, Defendants' objections are overruled.

### c. *Exhibit 16, Todd Vinger's Expert Report*

Defendants object to Todd Vinger's Expert Report on grounds of hearsay and lack of foundation. They do not explain why his report is inadmissible in the form offered, but argue that he would not be able to testify at trial as to whether Davis County Jail should have maintained a written medical policy because "the Utah Department of Professional Licensing required Davis County to do away with its medical treatment protocols . . . , and because the failure to comply with the Jail policy to implement treatment protocols will not support a section 1983 deliberate indifference claim." But Defendants do not explain how these arguments render Mr. Vinger's testimony inadmissible. To the extent Defendants are arguing that Mr. Vinger's testimony is irrelevant, the court overrules that objection. The court finds that Mr. Vinger's testimony is relevant to a municipal liability deliberate indifference claim because it goes to the obviousness of the risk presented by a lack of written medical policies.

Defendants also argue that "Mr. Vinger does not offer any opinion to the effect that the failure to have treatment protocols was the proximate cause of any injury to Ms. Miller and that

he could not give such an opinion due to his not being a physician or other qualified medical professional." The court fails to see how Mr. Vinger's lack of an opinion as to causation renders inadmissible his opinion on other matters. The court therefore overrules Defendants' objections to Mr. Vinger's report and the statements of fact relying on his report, including paragraph 62.

### d. *Exhibit 20, Clerk Austin Rogers' Interview with the Attorney General*

Defendants object to the recording of the interview of Clerk Austin Rogers, a Davis County Jail Clerk who was on duty the night of the incident, which was conducted by a representative of the Utah Attorney General's office. They object to the recording in the form presented because it was not administered under oath and argue that two opinions expressed by Clerk Rogers, relied upon by Plaintiffs at paragraphs 23 and 33 of their statement of facts, would not be admissible in any form at trial. Defendants' objection to the recording is overruled because Clerk Rogers may be called as a witness at trial. If he appears at trial, the information contained in the interview can be presented in an admissible form.

Defendants also object to two specific opinions expressed by Clerk Rogers, which form the basis for paragraphs 23 and 33 of Plaintiffs' statement of undisputed facts. Defendants first object to Clerk Rogers' opinion that he thought Miller should have been taken to the hospital immediately after the bunk fall. Defendants object that Rogers is not qualified to give medical opinions and therefore his lay opinion should be excluded. This objection is overruled because the objective prong of the deliberate indifference standard asks whether or not a serious medical need was so obvious that a lay person would have realized the need for medical attention. Clerk Rogers' opinion as a lay person on Miller's state after her fall is therefore relevant.

Next, Defendants object to Clerk Rogers' opinion that he thought the nurses at the jail were lazy, arguing that his opinion as to the quality of the Davis County Jail nurses generally is irrelevant because it does not specifically address Nurse Anderson. The court sustains this objection. Clerk

Rogers' opinions on the general character of the nurses at the Davis County Jail, including any opinion he may have about Nurse Anderson, are simply not relevant to whether Nurse Anderson was deliberately indifferent to Miller's medical needs.[8] Defendants' objection to paragraph 23 on grounds of hearsay, lack of foundation, and relevance are overruled, but Defendants' objection to paragraph 33 for lack of relevance is sustained.

### e. *Exhibit 21, Nurse Daniel Layton's Interview with the Attorney General*

Defendants object to the complete recording of the interview of Nurse Daniel Layton, a Davis County Jail Nurse who was on duty the night of the incident, which was conducted by a representative of the Utah Attorney General's office. Defendants' hearsay objections as to the recording are overruled because Nurse Layton may be called as a witness at trial. If so, the information contained in the recording can be presented in an admissible form. Defendants also object to Nurse Layton describing the contents of a telephone conversation that he had with Deputy Lloyd concerning Miller. These objections are also overruled. Nurse Layton can testify as to his end of the conversation and Deputy Lloyd can likewise testify as to what he said to Nurse Layton. And it appears that the statements may not necessarily be offered for the truth of the matter asserted.

### 2. **Objections Based on Lack of Relevance and Probative Value**

Defendants also object to paragraphs 16, and 68–71 for lack of relevance and lack of probative value.

---

[8] Alternatively, under Federal Rule of Evidence 404(a)(1), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."

### a. *Statement of Fact ¶ 16*

Defendants object on relevance grounds to the statement that Nurse Anderson violated his usual practice by not taking Miller's vitals because taking her vitals may not have helped diagnose her injury. The court overrules this objection. While the question of whether Miller would have survived had her vitals been taken is hotly disputed, the question of whether Nurse Anderson should have taken her vitals is clearly relevant to Plaintiffs' deliberate indifference claim.

### b. *Statements of Fact ¶¶ 68–71*

Defendants object to paragraphs 68 through 71 on the grounds that they are irrelevant and lack probative value. Paragraphs 68 to 71 relate to the review and training policies that Nurse Ondricek either did or did not have in place at the time of Miller's death. Because one of Plaintiffs' claims is deliberate indifference by Nurse Ondricek as a supervisor, which is predicated on Nurse Ondricek's failure to train and supervise Nurse Anderson, the court finds that these facts are both relevant and probative. Defendants' objections are therefore overruled.

## II.   ANALYSIS

Plaintiffs move for summary judgment on their first and second causes of action brought pursuant to 42 U.S.C. § 1983. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)).

Defendants filed a cross-motion for summary judgment asserting the defense of qualified immunity on behalf of Sheriff Richardson, Nurse Anderson, and Nurse Ondricek in their individual

capacities and moving to dismiss all claims against Davis County and against Sheriff Richardson in his official capacity. Because "[q]ualified immunity is designed to shield public officials from liability," the issue must be resolved at "the earliest possible stage in litigation." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Therefore, the court addresses the issue of qualified immunity first.

### A. QUALIFIED IMMUNITY OF THE INDIVIDUAL DEFENDANTS

Because the individual defendants have raised the defense of qualified immunity, the court proceeds differently than it does when considering a typical motion for summary judgment. *See Nelson v. McMullen*, 207 F.3d 1202, 1205–06 (10th Cir. 2000). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Keith v. Koerner*, 843 F.3d 833, 837 (10th Cir. 2016) (quoting *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* (quoting *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008)).

"In determining whether the plaintiff has met [his or her] burden of establishing" the violation of a clearly established constitutional right, the court "will construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson*, 584 F.3d at 1312; *see also Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)

(quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).[9]  The clearly established prong will be

met if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established

weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Brown*

*v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278,

1282 (10th Cir. 2010)).

A court "may address these requirements in any order." *Mayfield v. Bethards*, 826 F.3d

1252, 1255 (10th Cir. 2016). "Failure on either element . . .  is fatal to the plaintiff's cause." *Aragon*

---

[9] Defendants argue that whether or not there was a clearly established constitutional right, they are entitled to qualified immunity because the reasonableness of their actions may be shown by their "good faith." *See* Defs.' Mot. S.J. at 12.  But the officials' *subjective* "good faith" is not relevant to an inquiry into whether the law was clearly established such that an *objectively* reasonable officer would have known his or her conduct violated the plaintiffs' constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982) (Defining "the limits of qualified immunity essentially in objective terms" and disavowing prior subjective inquiries, such as the one set forth in *Wood v. Strickland*, 420 U.S. 308, 321–22 (1975)). In other words, to overcome qualified immunity, Plaintiffs must demonstrate that prior case law has established a constitutional right and "the contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 635 (1987); *see also Aragon v. City of Albuquerque*, 423 F. App'x 790, 791 (10th Cir. 2011) ("It remains the plaintiff's additional burden . . . to identify clearly established law at the time of his arrest capable of alerting a reasonable officer that the challenged conduct was unconstitutional."). Conversely, if there is no clearly established law that would have alerted a reasonable official that his or her conduct was unconstitutional, then he or she likely acted reasonably and is generally entitled to qualified immunity. *See Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he confronted." (citation omitted)); *but see Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002) (rejecting the requirement that "the facts of previous cases be materially similar" to those in the present case to overcome immunity and instead requiring that officers have "fair warning" of the constitutional line); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) (citing *Hope* to deny qualified immunity and stating that "we need not have decided a case involving similar facts to say that no reasonable officer could believe that he was entitled to behave as [defendant] allegedly did."). In sum, any evidence or testimony related to the Defendants acting in good faith is only relevant to the subjective element of the deliberative indifference analysis for the alleged constitutional violation. *See Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996).

*v. City of Albuquerque*, 423 F. App'x 790, 792 (10th Cir. 2011). The court will now address each element as to each cause of action.

### 1. First Cause of Action: Deliberate Indifference to Medical Needs in Violation of the Eighth Amendment[10]

In their first cause of action against Nurse Anderson, Plaintiffs allege that Nurse Anderson's deliberate indifference to Miller's medical needs resulted in her death. Specifically, Plaintiffs allege that Nurse Anderson's failure to take Miller's vitals immediately after her fall and his subsequent failure to monitor her vitals over the course of the next three hours resulted in the failure to diagnose Miller's internal bleeding in time to prevent her death. Plaintiffs allege that these actions by Nurse Anderson constitute deliberate indifference to Miller's medical needs in violation of the Eighth Amendment.[11]

#### a. *Clearly Established Right*

Plaintiffs' first cause of action alleges a violation of a clearly established right. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Callahan v. Poppell*, 471 F.3d

---

[10] Plaintiffs title the first cause of action of their complaint "Deliberate Indifference to Ms. Miller's 8th and/or 14th Amendment Rights – Failure to Provide Proper Medical Care." The court recognizes that Ms. Miller was a pretrial detainee at the time of the incident and pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). But in the Tenth Circuit, jail officials "owe pretrial detainees . . . at least the same standard of care prison officials owe convicted inmates." *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013). Therefore, the court relies on Eighth Amendment authority and "applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to Section 1983." *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999).

[11] Plaintiffs do not specify against which Defendants they assert their first cause of action, but they have only alleged deliberate actions by Nurse Anderson. Because "liability under § 1983 must be based on [a] defendant's personal involvement in the alleged constitutional violation," the court addresses this claim only as to Nurse Anderson. *Mayfield v. Harvey Cty. Sheriff's Dep't*, 732 F. App'x 685, 688 (10th Cir. 2018) (alteration in original) (quoting *Schneider*, 717 F.3d at 768).

1155, 1159 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Thus, "[a] plaintiff states a cognizable Eighth Amendment claim for denial of medical attention if he [or she] 'allege[s] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (quoting *Estelle*, 429 U.S. at 106).[12] "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. In the Tenth Circuit, "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right." *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005). And it is clearly established that deliberate indifference to serious medical needs may be "shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Thus, Plaintiffs have met their burden of alleging a clearly established constitutional right.

### b. *Constitutional Violation*

To successfully state a claim for deliberate indifference to Miller's serious medical needs in violation of the Eighth Amendment, Plaintiffs must establish two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious;" and (2) "a subjective component requiring that the offending officials act with a sufficiently culpable state of mind." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (quoting *Miller v. Glanz*, 948 F.2d 1562,

---

[12] Defendants argue that "there is no case law requiring Defendants to provide Ms. Miller with certain medical treatment or setting the level of treatment above the standard of care." See Defs.' Mot. S.J. at 11. But that argument is not properly directed to the existence of Ms. Miller's clearly established right to not have her serious medical needs treated with deliberate indifference. *See Mata*, 427 F.3d at 749. Rather, it goes to the issue of whether Defendants' conduct related to Ms. Miller's condition was a violation of her clearly established right to medical treatment.

1569 (10th Cir. 1991)); *see also Mata*, 427 F.3d at 751 ("The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'") (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

### i. Objective Component

To satisfy the objective component, Plaintiffs "must set forth facts demonstrating that [the] alleged medical need . . . 'was "sufficiently serious" to meet the objective element of the deliberate indifference test.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276–77 (10th Cir. 2001) (quoting *Sealock*, 218 F.3d at 1210). In a case such as this where Plaintiffs allege that Defendants delayed in providing medical treatment, Plaintiffs must also demonstrate "that the Defendants' delay in meeting that need caused . . . 'substantial harm.'" *Id*. Plaintiffs allege that Miller had a serious medical need to have her vitals taken and monitored by Nurse Anderson following her fall because that was the only way to diagnose her internal injury. Plaintiffs argue that had Miller's vitals been taken and monitored, Nurse Anderson would have observed a drop in her blood pressure and other symptoms that would have allowed Nurse Anderson to diagnose internal bleeding and transport Miller to the hospital in time to save her life.

### a) *Serious Medical Need*

The first question is whether the need to monitor Miller and take her vitals was sufficiently serious. "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). Had Nurse Anderson known that Miller ruptured her spleen, Miller's medical need would have been obvious. However, a ruptured spleen and/or internal bleeding would not be obvious to a lay person. Thus, the question cannot be whether Miller's final diagnosis was sufficiently serious, but whether her condition at the time of the incident necessitated that

Nurse Anderson monitor her vitals. *See Mata*, 427 F.3d at 753 (discussing "whether the test for the objective component applies to (1) the alleged harm to the prisoner or (2) the prisoner's symptoms at the time of the prison employee's actions," and deciding that it may be applied to an "intermediate harm rather than the last untoward event to befall [the plaintiff]."). If the answer is in the negative, and "the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Id*. at 751.

Nurse Anderson, Nurse Ondricek, and Defendants' Medical Expert, Dr. Tubbs, all agree that the attending nurse should take an inmate's vitals following a suspected injury. Specifically, Nurse Ondricek testified that when the medical unit responds to an incident where an inmate may have been injured, the nurse may either send the patient to the hospital if there is an obvious critical injury or, if there is no obvious injury, the nurse should monitor the patient's vitals to see if there is any observable change in condition over the next few hours. *See* Pls.' Mot. S.J., Ex. 4 at 30. In the latter case, Nurse Ondricek testified that the patient should be transferred to medical to be monitored. According to Nurse Ondricek, only if there is no suspected injury may the failure to check vitals or monitor the patient be excused.

Defendants argue that there was no suspected injury, and therefore Nurse Anderson did not need to take Miller's vitals or place Miller under medical supervision. In support, they argue that Nurse Anderson was justified in assuming Miller was only experiencing methamphetamine withdrawal because her symptoms were similar to withdrawal symptoms and because she did not have an obvious external injury. The record shows that initially Miller was able to dress herself and stand on her own. The record also supports that Nurse Anderson would not have been able to

diagnose Miller's internal injury from his initial assessment and that there may not have been any external evidence of the seriousness of her injury.

However, there are disputes of material fact regarding whether Miller should have been monitored. First, the record does not support Defendants' argument that Miller was evidencing symptoms of methamphetamine withdrawal because there is no record evidence identifying the symptoms of methamphetamine withdrawal. Second, there is a genuine dispute of material fact regarding Defendants' assertion that Miller was not entitled to have her vitals taken or monitored. Miller's vitals should have been taken if there was evidence of a serious injury and there is record evidence establishing that Miller suffered a serious injury. Miller's cellmate told Nurse Anderson that Miller fell with great force and hit her head on the concrete floor. Miller could not walk unassisted and was unresponsive to questioning. Non-medical observers such as Davis County officers and Clerk Rogers all testified that Miller was obviously in need of medical attention. Defendants' own expert, Dr. Tubbs, states conclusively that Anderson's initial evaluation should have included a vital sign check. Additionally, even if Nurse Anderson initially believed that Miller had not suffered any serious injury, the fact that Miller could not walk indicated she should have been placed under observation. Nurse Ondricek testified that a patient who cannot walk or who needs assistance walking should be transferred to medical, even if the inability to walk is attributable to withdrawal symptoms. Thus, whether there was evidence of symptoms necessitating medical attention is in dispute.

When assessing the defense of qualified immunity on a motion for summary judgment, the court views the facts in the light most favorable to Plaintiffs. Under this standard, the court must assume that Miller had a serious medical need to have her vitals taken and monitored by Nurse Anderson. The court now turns to whether his failure to do so caused Miller substantial harm.

### b) *Substantial Harm*

"The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata*, 427 F.3d at 751 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). Death certainly qualifies as a substantial harm, but did the failure to monitor Miller's vitals cause her death? In other words, would monitoring Miller's vitals have prevented her death? Plaintiffs argue yes. Plaintiffs' expert, Dr. Starr, opines that Miller experienced "hemodynamically significant deterioration" from her ruptured spleen. He maintains that there would have been evidence of Miller's deterioration within one hour after her fall. According to Starr, 15% blood loss results in a high pulse rate, anxiety, and a narrow pulse pressure. At 30–40% blood loss, patients show an elevated heart rate, low blood pressure, a narrow pulse pressure, elevated respiratory rate, and increased anxiety or confusion. *See* Pls.' Mot. S.J., Ex. 10. Finally, Dr. Starr opined that, "[h]ad Ms. Miller's blunt abdominal injuries been recognized earlier, it is my professional opinion that this condition would have been surgically treated and she would have a very high likelihood of survival with no resultant sequelae." *Id.* at 2. Defendants' expert, Dr. Tubbs, vehemently disputes this. He opines that "Miller's diagnosis likely would not have been apparent to Anderson based on findings of vital signs." *Id.*, Ex. 12 at 4. According to Dr. Tubbs, because Miller's blood pressure would have been elevated due to the fall, "it is unlikely that Miller would have been found hypotensive and tachycardic at the time of injury." *Id.* In short, there is a dispute of material fact as to whether Miller's internal bleeding could have been diagnosed in time to allow for a successful surgical intervention. However, Defendants do not contest that Miller could have lived *had* the internal bleeding been diagnosed in time. Viewing these facts in the light most favorable to Plaintiffs, the court concludes that Miller's death could have been prevented had Nurse Anderson taken her vital signs. Plaintiffs have therefore met the objective element of the two-part deliberate indifference test.

### ii. Subjective Component

Next, Plaintiffs must establish the subjective component of deliberate indifference. "Deliberate indifference does not require a finding of express intent to harm." *Mitchell*, 80 F.3d at 1442. Rather, "deliberate indifference requires that the prison official knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).[13] "[A]llegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent . . . diagnos[is]' simply fail to establish the requisite culpable state of mind." *Id.* at 1444 (alteration in original) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos*, 639 F.2d at 575. Plaintiffs allege that Nurse Anderson was aware of the substantial risks associated with falls at the jail and chose to ignore them on account of his biased assumption that Miller was suffering methamphetamine withdrawal. Plaintiffs also allege that Nurse Anderson ignored Miller's need for medical monitoring because of this same bias.

"Whether the prison official had the requisite knowledge of a substantial risk to an inmate's health or safety 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . .'" *Oxendine*, 241 F.3d at 1276 (quoting *Farmer*, 511 U.S. at 842). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. The court can infer deliberate indifference if "the symptoms [were] such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it[.]" *Mata*, 427 F.3d at 753. In this case, the question of whether Nurse Anderson was

---

[13] "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836.

aware of the risk that Miller was seriously injured and needed to be monitored, but chose to ignore it, is hotly disputed.

There is no evidence that Nurse Anderson should have been aware that Miller may have ruptured her spleen from the fall. Nor is there evidence that Anderson could have diagnosed Miller's ruptured spleen from his initial physical examination of her. But there is evidence that Nurse Anderson should have realized the significant risk that Miller had been seriously injured by falling from an upper bunk onto a concrete floor. And Nurse Anderson was aware of Miller's symptoms. At the outset Miller was complaining of pain everywhere.  Miller's cellmate told Nurse Anderson that Miller hit her head on the floor. Miller said she was dizzy and felt nauseous. Miller could not walk twenty feet unassisted. Nevertheless, Nurse Anderson decided to leave her to sleep off her suspected withdrawal and did not return to check on her. He did not perform a basic blood pressure exam nor did he return to see if her pain had subsided. Miller was unconscious and unmoving for *three hours* on the floor of her Lima cell before she was taken to the medical unit.

Nurse Anderson's testimony makes it clear that he did not believe Miller was seriously injured because he assumed that she was going through withdrawal. Defendants argue that this testimony precludes a finding that Nurse Anderson was deliberately indifferent to Miller's care. The court disagrees. First, Miller's symptoms indicated that something was seriously wrong. Nurse Anderson's assumption that she was only withdrawing entirely ignored the fact that Miller could have been experiencing withdrawal *and* was seriously injured by her fall. In fact, Miller's symptoms were such that a reasonable juror could find that Nurse Anderson should have known Miller was injured, not just suffering withdrawal, that he should have monitored her more closely, and that his failure to do so constitutes deliberate indifference. Second, even if Miller were only suffering from withdrawal, she still should have been monitored. At the very least, a reasonable

juror could find that Nurse Anderson was deliberately indifferent by not monitoring her, if not in medical than at least in her cell, as nurses are required to do for patients withdrawing from methamphetamine. Resolving all factual disputes in favor of Plaintiffs, the court concludes that Nurse Anderson disregarded the substantial risk that Miller was seriously injured in the fall and in need of medical attention. Plaintiffs have therefore established that Nurse Anderson is not entitled to qualified immunity on their first cause of action.

### 2. Second Cause of Action: Failure to Train and/or Supervise in Violation of the Eighth Amendment

Plaintiffs' second cause of action alleges that Nurse Ondricek and Sheriff Richardson in their individual capacities as supervisors at Davis County Jail were deliberately indifferent to the medical needs of Miller. Plaintiffs also assert this claim against Davis County.[14] Defendants move to dismiss this claim as to all Defendants on grounds of qualified immunity. The court therefore analyzes whether Plaintiffs have alleged a constitutional violation of clearly established law by each individual defendant or whether Defendants are entitled to qualified immunity.

### a. *Clearly Established Law*

"Section 1983 does not authorize liability under a theory of respondeat superior." *Schneider*, 717 F.3d at 767 (quoting *Brown*, 662 F.3d at 1164). However, it is clearly established in the Tenth Circuit that a government official's failure to train and/or supervise can constitute a violation of an inmate's constitutional rights if the supervisor, by his or her "own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). This is called a "supervisory liability" claim. *Schneider*, 717 F.3d at 767. Such a claim requires "more than a supervisor's mere knowledge of his subordinate's conduct." *Id.* (citing *Iqbal*, 556 U.S. at 677). Rather, to successfully assert a claim for supervisory liability, Plaintiffs "must show an

---

[14] Plaintiffs have stipulated to the dismissal of Sheriff Richardson in his official capacity.

'affirmative link' between the supervisor and the constitutional violation" by establishing three elements: "(1) personal involvement, (2) causation, and (3) state of mind." *Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).

Personal involvement cannot be based on vicarious liability, but must be shown "with evidence that 'the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy' that caused the constitutional harm." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (quoting *Dodds*, 614 F.3d at 1195, 1199.)   Plaintiffs must "establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'" *Schneider*, 717 F.3d at 768 (quoting *Dodds*, 614 F.3d at 1185). Finally, Plaintiffs must "show that the defendant took the alleged actions with the requisite state of mind. Precisely what state of mind is required for individual liability depends on the type of claim a plaintiff brings." *Id.* at 769. As the underlying constitutional violation alleged by plaintiffs is deliberate indifference in violation of the Eighth Amendment, Plaintiffs must show that Defendants acted with the same mental state as Nurse Anderson, in this case deliberate indifference. *See Dodds*, 614 F.3d at 1204 (holding that the state of mind required for a supervisory claim "is the same state of mind required for the constitutional deprivation" alleged).

Plaintiffs allege that Nurse Ondricek should be liable in his role as a supervisor for his failure to properly supervise and/or train Nurse Anderson. Plaintiffs allege that Sheriff Richardson should be liable for his failure to establish written medical protocols for the Davis County Jail. To defeat qualified immunity, Plaintiffs must establish that there are disputed material facts as to Sheriff Richardson and Nurse Ondricek on each element of their supervisory liability theories.

### b.  *Constitutional Violation*

#### i.  **Sheriff Richardson**

Plaintiffs argue that Sheriff Richardson's decision to operate the jail without a written medical policy constitutes deliberate indifference in violation of the Eighth Amendment because it caused Nurse Anderson to treat Miller with deliberate indifference.

### a)  *Personal Involvement*

The first question is whether Sheriff Richardson is responsible for the jail's medical policy. Defendants argue that Sheriff Richardson was not responsible for establishing the jail's medical policy. They rely on the testimony of Dr. Tubbs, who testified that the prison doctor, not the Sheriff, is in charge of medical policy at the jail. Defendants also rely on Davis County Policy 405.10, which states that "Davis County Jail treatment protocols and first aid procedures will be developed by the jail physician, psychiatrist and/or dentist."

However, in his deposition, Sheriff Richardson testified that he was in charge of ordering and approving all written protocols for the jail, including the nursing policy. He testified it was his job to order the jail physician to write the policy. He also testified that there were policies in place six years before Miller's death, but that he had removed them at the request of the state health department. Viewing the facts in the light most favorable to Plaintiffs, the court assumes that Sheriff Richardson was personally involved in the decision to run the jail without any written treatment protocols.

### b)  *Causation*

The next question is whether the lack of a written medical policy caused Nurse Anderson to be deliberately indifferent to Miller's medical needs. The relevant causation inquiry is "whether an official's acts or omissions were the cause—not merely a contributing factor—of the constitutionally infirm condition" that led to Plaintiffs' harm. *Tafoya v. Salazar*, 516 F.3d 912, 922

(10th Cir. 2008) (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993)). To meet this burden, Plaintiffs must establish "a causal link between the defendant's acts or omissions and the infirm condition," in which case "the defendant is precluded from contending that the unconstitutional condition was not at least a proximate cause of . . . injuries that arose from that condition." *Id.* (alteration in original).

Defendants contend that the lack of written policy has no causal connection to Miller's death because the *unwritten* policy at the time of her injury was to check vitals and monitor prisoners in need of medical attention. Nurse Anderson ignored the unwritten policy, and Defendants argue that a written one would not have changed Nurse Anderson's actions. Plaintiffs do not dispute that there was an unofficial policy in place to take an inmate's vitals following a suspected injury and to thereafter monitor her in the medical unit. However, Plaintiffs argue that had there been an official, *written* policy in place, Nurse Anderson would not have ignored it. For example, had he been required to follow a written, post-fall checklist, then he would have taken Miller's vitals.

This inquiry requires the court to predict how a hypothetical policy would have affected Nurse Anderson's actions. But the court need not undertake this exercise because, as discussed below, the court finds that Plaintiffs have not established that Sheriff Richardson acted with the requisite mindset.

### c)  *Deliberate Indifference*

In *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008), the Tenth Circuit addressed the requirements for determining whether a supervisor acted with deliberate indifference:

> The standard is subjective, requiring that the official actually be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his

> negligence in failing to perceive it, is not an infliction of punishment
> and therefore not a constitutional violation. The official's
> knowledge of the risk need not be knowledge of a substantial risk to
> a *particular* inmate, or knowledge of the particular manner in which
> injury might occur.

*Id.* at 916 (internal quotation and citation marks omitted).

Here, Sheriff Richardson was aware that there was no written medical policy in place and that there had not been one in place for six years. He was also aware that the jail's internal policy, Davis County Jail Policy 401.03, requires a written medical policy. ("Policies and procedures governing health care, health services, administration and management of the Davis County Jail health care program will be developed and written."). However, to make out a deliberate indifference claim against Sheriff Richardson, Plaintiffs must establish that there was a substantial risk to inmates that he deliberately ignored and one that is closely related to the harm that befell Miller.  *See Tafoya*, 516 F.3d at 916.

In their complaint, Plaintiffs allege that Sheriff Richardson was deliberately indifferent to the substantial risk of inmates falling off of bunks and suffering significant injuries. There is evidence that inmates fell from a top bunk about once a month. But there is no evidence that inmates suffered significant injuries from these falls. Even if inmates were suffering serious injuries from these falls, Plaintiffs cannot establish that Sheriff Richardson was indifferent to the risk of bunk falls. The jail had a policy in place to limit bunk falls. When an inmate was booked into the jail, he or she was required to fill out an admission form that includes a question regarding whether he or she will likely experience withdrawal. This was used to determine whether the inmate should be assigned to the top or bottom bunk.  Miller did not indicate that she would suffer withdrawal and she was therefore not assigned a bottom bunk.

In Plaintiffs' reply in support of their motion for summary judgment, Plaintiffs argue that Defendants were aware that operating a jail without medical protocols was substantially certain to

result in injury because the Davis County Jail policies require that written protocols be in place and that it was highly predictable that injury would occur without them. In support, Plaintiffs cite to *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002), where the Tenth Circuit noted that a *municipality* may be found deliberately indifferent "absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action." (internal citation omitted). But Plaintiffs' argument fails as to Sheriff Richardson in his individual capacity because, as the Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825, 840–41 (1994), the "constructive notice" or "objective" test applicable to municipalities does not apply to individual defendants.[15] "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Tafoya*, 516 F.3d at 916.

In *Tafoya,* the Tenth Circuit reversed the district court's grant of summary judgment on qualified immunity grounds because the Sheriff of a jail was "aware of prison conditions that were substantially likely to result in sexual assault of a female inmate" based on a history of sexual assaults at the prison. *Id.* at 915. But in this case, Plaintiffs have failed to establish a pattern of conduct at the jail that would have made Sheriff Richardson aware of substantial risk to prisoners arising from the lack of a medical protocol. Sheriff Richardson is therefore entitled to qualified immunity.

---

[15] "We cannot accept petitioner's argument that [*City of Canton v. Harris*, 489 U.S. 378 (1989)] compels the conclusion here that a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it." *Farmer*, 511 U.S. at 841–42.

### ii. Nurse Ondricek

Plaintiffs argue that because Nurse Anderson violated Miller's rights and Nurse Ondricek supervised Nurse Anderson, Nurse Ondricek's alleged failure to establish nursing protocols, train Nurse Anderson, and investigate inmate deaths constitutes deliberate indifference. The court disagrees.

#### a) *Personal Involvement*

It is uncontested that Nurse Ondricek, as supervising nurse, was personally involved in establishing nursing protocols, training the nurses (including Nurse Anderson), and conducting post-incident reviews.[16] Thus, Nurse Ondricek was personally involved.

#### b) *Causation*

Plaintiffs allege that Nurse Ondricek's failure to train Nurse Anderson was the cause of his deliberate indifference to Miller's medical needs. This claim calls for the fact-finder to predict whether Nurse Anderson would have behaved differently had he been better trained. But the court need not reach this issue because Plaintiffs have failed to meet their burden as to Nurse Ondricek's state of mind.

#### c) *Deliberate Indifference*

To prove that Nurse Ondricek's failure to train and implement protocols constituted deliberate indifference, Plaintiffs must establish that Nurse Ondricek acted with the requisite mindset. Plaintiffs must establish that Nurse Ondricek deliberately ignored a substantial risk to inmates, *Tafoya*, 516 F.3d at 916, or "knowingly created a substantial risk of constitutional injury." *Schneider*, 717 F.3d at 769 (quoting *Dodds*, 614 F.3d at 1206). Plaintiffs' claims against Nurse

---

[16] Defendants "dispute" these statements of fact by objecting for lack of relevance and lack of probative value. The court overrules those objections. Whether Nurse Ondricek had supervisory authority is both relevant and probative. *See supra* at p. 12.

Ondricek fail for the same reason as their claims against Sheriff Richardson. There is no evidence that Nurse Ondricek was aware that his failure to train and implement protocols created a substantial risk of harm to inmates. There was no history of inmates dying as a result of the lack of protocols, nor was there a history of inmates dying from bunk falls. Nor have Plaintiffs established that there was any history of medical failures at the jail. Thus, the constitutional harm that Nurse Anderson may have committed—deliberate indifference to Miller's medical needs— was not one of which Nurse Ondricek was aware. Nurse Ondricek is therefore entitled to qualified immunity.

### c.  *Official Capacity Defendant: Davis County*[17]

Plaintiffs have also named Davis County in their second cause of action. Defendants move the court to dismiss this cause of action in its entirety, arguing that all defendants are entitled to qualified immunity. *See* Defs.' Mot. S.J. at 10 ("Similarly, Davis County and Sheriff Richardson are entitled to qualified immunity because Plaintiffs have failed to demonstrate that the County's policies, or lack thereof, directly caused Miller's death."). But Davis County is not entitled to qualified immunity because a qualified immunity defense is available only to individuals sued in their personal capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) ("When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses . . . . In an official-capacity action, these defenses are unavailable."). The court therefore denies Defendants' motion for summary judgment in favor of Davis County on Plaintiffs' second cause of action.

---

[17] Plaintiffs' second cause of action was originally asserted against Sheriff Richardson in his official capacity as well, but Plaintiffs have stipulated to dismiss Sheriff Richardson because, for the purposes of their § 1983 claim, Davis County and Sheriff Richardson in his official capacity are interchangeable. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

### B.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

The court now addresses Plaintiffs' Motion for Summary Judgment. Plaintiffs move for summary judgment against Nurse Anderson on their first cause of action. Because Nurse Anderson is not entitled to qualified immunity, the court now addresses Plaintiffs' claims against him. Plaintiffs also move for summary judgment against Nurse Ondricek and Sheriff Richardson in their individual capacities and against Davis County on their second cause of action. Defendants ask the court to deny Plaintiffs' motion for summary judgment, dismiss all claims against Davis County, and dismiss Plaintiffs' state law claims. Nurse Ondricek and Sheriff Richardson are entitled to qualified immunity on the second cause of action, but Davis County is not. Thus, the court will address that claim only as it relates to Davis County.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider*, 717 F.3d at 767 (quoting *Tabor*, 703 F.3d at 1215). "At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). "Nonetheless, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Id.* (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### 1. First Cause of Action: Deliberate Indifference to Medical Needs in Violation of the 8th Amendment

Plaintiffs move for summary judgment against Nurse Anderson, alleging that his failure to take Miller's vitals immediately after her fall and his subsequent failure to monitor her vitals over the course of the next three hours resulted in the failure to diagnose her internal bleeding in time to prevent her death. Plaintiffs allege that these actions by Nurse Anderson constitute deliberate indifference to Miller's medical needs in violation of the Eighth Amendment. To successfully state a claim for deliberate indifference in violation of the Eighth Amendment, Plaintiffs must establish two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind." *Mitchell*, 80 F.3d at 1444 (quoting *Miller*, 948 F.2d at 1569).

As discussed previously, there are disputed material facts related to both the objective and subjective elements of Plaintiffs' claim for deliberate indifference against Nurse Anderson. Thus, the court cannot grant summary judgment in favor of Plaintiffs. "Where disputed material facts implicate either of the two questions of whether a serious medical need existed or whether an officer was deliberately indifferent to it, a court may not grant summary judgment." *Olsen*, 312 F.3d at 1315–16 (quoting *Lopez v. LeMaster*, 172 F.3d 756, 764 (10th Cir. 1999)); *see also DeSpain v. Uphoff*, 264 F.3d 965, 972 (10th Cir. 1999) (reversing summary judgment where "[n]early every material fact related to" whether the impact of a prison flooding incident constituted a "sufficiently serious" medical need such that it would warrant attention and whether prison officials were deliberately indifferent to it "was hotly contested"). Plaintiffs' motion is therefore denied as to the first cause of action.[18]

---

[18] Defendants only moved for summary judgment on the issue of qualified immunity on this claim.

### 2. Second Cause of Action: Failure to Train and/or Supervise in Violation of the 8th Amendment

The parties have filed cross-motions for summary judgment on Plaintiffs' second cause of action. Plaintiffs assert that the undisputed material facts establish that Davis County Jail's lack of a written medical policy violated Miller's Eighth Amendment rights because it ignored a substantial risk of harm to inmates. As has been previously addressed, Defendants moved for summary judgment on grounds of qualified immunity on behalf of all individual defendants and Davis County. They also moved to dismiss the claims against Davis County and Sheriff Richardson in his official capacity, alleging that there is no underlying constitutional violation by any of the individual defendants. Defendants also seek a ruling that Plaintiffs' are not entitled to punitive damages against Davis County. In response, Plaintiffs stipulated to the dismissal of their claim against Sheriff Richardson in his official capacity and to the dismissal of their claim for punitive damages against Davis County.

#### a. *Underlying Constitutional Violation*

Defendants are correct that a municipality may not be held "liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers." *Olsen*, 312 F.3d at 1317–18 (alteration in original) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). However, because there are disputes of material fact as to whether or not Nurse Anderson, a county official, violated the Eighth Amendment, Davis County may not be dismissed solely on these grounds. Defendants are therefore denied summary judgment on this issue.

#### b. *Davis County's Liability*

The court next turns to the issue of whether Plaintiffs are entitled to summary judgment against Davis County for its decision to operate the jail without medical protocols. Even if Nurse Anderson is found to have violated the Eighth Amendment, Davis County cannot be held liable

under Section 1983 solely because Nurse Anderson was the county's employee. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor . . . ." (emphasis in original)). Rather, Plaintiff must (1) identify "a government's policy or custom"; (2) "that caused the [constitutional] injury"; and (3) "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider*, 717 F.3d at 769 (internal quotation marks and citations omitted). In other words, Plaintiff must establish: "(1) [an] official policy or custom, (2) causation, and (3) state of mind." *Id.*

### i. Official Policy

Plaintiff challenges Davis County's official policy of operating without written medical protocols. Plaintiffs have established that not having written protocols is the official policy of Davis County because Sheriff Richardson decided to remove the medical protocols at issue. This lack of medical protocols therefore constitutes the "final decision by a municipal policymaker." *Id.* at 770.[19]

### ii. Causation

Plaintiffs argue that the lack of medical protocols caused Nurse Anderson to act with deliberate indifference to Miller's medical needs. But Defendants have identified material evidence disputing causation. As discussed above, Defendants contend that the lack of written protocols has no causal connection to the harm Miller suffered because the *unwritten* policy at the time of Miller's injury was to check vitals and monitor prisoners in need of medical attention.

---

[19] Defendants dispute that Sheriff Richardson is the policymaker who made this decision. However, Sheriff Richardson testified unequivocally that he is the policymaker for the jail and that he made the decision that the jail would operate without any written medical protocols. *See supra* at p. 25.

Nurse Anderson and Nurse Ondricek both testified that taking vitals was the unwritten policy. Plaintiffs respond that had the medical policy been *written*, Nurse Anderson would not have ignored it. To resolve this dispute, the fact-finder would have to decide how a "hypothetically well-trained officer would have acted under the circumstances." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). But the court cannot decide that question at this stage. Rather, this question of causation is best left to the jury.[20] Plaintiffs are therefore not entitled to summary judgment on their second cause of action against Davis County.

### iii.  State of Mind

Alternatively, the court finds that Plaintiffs should be denied summary judgment because there are disputed issues of material fact as to Davis County's state of mind. To establish the final element of a municipal liability deliberate indifference claim, Plaintiffs must prove that Davis County "ha[d] actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation, and it consciously or deliberately [chose] to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Plaintiffs can establish notice "by proving the existence of a pattern of tortious conduct," *id.*, or by demonstrating that their case belongs to a "narrow range of circumstances" where deliberate indifference can be found absent a pattern of violations. *Id.* at 1307–08 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 398 (1997)).  Plaintiffs have not introduced any evidence suggesting

---

[20]According to the Supreme Court:

> Predicting how a hypothetically well-trained officer would have acted under the circumstances may not be an easy task for the factfinder, particularly since matters of judgment may be involved, and since officers who are well trained are not free from error and perhaps might react very much like the untrained officer in similar circumstances. But judge and jury, doing their respective jobs, will be adequate to the task.

*Harris*, 489 U.S. at 391.

a pattern of tortious conduct at Davis County Jail. Instead they ask the court to find that the risk of constitutional harm to inmates was a "'highly predictable' or 'plainly obvious' consequence of" operating Davis County Jail without medical protocols, and therefore the decision to eliminate the protocols constituted deliberate indifference. *See id*. at 1308. Plaintiffs argue that Davis County's Jail Policy required a written medical policy and consequently Defendants were aware of the obvious risks of not having one in place. The court disagrees. Violating the jail's internal policy may establish negligence, but it does not establish that Davis County's lack of policy was so likely to result in constitutional injury that it constitutes deliberate indifference. Plaintiffs need to demonstrate the obviousness of the risk itself. While it is possible that the complete lack of written medical protocols caused a deprivation of constitutional rights at the jail, Plaintiffs cannot point to any evidence suggesting that the customs in place were insufficient to protect inmates from constitutional injury. Plaintiffs' motion is therefore denied because there are disputed issues of material fact on the elements of both causation and state of mind.

### c. *Defendant's Cross-Motion for Summary Judgment*

The court denies Plaintiffs summary judgment on Plaintiffs' second cause of action. The court does not, however, dismiss this claim because Defendants only moved for summary judgment against Davis County on the issues of qualified immunity, *see* Defs.' Mot. S.J. at 10, and lack of an underlying constitutional violation, *see id.* at 5 and 15, and the court has denied Davis County summary judgment on both of those issues.

### 3. **Third Cause of Action: State Law Claim**

Defendants have also requested the court decline to exercise supplemental jurisdiction over Plaintiffs' state law claim in the event it dismisses Plaintiffs' federal claims. Because the court has denied Defendants summary judgment on at least some of Plaintiffs' federal claims, the court

determines it is appropriate to continue to exercise supplemental jurisdiction over Plaintiffs' state law claim.

### III.    ORDER

I.    Defendants' Motion for leave to file objections to declarations is DENIED (ECF No. 54).

II.    Plaintiffs' Motion for Summary Judgment is DENIED (ECF No. 31).

III.    Defendants' Cross-Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART (ECF No. 42). Specifically, the court orders that:

    A.  Defendant Anderson is not entitled to qualified immunity on Plaintiffs' first cause of action.

    B.  Defendants Ondricek and Richardson are entitled to qualified immunity on Plaintiffs' second cause of action. This claim is therefore dismissed with prejudice as to Defendants Ondricek and Richardson. Pursuant to Plaintiffs' stipulation, Defendant Richardson is dismissed in his official capacity as well.

    C.  Davis County is not entitled to qualified immunity on the second cause of action.

    D.  Plaintiffs' claims for punitive damages are dismissed against Davis County with prejudice.

    E.  The court will continue to exercise supplemental jurisdiction over Plaintiffs' state law claim.

Signed September 23, 2019

BY THE COURT:

_____
Jill N. Parrish
United States District Court Judge

37