FILED
2022 MAR 14 PM 2:08
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CYNTHIA STELLA and the ESTATE OF HEATHER MILLER,<br><br>Plaintiffs,<br>v.<br><br>DAVIS COUNTY, SHERIFF TODD RICHARDSON, MAVIN ANDERSON, and JAMES ONDRICEK,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS IN LIMINE REGARDING EVIDENCE OF HEATHER MILLER'S PRIOR SUBSTANCE ABUSE, ADOPTION DECISION, MENTAL HEALTH DIAGNOSES, AND CRIMINAL HISTORY**<br><br>Case No. 1:18-cv-00002-JNP-DBP<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Dustin B. Pead |

Before this court are four motions brought by plaintiffs Cynthia Stella and the Estate of Heather Miller (collectively, "Plaintiffs") to prohibit defendants Davis County, Todd Richardson, Mavin Anderson, and James Ondricek (collectively, "Defendants") from offering evidence regarding Heather Miller's prior substance abuse; decision to give her children up for adoption; prior diagnoses of ADHD, bipolar disorder, and PTSD; and criminal history. ECF Nos. 91, 93, 94, 97. Plaintiffs criticize evidence of Miller's prior substance abuse and criminal history as improper character evidence—an attempt to use a propensity for using drugs or committing crimes to prove that Miller, in fact, used illegal drugs prior to her death. Plaintiffs further argue that Miller's prior substance abuse, her decision to give her children up through adoption, her prior mental health diagnoses, and her prior criminal history are irrelevant to the case and instead represent an attempt at character assassination.

Defendants respond that they intend to offer the aforementioned evidence not on the issue of whether Defendants violated Miller's civil rights, but rather on the issue of damages. Specifically, they argue that the evidence goes to the expected length and quality of Miller's remaining life, as well as her earning capacity. Defendants further argue that evidence of Miller's prior drug use and criminal history is necessary to impeach Stella, who, Defendants allege, previously has given inconsistent answers about her daughter's drug use and criminal history.

## ANALYSIS

The court begins by addressing the admissibility of the evidence under Rule 404(b), then turns to a balancing analysis under Rule 403.

### I.  RULE 404(B) OBJECTIONS

Rule 404(b) states that evidence of a crime, wrong, or other act is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But the evidence "may be admissible for another purpose." *Id.* And "[u]nder [R]ule 404(b), 'admission of evidence of other bad acts to assist the jury in measuring the extent of damages is a legitimate, non-character-based use of such evidence.'" *Montoya v. Sheldon*, 898 F. Supp. 2d 1259, 1272 (D.N.M. 2012) (quoting *Udemba v. Nicoli*, 237 F.3d 8, 15 (1st Cir. 2001)). Moreover, "use of . . . evidence for impeachment [is] a permissible 'other purpose' under Rule 404(b)." *United States v. Lara*, 956 F.2d 994, 997 (10th Cir. 1992).

Here, Defendants represent that they intend to use the evidence encompassed in these four motions in limine only for purposes of establishing damages or impeaching Stella. The court addresses each "other purpose" in turn.

A.      *Establishing Damages*

Plaintiffs seek noneconomic damages, including for loss of consortium, loss of income, and hedonic damages. Courts frequently admit evidence of substance abuse and mental health challenges as relevant to establishing such non-economic damages.[1] The court agrees and finds that evidence of Miller's prior substance abuse and mental health diagnoses can serve the proper "other purpose" of assisting in establishing noneconomic damages. Accordingly, Rule 404(b) does not bar the admission of evidence of Miller's prior substance abuse and mental health diagnoses.

Miller has a conviction for solicitation and unresolved charges for misdemeanor larceny and misdemeanor obstructing a police officer. The court addresses the conviction first. "Evidence of Plaintiff's prior convictions and incarcerations could be relevant to Plaintiff's claim for damages, particularly [her] claim for lost wages and emotional damages." *Jones v. City of Warren*, No. 11-15330, 2015 WL 3937608, at *4 (E.D. Mich. June 26, 2015) (citing *Clark v. W&M Kraft, Inc.*, 476 F. App'x 612, 617 (6th Cir. 2012) (unpublished) (finding that evidence of

---

[1] *See, e.g.*, *Bevan v. Valencia*, No. 15-0073, 2018 WL 3187356, at *6 (D.N.M. June 28, 2018) ("[T]his Court has held that a deceased's medical history, including mental health history, as well as past substance . . . abuse, are relevant to loss of enjoyment of life and value of life damages."); *Coker v. BNSF Ry. Co.*, No. Civ.-07-1101, 2008 WL 11336698, at *3 (W.D. Okla. Nov. 5, 2008) (finding evidence of drug and alcohol abuse relevant to "probable life expectancy and employability"); *Chamberlin v. City of Albuquerque*, No. Civ. 02-0603, 2005 WL 2313515, at *2 (D.N.M. July 31, 2005) (permitting evidence of "drug and alcohol abuse[] and mental illness . . . to rebut [the plaintiff's] claim of damages"); *Valdez v. Motyka*, No. 15-cv-109, 2021 WL 1123576, at *11 (D. Colo. Mar. 24, 2021) (finding that "evidence regarding Plaintiff's prior sentences, drug use, and homeless[ness] *may* bear on his claims for economic and non-economic damages"); *Magelky v. BNSF Ry. Co.,* No. 1:06-cv-025, 2008 WL 238451, at *11 (D.N.D. Jan. 28, 2008) (holding that a plaintiff's "medical history, medical conditions, drug and alcohol abuse, psychological problems, and stressors in her life are relevant" to a claim for non-economic damages); *Zibolis-Sekella v. Ruehrwein*, No. 12-cv-228, 2013 WL 12177858 (D.N.H. Oct. 8, 2013) ("Drug or alcohol use, particularly if significant, is capable of decreasing a person's earning capacity and life expectancy . . . In addition, evidence of a decedent's drug use is relevant to a claim for damages for loss of enjoyment of life.").

plaintiff's prior convictions, jail time, and criminal history was relevant to future earnings calculations)); *see also Baron ex rel. White v. Sayre Mem. Hosp., Inc.*, 221 F.3d 1351 (Table), at *1, *4 (10th Cir. 2000) (unpublished) (finding that "[w]e cannot say that the district court abused its discretion in admitting evidence of [the plaintiff's] criminal record" for purposes of "the jury's consideration of damages for pain and suffering [and] enjoyment of life"); *Marzett v. Seatrade Reefer Chartering, N.V*, No. 13-5270, 2015 WL 1415277, at *1 (E.D. La. Mar. 27, 2015) ("[S]everal courts have held that evidence of criminal convictions, imprisonment, and substance abuse are relevant to the issues of future lost wages and employability."). Because Plaintiffs seek damages for future lost wages and enjoyment of life, Rule 404(b) does not bar the admission of evidence of Miller's prior conviction.

But evidence of an arrest that has not resulted in a conviction is inadmissible. *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1024 (N.D. Ill. 2011) ("Prior arrests are usually inadmissible under Federal Rule of Evidence 403 . . . and Federal Rule of Evidence 404(b)."). Accordingly, the court GRANTS Plaintiff's motion as to evidence of any charges that did not result in convictions. However, even if the court excludes evidence of the specific charges Miller faced upon arrest, the jury will hear about Miller's arrest during the course of the trial. When the court addresses jury instructions, it plans to consider limiting instructions to avoid unfair prejudice that may result from the jury hearing about an arrest for which no conviction was obtained.

Miller also elected to give her children up for adoption. The court fails to see how Miller's decision to allow her aunt and uncle to adopt her children is relevant to calculating damages. Plaintiffs do not predicate their loss of consortium claims on Miller's relationship with her children. And Plaintiffs do not suggest that Miller's children bear on hedonic damages in

4

another way, such as relating to her "activities of daily living" or her "social leisure activities." Because Plaintiffs have not indicated any intent to use Miller's children to establish damages, the court sees no non-character-based purpose for the evidence. Indeed, Defendants offer no argument otherwise. Accordingly, the court GRANTS Plaintiff's motion as to evidence that Miller's aunt and uncle adopted her two children.

### B. *Impeaching Stella*

Finally, Defendants identify an additional basis for admission of evidence related to Miller's substance abuse and criminal history. Defendants argue that they must reference these topics in impeaching Stella. Specifically, Defendants argue that Stella gave incongruent answers regarding Miller's drug use and criminal history in her deposition as compared to her interview with investigators from the Utah Attorney General's office. The court finds this additional non-character-based reasoning persuasive.

*       *       *

In sum, Rule 404(b) bars evidence of Miller's unresolved charges and evidence that Miller gave her children up for adoption to her aunt and uncle. There is a proper "other purpose" under Rule 404(b) for evidence of Miller's prior substance abuse, mental health diagnoses, and criminal conviction for solicitation—namely for purposes of calculating damages and impeachment. However, to admit the aforementioned evidence, Defendants must also overcome Plaintiffs' Rule 403 objections.

## II.     RULE 403 OBJECTIONS

Rule 403 provides that even if evidence is admissible under other provisions, such as Rule 404(b), it is still inadmissible if its prejudicial effect substantially outweighs its probative

value. Therefore, for the evidence identified above as having a non-character-based rationale, the court must additionally balance the prejudicial effect of the evidence against its probative value.

The court begins with Miller's solicitation conviction and any related suggestion that Miller worked as a prostitute. Evidence that an individual engaged in prostitution is highly prejudicial. *See United States v. McDermott*, 245 F.3d 133, 141 (2d Cir. 2001) (finding references to Defendant's "clientele" unduly prejudicial because jurors "would . . . immediately speculate that she worked as a prostitute or paid escort"); *Jensen v. W. Jordan City*, No. 2:12-cv-736, 2017 WL 2312881, at *7 (D. Utah May 26, 2017) (noting the "manifestly prejudicial nature" of the related "crime of soliciting a prostitute"). And Defendants fail to demonstrate that the probative value of Miller's history of prostitution is particularly high. Defendants argue, in passing, that prostitution is a dangerous profession. But Defendants provide no evidence linking prostitution to a shortened lifespan or a loss in earning potential. Accordingly, the court GRANTS Plaintiff's motion as to evidence of Miller's solicitation conviction and other evidence that Miller engaged in prostitution.

Similarly, the court finds that the prejudicial effect of evidence of Miller's mental health diagnoses substantially outweighs its probative value. The probative value of such evidence is very low here. While courts may find evidence of mental health challenges probative in some cases, Defendants point to no evidence tying Miller's specific mental health diagnoses to a shortened life expectancy or lowered earning potential. Indeed, as the court noted during oral argument, many individuals with bipolar disorder, ADHD, or PTSD lead long, healthy, productive lives and engage in steady—even lucrative—employment. And the prejudicial effect—given the stigma associated with mental health diagnoses—is quite high. *See Moore v. Ingles Markets, Inc.*, No. 4:14-cv-121, 2015 WL 11978446, at *5 (N.D. Ga. July 16, 2015)

("Evidence of mental illness can be excluded as prejudicial if it is not highly relevant because mental illness carries a stigma that makes such evidence substantially prejudicial."); *O'Brien v. Chaparro*, No. 05-80342, 2005 WL 6011248, at *3 (S.D. Fla. Dec. 8, 2005) (excluding evidence of the plaintiff's bipolar disorder under Rule 403 because "the remaining stigma in our society of mental illness makes admission of such evidence in this case to be substantially more prejudicial than probative"). Accordingly, the court GRANTS Plaintiff's motion as to evidence of Miller's mental health diagnoses.

On the other hand, the probative value of evidence of Miller's substance abuse is not substantially outweighed by prejudice to Plaintiffs. The court recognizes that evidence of drug abuse is prejudicial. *Gregory v. Oliver*, No. 00 C 5984, 2003 WL 1860270, at *1 (N.D. Ill. Apr. 9, 2003) (noting that "a litigant's use of drugs has an obvious potential for being extraordinarily prejudicial"). But because the value of Miller's life, including her life expectancy and her capacity for earning, are at issue in this case, this evidence is highly probative. Miller's drug use goes directly to her life expectancy and ability to hold a job. A history of drug abuse takes a substantial physical toll on an individual's body in a manner that can shorten her lifespan. *Gfroehrer v. Calice*, No. 3:09-cv-2111, 2011 WL 5320712, at *4 (M.D. Pa. Nov. 1, 2011) ("[S]ince a history of drug and alcohol abuse clearly has bearing on a person's life expectancy, the evidence will be admissible."). Similarly, in this court's experience, individuals who are reliant on drugs frequently struggle to hold a job. Accordingly, the court DENIES Plaintiffs' motion as to evidence of Miller's substance abuse.

However, this court will not tolerate defense counsel engaging in character assassination via evidence of Miller's drug abuse. The court admits this evidence solely for the purpose of establishing damages or impeachment purposes. Defendants must avoid using this evidence for

7

any other improper purpose. To that end, while the court will permit sufficient evidence of drug use necessary for Defendants' arguments related to damages, the court will not permit cumulative evidence of Miller's drug use. To the extent Defendants attempt to repetitively raise Miller's drug use, Plaintiffs may object at trial.

DATED March 14, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge