Daniel Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 255-5555
dan@bskilaw.com

LAW OFFICES OF TAD D. DRAPER P.C.
Tad D. Draper, Bar # 4311
12339 S. 800 E. Ste. 101
Draper UT 84020
(801) 553-1700
(801) 255-5588 fax
Legaljustice3@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CYNTHIA STELLA, and the ESTATE OF HEATHER MILLER, | **PLAINTIFF'S TRIAL BRIEF** |
| Plaintiffs, | |
| v. | Case No:  1:18-cv-002 |
| DAVIS COUNTY, SHERIFF TODD RICHARDSON, MAVIN ANDERSON, JAMES ONDRICEK, | Judge:   Jill Parrish |
| Defendants. | |

Plaintiffs, by and through his counsel, hereby submits this Trial Brief.

1

# Factual Background[1]

On December 20, 2016, twenty-eight-year-old Heather Ashton Miller ("Miller") was booked into the Davis County Jail on misdemeanor charges. She was assigned to a top bunk in the Kilo housing unit. On December 21, 2016, around 6:00 pm, Miller fell from the top bunk and landed on the concrete floor. Deputy Lloyd, who was the first to respond to the scene, witnessed Miller writhing on the floor. Miller's cellmate, Sherry Ackerman, informed Deputy Lloyd that Miller had slipped on the ladder while trying to get out of the bunk for the headcount and hit her head on the floor. When Ackerman tried to help Miller up, she fell again and hit her left side on a table.

Deputy Lloyd called medical. Corporal Johnson also responded to the scene. Miller told Corporal Johnson that her ribs were hurting and that she was unable to breathe.

Nurse Anderson arrived shortly after Corporal Johnson. Although Nurse Anderson had been called to perform an initial assessment of Miller, he did not bring any medical equipment with him. Miller told Nurse Anderson her side hurt and that she felt nauseous and dizzy. Nurse Anderson asked her if she was coming off of drugs. Miller responded "meth." Nurse Anderson evaluated her head, neck and spine, and palpated her side. Miller did not obviously react to any spot in particular but kept stating that she hurt over and over.

Nurse Anderson then inspected her for any obvious injury, such as bleeding or contusions, but there were no visible external injuries. He did not take her vitals even though Nurse Anderson regularly, and as a matter of practice, takes vital signs when evaluating a

---

[1] The Factual Background draws heavily from the Court's Memorandum Decision and Order Denying Plaintiffs' Moton for Summary Judgment and Granting in Part and Denying in Part Defendants' Motion for Summary Judgment. (ECF 60).

2

patient. Had Nurse Anderson taken and monitored Miller's vital signs, he would have notice the

drop indicative of internal bleeding. But Nurse Anderson did not do so, and instead Anderson

concluded Miller's dizziness must be from methamphetamine withdrawal and gave her

ibuprofen.

Nurse Anderson decided that Miller should be moved to a different cell. A patient who

has suffered a potentially serious injury or is suffering from withdrawal would normally be

transferred to medical. Furthermore, a patient who cannot walk should automatically be taken to

medical, even if the cause is withdrawal. However, medical was crowded, and the only available

bunk was in a room with another inmate who was vomiting. Nurse Anderson and Corporal

Johnson decided to transfer Miller to the "Lima unit" where she would have her own cell and a

bottom bunk.

Miller got up and put on her shoes unassisted. However, once outside of her cell, Miller

repeated that she felt dizzy and was unable to walk on her own. Nurse Anderson and Corporal

Johnson then assisted Miller to the stairs. It took her twenty seconds to walk twenty feet. When

they reached a flight of stairs, Nurse Anderson went to get a wheelchair while Corporal Johnson

had Miller sit at the top of the stairs. Johnson then suggested that Miller "scoot down" rather than

walk down the stairs. Miller lowered herself down the stairs, step-by-step, in a seated position.

At the bottom of the stairs, Miller was able to stand and walk a few steps to the wheelchair. She

was assisted into the wheelchair. She was listless and tired and very quiet. Nurse Anderson

wheeled Miller to the Lima unit where she was placed on a bottom bunk. Nurse Anderson

scheduled a doctor appointment for the following day. Nurse Anderson told Miller to call

medical if her condition worsened, but he did not return to check on her or schedule any medical check-ins that evening.

Deputy Lloyd and Corporal Johnson went to retrieve Miller's bedding and effects from the Kilo unit. When they returned, Miller was no longer on the bed, but was lying on the floor with her head on her shirt. She did not respond to the officers and they thought she was exhibiting signs of someone detoxing from methamphetamine. Officers performed wellbeing checks at 6:33 pm and 7:32 pm. Miller remained on the floor. She did not respond to officers. However, at approximately 8:20 pm, when Deputy Lloyd went to bring toilet paper to Miller's cell, he saw her lying, mostly naked, on the floor. He noticed blood on her chin. He asked if she were okay. She gave him a wave. He did not enter her cell.

Deputy Lloyd then called medical. Nurse Layton answered the phone and asked if there were any signs of a new injury. Nurse Anderson was in the room and was listening in. Deputy Lloyd said Miller had taken her clothes off but appeared to be moving and breathing. Deputy Lloyd explained there was blood on Miller's chin. Nurse Layton told Deputy Lloyd not to worry about her.

Clerk Rogers called into Miller's cell. Miller did not respond. Deputy Lloyd stopped Deputy Lucius. They called Sergeant Wall, a female officer, to come check on Miller. Sergeant Wall arrived. Sergeant Wall said Miller had her leg propped on the toilet. Sergeant Wall saw blood on Miller's forearms and a one-inch gash on her chin. Sergeant Wall asked Miller to get dressed, but Miller would not stand up. She kept rolling around and moaning. The officers observed that she was cold, sweating, and pale in color.

Sergeant Wall called medical. Medical told her to bring Miller to them. When Miller arrived, Nurse Anderson testified she appeared dead. Sergeant Wall called an ambulance. The ambulance and EMT's arrived at approximately 8:50 pm and left for the hospital at 9:03 pm. Miller entered into cardiac arrest on her way to the hospital. She was pronounced dead at 10:06 pm.

Davis County Jail was operating without nursing protocols on the day of Miller's death. Nursing protocols are the bedrock of basic medical care and provide a step-by-step list for nurses to follow when presented with different forms of injuries – like abdominal pain. Though Davis County's own policy manual required these protocols, Davis County via Sheriff Richardson abandoned nursing protocols years prior. Nurse Ondricek, tasked with supervising nurses, provided no training to his employees. Though Nurse Anderson clearly violated Nurse Ondricek's expectations, Nurse Ondricek failed to review Anderson's care for Miller or reprimand Anderson for his subpar performance. To date, Anderson received no discipline for his treatment of Ms. Miller.

## **Plaintiff's Claims**

### I.    **§ 1983 Claim for Deliberate Indifference against Nurse Anderson**

Plaintiffs alleges Ms. Miller's Fourteenth Amendment right to adequate medical care was violated by Nurse Anderson's failure to adequately investigate Miller's medical needs, denial of access to a higher level of medical care, and then failure to provide reasonable treatment for her condition. To prevail, Plaintiff must prove by the following three factors via a preponderance of the evidence: (1)

Heather Miller had a serious medical need; (2) Nurse Anderson was deliberately indifferent to the serious medical need; and (3) Nurse Anderson's deliberate indifference caused harm to Heather Miller. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)

### 1. Ms. Miller's Ruptured Spleen and Eventual Death represented a Serious Medical Need;

This Factor considers whether, objectively ,the harm suffered rises to a level "sufficiently serious" to be recognized by the Eighth Amendment's bar on cruel and unusual punishment.  *Mata v. Saiz,* 427 F.3d 745, 752–53 (10th Cir.2005). The analysis turns on the ultimate harm suffered, <u>not</u> "the symptoms presented at the time the prison employee has contact with the prisoner". *Id* at 753.  The 10th Circuit has held "death is, without doubt, sufficiently serious to meet the objective component". *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019)

 a. <u>Facts in Support</u>:

  i. Heather Miller fell off the bunk at the Davis County Jail;

  ii. The fall ruptured Heather Miller's spleen;

  iii. At the time Anderson investigated Miller, she had a ruptured spleen.

iv.  Her untreated spleen caused her to bleed internally and die;

v.  Death is sufficiently serious to meet this standard. See e.g. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (heart attack and death found sufficient).

### 2.  Nurse Anderson acted with deliberate indifference to Ms.  Miller

Plaintiffs must also show "that the defendant knew [the detainee] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id* at 1089. This can be established through circumstantial evidence. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005). Medical personnel can act deliberately indifferent to inmate's needs in their role as gatekeepers for other medical personnel capable of treating the condition if they delay or refuse to fulfill their role. *Sealock*, 218 F.3d at 1211. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious". *Oxendine*, 241 F.3d at 1276. Additionally, violations of contemporary standards or health care protocols are "highly relevant in determining what constitutes deliberate indifference to medical care". *Mata*, 427 F.3d at 757-758.

a. <u>Facts in Support</u>:

   i. As a nurse, Nurse Anderson is not qualified to diagnose medical conditions;

   ii. Nurse Anderson's role at the Davis County Jail was to evaluate an inmate's medical needs and determine whether they needed to be transferred to medical;

   iii. As part of inmate evaluations, Nurse Anderson always checks and monitors vital signs;

   iv. Nurse standards require nurses to check and monitor vital signs when evaluating a patient;

   v. When Nurse Anderson visited Miller, he did not check Miller's vital signs;

   vi. Nurse Anderson is aware that falls from bunks can result in serious injuries;

   vii. When Nurse Anderson arrived, Miller repeatedly complained of pain and was dizzy and nauseous;

   viii. Without completing an assessment, Nurse Anderson decided to transfer Miller to another unit;

      ix.  Nurse Anderson admits that inmates who cannot walk on their own are required to be transferred to medical for observation;

      x.  Though a bunk was open, Nurse Anderson did not transfer Miller to medical;

      xi.  Nurse Anderson did not order medical watch for Miller;

      xii.  Nurse Anderson overheard the phone conversation between Nurse Layton and Deputy Lloyd yet did not intervene in Miller's care;

**3.  Nurse Anderson's indifference caused harm to Heather Miller**

   a.  Facts in Support

      i.  Had Nurse Anderson checked and monitored Miller's vitals, vital signs would have indicated internal bleeding in as soon as 15 minutes

      ii.  Ms. Miller had a high likelihood of survival had she been transported out to a hospital for care within an hour of her injury

     iii. There is a hospital within a mile of the Davis County

       Jail

## II. <u>§ 1983 Claim against Davis County</u>

   Plaintiffs also allege a § 1983 claim against Davis County for the way it

operates the Davis County Jail. To state a claim against a municipal entity in this

context, "plaintiffs must allege facts showing: (1) an official policy or custom, (2)

causation, and (3) deliberate indifference." *Quintana*, 973 F.3d at 1034.

### 1. Davis County had an official practice of operating with nursing protocols, without nursing training, and without supervision.

   An informal custom amounting to a widespread practice, the decisions of

employees with final policymaking authority, and the failure to train or supervise

employees can all serve as the requisite custom for municipal liability. *Waller v.*

*City & County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).

    a. <u>Facts in Support</u>

     i. Sheriff Richardson was the policymaker for the Davis

      County Jail

     ii. As Sheriff, Richardson throw out the Jail's use of

      nursing protocols

   iii. The use of nursing protocols was dictated by the Jail's policy manual

   iv. Davis County operated the jail for years without compliance to the policy manual

   v. Davis County did not provide training to its nursing staff

   vi. Davis County did not review the medical care provided by its nurses

**2. Lack of training and responsibility allowed Nurse Anderson to harm Miller**

  a. <u>Facts in Support</u>

   i. Basic nursing protocols would have required Nurse Anderson to take and monitor vital signs for Ms. Miller's condition

   ii. Had Nurse Anderson taken Miller's vital signs, he would have seen signs of internal bleeding promptly

   iii. Had Miller been transferred to medical or the hospital, her condition likely would have been caught and her prognosis for survival would have been high

### 3. Operating without Nursing Protocols, in violation of Davis County's own policy and national standards, along with the failure to train or discipline its medical staff, constitutes deliberate indifference

"Deliberate indifference to serious medical needs may be shown by proving there are such gross deficiencies in staffing, facilities, equipment, or procedures that the inmate is effectively denied access to adequate medical care." *Crowson v. Washington Cty. Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020). Unlike individual liability, Plaintiff must show the municipality had actual <u>or constructive notice</u> of the risk. *Id*.

 a. <u>Facts in Support</u>

  i. Davis County's Jail Policy Manual requires nursing protocols

  ii. Prison standards require nursing protocols, referring to them as the basics of constitutionally required medical care

  iii. Mr. Vinger well testify that nursing protocols are the industry standard for insuring adequate medical care

    iv.  Davis County Jail operated without nursing protocols for several years in violation of their own policy manual

    v.  Not only did Davis County Jail withdraw its nursing protocols, it failed to compensate for the lack of guidance with more training or supervision

    vi.  Nurse Ondricek, though Anderson's supervisor, never reviewed the care he provided to Miller

    vii.  Nurse Anderson was never disciplined or further trained after failing to meet expectations when treating Miller.

### III.  Unnecessary Rigor Claim against Nurse Anderson, Nurse Ondricek, Sheriff Richardson, and Davis County

Article I, section 9 of the Utah Constitution provides "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor." *State v. Houston*, 2015 UT 40, ¶ 50, 353 P.3d 55, 72, as amended (Mar. 13, 2015). This provision is targeted at eliminating "unreasonably harsh, strict, or severe treatment" in prison such as "being unnecessarily exposed to an increased risk of serious harm." *Id*. Plaintiffs allege Nurse Anderson, Nurse Ondricek, Sheriff Richardson, and Davis County

(together "State Defendants") all violated Heather's state constitutional rights under the unnecessary rigor clause through their actions, and inactions, in providing medical care following her fall from the bunk.

To prevail on their "Unnecessary Rigor" claim, Plaintiffs must show (1) that she suffered a flagrant violation of her constitutional rights; (2) that existing remedies do not redress his or her injuries; and (3) that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries. *Kuchcinski v. Box Elder Cty.*, 450 P.3d 1056, 1067 (Utah 2019).

## 1. Heather Miller suffered a flagrant violation of her constitutional rights

A flagrant violation of the unnecessary rigor clause has occurred whenever the following two elements are established: First, the nature of the act presents an obvious and known serious risk of harm to the arrested or imprisoned person; and second, knowing of that risk, the official acts without other reasonable justification. *Dexter v. Bosko*, 184 P.3d 592, 598 (Utah 2008).

    a. <u>Facts in Support</u>

        i. As a nurse, Nurse Anderson is not qualified to diagnose medical conditions;

ii.  Nurse Anderson's role at the Davis County Jail was to evaluate an inmate's medical needs and determine whether they needed to be transferred to medical;

iii.  As part of inmate evaluations, Nurse Anderson always checks and monitors vital signs;

iv.  Nurse standards require nurses to check and monitor vital signs when evaluating a patient;

v.  When Nurse Anderson visited Miller, he did not check Miller's vital signs;

vi.  Nurse Anderson is aware that falls from bunks can result in serious injuries;

vii.  When Nurse Anderson arrived, Miller repeatedly complained of pain and was dizzy and nauseous;

viii.  Without completing an assessment, Nurse Anderson decided to transfer Miller to another unit;

ix.  Nurse Anderson admits that inmates who cannot walk on their own are required to be transferred to medical for observation;

15

x.   Though a bunk was open, Nurse Anderson did not transfer Miller to medical;

xi.   Nurse Anderson did not order medical watch for Miller;

xii.   Nurse Anderson overheard the phone conversation between Nurse Layton and Deputy Lloyd yet did not intervene in Miller's care;

xiii.   Davis County's Jail Policy Manual requires nursing protocols

xiv.   Prison standards require nursing protocols, referring to them as the basics of constitutionally required medical care

xv.   Mr. Vinger well testify that nursing protocols are the industry standard for insuring adequate medical care

xvi.   Sheriff Richardson operated Davis County Jail without nursing protocols for several years in violation of their own policy manual

xvii. Not only did Sheriff Richardson withdraw the Jail's nursing protocols, he failed to compensate for the lack of guidance with more training or supervision

xviii. Nurse Ondricek, recognizing the lack of protocols would provide his nurses less guidance, failed to increase training or otherwise explain his expectations for medical care

xix. Nurse Ondricek, though Anderson's supervisor, never reviewed the care he provided to Miller

xx. Nurse Anderson was never disciplined or further trained after failing to meet expectations when treating Miller.

## 2. Existing Remedies May Exist if the Jury Finds a Federal Constitutional Violation

If the jury finds a federal constitutional violation and awards damages, there is an argument that existing remedies exist which preclude the state constitutional violation.

### 3.  Equitable Relief is Not Adequate now that Ms. Miller has Passed

The Third Element of their "Unnecessary Rigor" claim requires Plaintiffs to demonstrate equitable relief, like an injunction, is not adequate relief. Considering Ms. Miller has passed and cannot enjoy equitable relief, the relief is no longer sufficient.

### 4.  Davis County is liable because it had a policy/practice which actively risked inmates receiving inadequate medical care

Borrowing from municipal liability for federal constitutional claims, the Utah Supreme Court has required a violative custom or practice before Davis County can be liable for unnecessary rigor. *Kuchcinski v. Box Elder Cty.*, 2019 UT 21, ¶ 34, 450 P.3d 1056, 1068.

a.  Facts in Support

i.  Sheriff Richardson was the policymaker for the Davis County Jail

ii.  As Sheriff, Richardson throw out the Jail's use of nursing protocols

iii.  The use of nursing protocols was dictated by the Jail's policy manual

   iv. Davis County operated the jail for years without compliance to the policy manual

   v. Davis County did not provide training to its nursing staff

   vi. Davis County did not review the medical care provided by its nurses

## Plaintiff's Witnesses

I. **Todd Richardson:** Prior Sheriff of Davis County, Richardson is anticipated to testify regarding his role as policymaker for the Jail, the Policy Manual, and his decision to revoke the use of nursing protocols at the Jail.

II. **Marvin Anderson:** Anderson is anticipated to testify regarding his job, his training, the lack of protocols at the jail, Ms. Miller's condition, his failure to check vital signs, his failure to book Miller into medical, his failure to order medical observations, and his failure to react during Deputy Lloyd's phone call to medical.

III. **James Ondricek:** Ondricek is expected to testify regarding his job as supervisor, his expectations (including that nurses would always check vital signs and transfer inmates unable to walk to medical), his failure to provide training, his failure to review Anderson's care to Miller, his failure to discipline or teach Anderson upon learning of Anderson's failings.

IV. **Nurse Daniel Layton:** Layton will testify as to the phone call with Deputy Lloyd, including that Nurse Anderson was in the room and heard the phone call over speaker phone. Layton will also testify regarding his response to Deputy Lloyd.

V. **Lawrence Lucius:** Lucius will testify regarding his interactions with Deputy Lloyd and Heather Miller.

VI. **Tyson Downey:** Downey will testify regarding the AG's investigation into Heather Miller's death.

VII. **Sherry Ackerman:** Ackerman was Heather's cellmate and will testify regarding her observations of Heather and the interaction between Anderson and Heather.

VIII. **Sonya Langston:** Langston was incarcerated and housed next to Heather when she fell off her bunk. Langston will testify regarding her observations of Miller and Anderson.

IX.   **Erik Christensen:** The medical examiner, Dr. Christensen is anticipated to testify regarding his autopsy of Miller and his findings.

X.   **Deputy Lloyd**: Lloyd will testify regarding his interactions with Miller, his observations of Miller, the statements made by Heather's cellmates, his phone call with medical, his decision to contact Lucius for assistance, and Miller's condition prior to evacuation from the Jail.

XI.   **Cynthia Stella**: Stella will testify regarding Heather and her relationship with Ms. Miller.

XII.   **Dr. Tubbs**: Defendants' expert who is expected to testify regarding the use of nursing protocols at jail though out the region.

XIII.   **Dr. Starr**: Plaintiffs' expert who will testify regarding the spleen, survivability of the injury, and the effect the injury would have on vital signs.

XIV.   **Todd Vinger**: Plaintiffs' expert who will testify regarding the standard of care for jails as to the use of nursing protocols.

XV.   **Deborah Shultz**: Ms. Schultz, Plaintiffs' expert, will testify regarding Nurse Anderson's care and how it compares to national nursing standards.

DATED this April 23, 2022

BACZYNSKI LAW, PLLC

/s/ Daniel Baczynski
Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I certify that on this <u>April 23, 2022</u>, I caused **TRIAL BRIEF** to be filed with

the Court through its ECF filing system, with service provided to the following:

> Jesse C. Trentadue
> Michael W. Homer
> Sarah E. Jenkins
> jesse32@sautah.com
> nhoagland@sautah.com
> mhomer@sautah.com
> sjenkins@sautah.com
> SUITTER AXLAND, PLLC
> 8 East Broadway, Suite 200
> Salt Lake City, Utah 84111
> Tel: (801) 532-7300
> Fax: (801) 532-7355

                              /s/      Daniel Baczynski