IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CYNTHIA STELLA, and the ESTATE OF HEATHER MILLER,<br><br>Plaintiffs,<br>v.<br><br>DAVIS COUNTY, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER RE EVIDENTIARY MOTIONS**<br><br>Case No. 1:18-cv-002<br><br>District Judge Jill N. Parrish |

The parties filed a number of evidentiary motions in advance of the pretrial conference. *See* ECF Nos. 157, 163, 164, and 165. The court addresses these motions in a single, consolidated order.

I.     **REQUEST FOR JUDICIAL NOTICE [ECF No. 157]**

"Judicial notice permits a judge to accept 'a matter as proved without requiring the party to offer evidence of it.'" *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985) (citation omitted). A court's power to take judicial notice is governed by Federal Rule of Evidence 201. Under that rule, a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The court must take judicial notice if a party requests it and supplies the court with the necessary information. FED. R. EVID. 201(c)(2).

Plaintiffs move the court to take judicial notice of the following facts: (1) Miller and Stella's life expectancies, (2) several facts from the medical examiner's report, (3) the minimum wage in Utah, (4) sections of the Utah Governmental Immunity Act ("UGIA") related to punitive

damages, and (5) the National Commission of Correctional Health Care's *Standards for Health Services in Jail*. The court addresses each fact in turn.

### A. Life Expectancy

Plaintiffs move the court to take judicial notice of Miller and Stella's average life expectancy under the Social Security Administration's Actuarial Table. Defendants do not oppose Plaintiffs' request. *See* ECF No. 162 at 3. Accordingly, the court takes judicial notice that Miller's life expectancy under the Actuarial Table is 53.93 years (19,864 days) and that Stella's life expectancy under the Actuarial Table is 30.82 years (11,249 days).

### B. Facts from Medical Examiner's Report

Plaintiffs request that the court take judicial notice of several facts found within the medical examiner's report: (1) Miller's cause of death, (2) her date and time of death, and (3) notes in the "evidence of injury" section of the report. Plaintiffs contend that it is appropriate to take judicial notice of facts that derive from government records, such as a medical examiner report. Defendants argue that the court need not take judicial notice of the aforementioned facts because Plaintiffs have already designated the autopsy report, which contains the facts, as one of their exhibits. Moreover, Defendants argue that Dr. Christensen, who performed Miller's autopsy and wrote the autopsy report, can answer questions about the cause and manner of Miller's death.

Plaintiffs are correct that courts have taken judicial notice of a medical examiner's report. *See, e.g.*, *Snyder v. Ent. Rent-A-Car Co.*, 392 F. Supp. 2d 1116, 1123 n.2 (N.D. Cal. 2005). However, "[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Int'l Star Class Yacht*

*Racing Assoc. v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2nd Cir. 1998); *see also United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002) ("[W]e are mindful that if a court takes judicial notice of a fact whose application is in dispute, the court removes the weapons of rebuttal evidence, cross-examination, and argument from the parties and raises doubt as to whether the parties received a fair hearing." (citation omitted and cleaned up)).

The facts for which Plaintiffs request judicial notice are not beyond controversy. Indeed, the statements contained in the autopsy report are the type of information that can be probed through cross-examination. Specifically, Defendants represent that they intend to question Dr. Christensen about "the cause of death, including how the death producing injury was incurred, and the time of death." ECF No. 162 at 8. Taking judicial notice of cherry-picked facts from the report could relieve Plaintiffs of the need to enter the report into evidence, which raises the concern, cited by the Tenth Circuit, that Plaintiffs will sidestep any exploration of the medical examiner's findings on cross-examination. *See Boyd*, 289 F.3d at 1258. Accordingly, the facts contained in the medical examiner's report are not the sort of facts "not subject to reasonable dispute"—but rather, the proper subject of exploration on cross-examination.  Accordingly, the court DENIES Plaintiffs' request for judicial notice of facts from the medical examiner's report.

    C.    *Minimum Wage in Utah*

Plaintiffs next request that court take judicial notice that Utah's minimum wage is $7.25 per hour. Defendants concede that a state's minimum wage is a proper subject for judicial notice. And the court agrees. Courts may take judicial notice of facts "generally known within the trial court's territorial jurisdiction," such as minimum wage. Rule 201(b)(1); *see also Rivera v. Volvo Cars of N. Am.*, No. 13-397, 2016 WL 7383321, at *9 (D.N.M. Feb. 5, 2016) (noting that the court took judicial notice of minimum wage).

Nevertheless, Defendants oppose Plaintiffs' request for judicial notice as to minimum wage on relevancy grounds. Specifically, Defendants argue that because Plaintiffs have produced no evidence that Miller was employed, the minimum wage is not relevant to any lost income claim. Moreover, Defendants urge the court to refrain from considering judicial notice of the Utah minimum wage until when, and if, the court submits Plaintiffs' claim for lost income to the jury.

Damages for § 1983 cases are determined by principles of common law torts which include compensatory damages. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986). And generally, "compensatory damages would include . . . loss of earnings based upon the probable duration of the victim's life had the injury [not] occurred. . . ." *Berry v. City of Muskogee*, 900 F.2d 1489, 1507 (10th Cir. 1990).

Plaintiffs seek to recover 41 years of income at $15,080 per year, calculated based on annual minimum wage earnings, for loss of income. ECF No. 175-4, at 7. The minimum wage is therefore relevant to a claim in this case. Whether or not that formula is appropriate, given Miller's employment history, does not bear on its relevance to Plaintiffs' claim. Furthermore, other courts have found evidence of wages to be relevant in calculating the earning capacity of similarly unemployed or underemployed plaintiffs in tort claims. *See, e.g.*, *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 727 (6th Cir. 2012) ("[A] plaintiff who is unemployed or otherwise earning below her potential at the time of injury, for example, can recover damages for lost earning capacity, as can an injured child, student, or homemaker."); *Martinez v. Cont'l Tire Americas, LLC*, 476 F. Supp. 3d 1137, 1143, 1145 (D.N.M. 2020) (holding that evidence of American wages could be presented in a wrongful death claim of an undocumented worker); *Corbett v. Seamons*, 904 P.2d 229, 233 (Utah Ct. App. 1995) (holding that evidence of wages

could be used to establish the value of an injured woman's work when she was a co-owner of a family business who had never taken a wage for her work).

The court therefore is inclined to take judicial notice that Utah's minimum wage is $7.25 if the court ultimately submits a claim for lost income to the jury. But because the court need not take judicial notice of that fact unless and until such a claim is submitted, the court declines to do at this time.

### D.     *Utah Governmental Immunity Act Provisions*

Plaintiffs also ask the court to take judicial notice of certain sections of the Utah Governmental Immunity Act, Utah Code § 63G-7-603 and § 63G-7-902, which outline the state's indemnification policy when an employee is sued during performance of the employee's duties, within the scope of the employee's duties, or under color of authority. Plaintiffs essentially request that the court take judicial notice that punitive damages assessed against the individual defendants in this case will be paid by Davis County. Defendants argue, however, that such evidence is irrelevant to the case before this court. Moreover, Defendants express concern that suggesting that Davis County will pay any judgment entered against the individual defendants could incentivize a higher punitive damage award.

Ordinarily, evidence of whether a defendant is insured or uninsured is not admissible because it is irrelevant to the question of liability. *Perrin v. Anderson*, 784 F.2d 1040, 1047 (10th Cir. 1986). However, when a party brings a claim for punitive damages, the source of awarded damages becomes relevant. *Id.* at 1047–48. Specifically, punitive damages serve to deter future misconduct, and the amount necessary to deter is, in part, based on the means of the defendant. *Sanders v. Turn Key Health Clinics*, No. 17-CV-492-JED-CDL, 2021 WL 2413040, at *2–3 (N.D. Okla. June 14, 2021).

But because the purpose of punitive damages against the individuals is to deter their actions, not to deter the government agency, the financial condition of the agency is no longer relevant. *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."); *see also Larez v. Holcomb*, 16 F.3d 1513, 1521 (9th Cir. 1994) (stating that punitive damages in a § 1983 action should reflect what would deter misconduct by the individual defendant and that because indemnification means that the individual pays nothing, regardless of the amount, indemnification is not relevant to the amount that would "sting" the defendant); *Molina v. Perez*, No. 13-1025-JTM, 2015 WL 249024, at *5 (D. Kan. Jan. 20, 2015) (stating that, in the context of a Bivens action, because the purpose of an action against an individual federal official was to deter the federal official from engaging in misconduct, and not to deter the agency for which he worked, indemnification by the federal agency was irrelevant to the question of the amount necessary to deter the defendant at issue for a punitive damages claim). In *Perrin*, the Tenth Circuit held that a statement that individual defendants—not the State of Oklahoma—would pay any punitive damages was relevant to the jury's evaluation of the financial condition of the defendants. *See Perrin v. Anderson*, 784 F.2d at 1047–48. In contrast, a statement that reveals indemnification is not relevant to the size of an award needed to deter the individual defendants here.

Defendants also argue that it is unclear whether the legislature intended § 63G-7-603 and § 63G-7-902 to apply to civil rights cases rather than merely applying to state tort claims. To the extent that Defendants wish to challenge the meaning of the statute, whether Utah law requires Davis County to indemnify its employees for civil rights violations is not beyond dispute. It is therefore improper for the court to take judicial notice of the statute.

### E.     *Standards for Health Services in Jails*

Plaintiffs further ask this court to take judicial notice of the 2014 Standards for Health Services in Jails manual published by The National Commission on Correctional Health Care ("the standards"). Defendants oppose this request. Specifically, Defendants argue this court's order granting Defendants' Motion in Limine regarding written protocols prohibits admission of the standards. However, that order dealt specifically with the jail's decision to reinstate the standards following Heather Miller's death. *See* ECF No. 151 (prohibiting Plaintiffs from "offering evidence of Davis County Jail's decision to reinstate written medical treatment protocols following Heather Miller's death"). The order is not so broad as to restrict any evidence that national standards exist, nor does it restrict evidence of use and knowledge of the standards before Miller's death.

Defendants also argue that the manual is irrelevant because the standards do not establish the constitutional minima for a civil rights violation. The court agrees that the standards do not establish the constitutional minima but is unpersuaded that the standards are therefore necessarily irrelevant.

Failure to adhere to the standards alone is clearly insufficient to establish Plaintiffs' claims. *See Bell v. Wolfish*, 441 U.S. 520, n.27 (1979) ("While the [correctional standards] of these various groups may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question."). However, this does not necessarily make the standards irrelevant to Plaintiffs' claims. To the extent Plaintiffs can demonstrate that officials knew of the standards before Miller's death, the standards may be relevant to proving notice that training was deficient on the

failure to train claim,[1] as well as awareness of a substantial risk of serious harm on the failure to provide adequate medical care claim.[2] *See* FED. R. EVID. 401 (noting that relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

However, because the relevance of the standards is not yet clearly established, and because Defendants dispute the meaning and relevance of the standards to the facts in this case,[3] the court declines to take judicial notice. Taking judicial notice of the standards would deny Defendants any opportunity to challenge the meaning and applicability of the standards, which are not beyond dispute. Should the standards be admitted as evidence, the meaning and applicability of the standards are a proper subject of exploration on cross-examination.

In sum, the court declines to take judicial notice of the standards. The court will consider the relevancy of the standards if Plaintiffs move to admit the standards as evidence.

---

[1] To succeed on their failure to train theory, Plaintiffs must demonstrate that the municipality's policy of failing to train its employees amounted to a "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alteration in original) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). For a failure to train claim, the Supreme Court has said that "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62.

[2] The standard for a constitutional violation for failure to provide adequate medical care is deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Indeed, the Supreme Court specifically held that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id*. In *Farmer v. Brennan*, the Supreme Court further clarified that the deliberate indifference standard for conditions of confinement is equivalent to "subjective recklessness as used in the criminal law," which requires that officials be subjectively aware that there is a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994).

[3] *See* ECF No. 162, at 7 ("Plaintiffs have not designated an expert to opine on the meaning and/or relevance of this national standard").

## II. OBJECTIONS TO PROPOSED EXHIBITS DURING OPENING STATEMENTS [ECF Nos. 163, 164]

Both parties object to exhibits that the opposing party proposes to use during its opening statement. The court begins with Plaintiffs' objections before turning to Defendants' objections.

### A. *Plaintiffs' Objections to Defendants' Proposed Exhibits*

Defendants have identified five different exhibits they may use during their opening statement. Plaintiffs object to three of Defendants' proposed exhibits: Exhibit 5 (Attorney General Report's Timeline), Exhibit 19 (Heather Miller's Booking Information Sheet), and Exhibit 203 (Heather Miller's Suicide Prevention Screening Form).

Defendants concede that they cannot use the Timeline without establishing a nonhearsay purpose or an exception to the hearsay rule. Defendants do not attempt to establish such purpose or exception. Accordingly, without such a purpose or exception, the court sustains Plaintiffs' objection.

Plaintiffs object to Exhibits 19 and 203 because they contain references to the charges for which Miller was arrested. As to Exhibit 203, Defendants represent that they included the incorrect exhibit. Instead of Miller's Suicide Prevention Screening Form, they intended to include Miller's Medical Screening Form (Exhibit 18). Exhibit 18 does not include information about the charges against Miller and Plaintiffs do not object to its use. Accordingly, the court deems Plaintiffs' objection to Exhibit 203 moot.

Finally, Defendants request that Plaintiffs provide the court and Defendants with a copy of Exhibit 19 that has the objectionable material redacted. Plaintiffs reply that the court should prohibit Defendants from using even a redacted version of Miller's Booking Information Sheet because it would invite the jury to speculate as to the charges against Miller. The court has already issued an order on a motion in limine regarding the Booking Information Sheet. *See* ECF

No. 154 at 2 ("Defendants have failed to offer any reason why Miller's arrest or charging records are relevant to their case. Accordingly, the court GRANTS Plaintiffs' motion in limine regarding the two documents attached to Plaintiffs' motion in limine, Miller's arrest information sheet and felony arrest form."). Accordingly, the court sustains Plaintiffs' objection to Defendants' use of Exhibit 19 during opening statements.

### B.  *Defendants' Objections to Plaintiffs' Proposed Exhibits*

Defendants' objection simply asks that the jury not be shown the photographs of Miller's enlarged spleen until after the medical examiner, Dr. Christensen, lays the foundation for their admission into evidence. As noted above, Plaintiffs have already represented to the court multiple times that they plan to call Dr. Christensen for this very purpose. Indeed, Plaintiffs repeat this intention in their response brief to this motion. *See* ECF No. 173 at 1 ("Defendants apparently do not intend to stipulate to the document and demand Plaintiffs lay a foundation for the document by calling Dr. Christensen as a witness – and Plaintiffs intend to do so.").

Defendants contend that Plaintiffs may only use the photographs *after* Dr. Christensen has laid a foundation, not before. But Defendants do not dispute the authenticity or admissibility of the photographs, beyond their foundation objection. Because Plaintiffs have clearly stated that they will lay a foundation for the photographs when presenting their case, the court will not allow Defendants' refusal to stipulate to prevent Plaintiffs from using an otherwise admissible piece of evidence in their opening statement. However, Plaintiffs use the photographs at their own peril. Should it result that Plaintiffs cannot lay sufficient foundation with Dr. Christensen, the court will have to give the jury a curative instruction regarding the photograph. Accordingly, the court overrules Defendants' objection.

### III.     RULE 901 OBJECTIONS [ECF No. 165]

Federal Rule of Evidence 901 provides that "the proponent [of a piece of evidence] must provide evidence sufficient to support a finding that the item is what the proponent claims it is." Defendants raise 901 objections to two of Plaintiffs' exhibits: Exhibit 26 and Exhibit 68. The court overrules both objections

#### A.     *Exhibit 26: Photographs of Miller's Ruptured Spleen*

Defendants' first objection pertains to a photograph of Miller's ruptured spleen. Defendants argue that they "suspect" Plaintiffs are not going to call the medical examiner, Dr. Christensen, to authenticate the photograph. But the court has already discussed this issue with the parties. At the February 22, 2022 hearing on the parties' motions in limine, counsel for Plaintiffs agreed that Exhibit 26 should not be shown to the jury until Dr. Christensen lays a foundation. Plaintiffs renew their commitment to calling Dr. Christensen to authenticate the photograph in their response brief. *See* ECF No. 174 at 2 ("Plaintiffs intend to call Dr. Christensen to authenticate the photograph.").

The court takes Plaintiffs' counsel at his word that he intends to call Dr. Christensen. Accordingly, Defendants suspicions are unfounded. The court overrules Defendants' objection to Exhibit 26.

#### B.     *Exhibit 68: Response to Records Request*

Defendants' second objection relates to a response to a records request by Plaintiffs' counsel. Defendants initially object to the document under Rule 901. After Plaintiffs responded that the document qualifies as a self-authenticating document under Rule 902, Defendants asserted that even if Rule 902 serves to authenticate the document, that Plaintiffs have failed to meet the requirements of Rule 803(10) to overcome hearsay concerns.

The court agrees with Plaintiffs that the record is self-authenticating. Federal Rule of Evidence 902 provides that certain evidence is self-authenticating. In other words, certain documents "require no extrinsic evidence of authenticity in order to be admitted." FED. R. EVID. 902. Such documents include "[a] document that bears: a seal purporting to be that of . . . a department, agency, or officer of [a state]; and a signature purporting to be an execution or attestation." *Id.* 902(1). Here, the records response bears the seal of the Utah Department of Commerce's Division of Occupational and Professional Licensing. And the record contains a signature by Carol Inglesby, a Records Officer attesting to the results of the records request. Accordingly, the records response is self-authenticating under Rule 902.

Defendants also raise a hearsay objection in their reply brief.[4] Federal Rule of Evidence 803(10) designates as non-hearsay "[t]estimony—or a certification under Rule 902—that a diligent search failed to disclose a public record or statement if: the testimony or certification is admitted to prove that the record or statement does not exist; or a matter did not occur or exist, if a public office regularly kept a record or statement for a matter of that kind." Therefore, to the extent Plaintiffs intend to use the record response to demonstrate that certain records do not exist, it is not hearsay.

Defendants point to a non-binding case out of the Eleventh Circuit for the proposition that application of Rule 803(10) requires an indication of who conducted the records search, her position, or whether she was the custodian of the records searched. But the Tenth Circuit has no such requirement. Indeed, the Tenth Circuit has previously acknowledged that Certificates of Nonexistence of Records, which do not mention who conducted the records search, fall under Rule 803(10). *See, e.g.*, *United States v. Lara-Ibanez*, 203 F. App'x 200, 204 (10th Cir. 2006)

---

[4] Although a hearsay objection is best raised in a motion in limine, not on reply to a Rule 901 objection, the court will address the hearsay objection here in the interest of efficiency.

(unpublished) (citing *United States v. Cervantes-Flores*, 421 F.3d 825, 830-34 (9th Cir. 2005)). Moreover, Defendants argue stringently that the records response contains no certification. But Ms. Ingelsby's signature, along with the seal of the Division of Occupation and Professional Licensing, suffices as a certification.[5] The court therefore overrules Defendants' objection.

DATED July 12, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[5] Finally, Defendants argue that Rule 902(1) applies to proving the existence of a public record, not for proving the absence of a public record. But the Tenth Circuit has plainly applied Rule 803(10) to evidence authenticated under Rule 902. *See United States v. Rith*, 164 F.3d 1323, 1334 n.7 (10th Cir. 1999).