IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CYNTHIA STELLA and the ESTATE OF HEATHER MILLER,<br><br>       Plaintiffs,<br><br>v.<br><br>DAVIS COUNTY, SHERIFF TODD RICHARDSON, MAVIN ANDERSON, and JAMES ONDRICEK,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER RE OBJECTIONS TO JURY INSTRUCTIONS AND SPECIAL VERDICT FORM**<br><br>Case No. 1:18-cv-00002-JNP-DBP<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Dustin B. Pead |

The court issued proposed jury instructions and a proposed verdict form on July 7, 2022. *See* ECF No. 203. The court ordered the parties to promptly lodge any objections to its proposed instructions. Both parties submitted objections. *See* ECF Nos. 209, 210, 215. The court further discussed objections at the final pre-trial conference on July 12, 2022. *See* ECF No. 212. Taking into account the written briefing and discussions at the final pre-trial conference, the court rules as follows. The court also initiated some changes to the jury instructions sua sponte. Those changes are noted in the final section.

## I. DEFENDANTS' OBJECTIONS TO JURY INSTRUCTIONS

Defendants lodged twelve objections to the court's proposed jury instructions that the court addresses in the following categories: (1) permission to make additional objections; (2) omitted instructions; (3) life expectancy; (4) damages; (5) qualified immunity; (6) Final Instruction No. 27; and (7) Final Instruction No. 37.

### A.    Additional Objections

Defendants request that the parties be permitted to make final objections to resolve any last remaining issues before the court submits the instructions to the jury. The court's order required the parties to raise all objections to the court's *proposed* jury instructions. To the extent the evidence presented necessitates new or different instructions, the court will give leave to raise objections or propose new instructions.

### B.    Omitted Instructions

Defendants object to a number of purported omissions by the court. These include the supposed omission of a vicarious liability instruction, an instruction regarding the knowledge imputable to Anderson, an instruction regarding deliberate indifference in municipal liability, and an instruction regarding delay in medical care. But the court included language that either closely or exactly mirrored the language proposed by Defendants on each of these topics. The court merely relocated the content in an attempt to streamline the jury instructions. When the court reviewed the new location of each topic with defense counsel at the final pre-trial conference, defense counsel conceded that the relocated language was acceptable.

Defendants also object to the omission of an instruction on negligence. But in the court's prior motion in limine, the court said that "if Schultz does not offer any opinions related to negligence or medical malpractice (which Plaintiffs suggested at oral argument would be the case), any discussion of the negligence and medical malpractice standards by Defendants would be irrelevant and thus inadmissible." ECF No. 153 at 2. Nurse McQuillen echoed the same commitment to refrain from discussions of negligence or medical malpractice. ECF No. 208-1 at 5 ("Additionally, pursuant to the Court's Order addressing Plaintiff's Motion in Limine of [sic] finding that the 'discussion of negligence and medical malpractice are not relevant to resolving a

constitutional claim,' therefore, I will not address these concepts."). Accordingly, the court sees no reason to instruct on negligence unless it arises at trial.

Finally, Defendants object to removal of their proposed instruction number 26: "Section 1983 does not allow plaintiffs to create a federal case out of every violation of state law." ECF No. 124-1 at 60. Defendants also indicated that they wanted the instruction to include a reference to internal policy as well. At the final pre-trial conference, Plaintiffs agreed that the court could add this instruction, as long as the instruction also states that violations of state law or internal policy could be circumstantial evidence of a § 1983 claim. The court will add a paragraph to Final Instruction No. 25 implementing these changes.

### C.    *Life Expectancy*

Defendants object to the court's inclusion of Miller's life expectancy in Final Instruction No. 46 (now numbered Final Instruction No. 50) because the court previously ruled that, with regard to the loss of consortium claim, the life expectancy is that of Stella not Miller. However, Miller's life expectancy is still relevant to any recovery for lost wages or other damages that pertain solely to her. Accordingly, the court will leave Miller's life expectancy in the instructions and will also add Stella's life expectancy along with a clarifying instruction as to which life expectancy to consider for loss of consortium. Plaintiffs should alert the court as to Stella's life expectancy to be included in this instruction.

### D.    *Damages*

Defendants object to the court's decision to include punitive damages instructions because, in Defendants' view, there is no evidence of willful, malicious, knowing, reckless, or intentional conduct on the part of any Defendant. As the court noted at the final pre-trial conference, if Defendants still hold this view at the close of evidence, they may move for a

directed verdict on the question of punitive damages. Should Defendants make such a motion, the court will make a determination regarding punitive damages at that time.

Defendants also object to the court's economic damages instruction because Defendants claim that Miller was only ever employed as a prostitute, which Defendants believe should preclude Miller from seeking damages for loss of income. The court addressed this point in its order issued this week. *See* ECF No. 214 at 4 (quoting *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 727 (6th Cir. 2012) ("[A] plaintiff who is unemployed or otherwise earning below her potential at the time of injury, for example, can recover damages for lost earning capacity, as can an injured child, student, or homemaker.")).

Finally, Defendants requested an additional instruction on net accumulations. The court will add that instruction as Final Instruction No. 47.

### E.    *Qualified Immunity*

Defendants object to the court's decision to omit jury instructions on qualified immunity. This court previously held in its summary judgment order that "the question of whether Nurse Anderson was aware of the risk that Miller was seriously injured and needed to be monitored, but chose to ignore it, is hotly disputed." ECF No. 60 at 21-22. And the Tenth Circuit agreed that "Anderson's argument in his briefs is that the evidence did not suffice to establish his awareness of the need for greater attention to Ms. Miller—that is, the requisite state of his mind." ECF No. 79 at 7. In other words, the objective reasonableness of Anderson's conduct turns on the fact question of whether Anderson was aware of the risk to Miller and chose to disregard it.

The Tenth Circuit has held that where such a factual dispute exists, "the court could submit special interrogatories to the jury to establish the facts . . . then determine whether the defendant's conduct was objectively reasonable in light of the clearly established law." *Gonzales*

*v. Duran*, 590 F.3d 855, 859 (10th Cir. 2009). Alternatively, "the judge could define the clearly established law for the jury [and then] instruct the jury to determine what the defendant actually did and whether it was reasonable in light of the clearly established law defined by the judge." *Id.* The Tenth Circuit counsels that because "allowing the jury to decide qualified immunity almost always generates an issue on appeal . . . we think that the better approach is for the court to submit special interrogatories to the jury to establish the facts." *Id.* at 860.

Accordingly, the court will add two questions to the verdict form permitting the jury to make findings of fact on the aforementioned issues. However, because the court will make the ultimate determination regarding the objective reasonableness of Anderson's conduct for purposes of qualified immunity, it need not instruct the jury on the concept of qualified immunity.

### F.    Final Instruction No. 27

Defendants object to proposed Final Instruction No. 27 because it does not include the "irreplaceable" term "deliberate-indifference." Moreover, Defendants complain that while Final Instruction No. 27 captures some elements of deliberate indifference, it does not capture the whole concept.

The Tenth Circuit has recently outlined the deliberate indifference standard in the context of an inmate's serious medical need in detail:

> The contours of constitutional liability under the deliberate-indifference standard are familiar: there is both an objective and a subjective component. The focus of the objective component is the seriousness of the plaintiff's alleged harm, while the focus of the subjective component is the mental state of the defendant with respect to the risk of that harm. To satisfy the objective component, the plaintiff must produce evidence that the prisoner's medical need was sufficiently serious . . . The subjective prong requires a plaintiff to establish that a prison official had a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.

> Deliberate indifference means the official knows of and disregards an excessive risk to inmate health or safety.

*Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262-63 (10th Cir. 2022) (cleaned up and citations omitted). Although the court does not use the words "deliberate indifference," the court's proposed instruction covers all of the elements of deliberate indifference identified by the Tenth Circuit. Prong 1 covers the objective component of deliberate indifference – did Miller have a serious medical need? Prongs 2 and 3 cover the subjective portion of the deliberate indifference standard – was Anderson aware of a serious risk to Miller's health and safety and did he fail to take reasonable measures to address that risk? Accordingly, the court believes that the instructions are complete even absent the term deliberate indifference. However, the court is willing to introduce the term into the instruction since it merely reflects the concepts already covered in the instruction.

Prong 4 covers causation. It currently requires Plaintiffs to prove that "[a]s a result of Anderson's actions or inaction, Miller was harmed." Defendants request that the court change this element to read "Ms. Miller was injured <u>as a result of Nurse Anderson's deliberate indifference</u> to Ms. Miller's serious medical needs." ECF No. 209 at 8. The court is amenable to tying the causation element more closely to Anderson's alleged deliberate indifference. Accordingly, the court proposes to change the instruction to read: "Miller's estate must prove that as a result of Anderson's deliberate indifference to the serious risk to Miller's health and safety, Miller was harmed." The court also adjusted the instruction to be a separate paragraph within Final Instruction No. 27, instead of an element of the deliberate indifference inquiry.

### G.    *Final Instruction No. 37*

Finally, Defendants object to the exclusion of the joint proposed paragraph as part of Final Instruction No. 37. Specifically, Defendants ask the court to add a paragraph at the

beginning of Final Instruction No. 37 that reads "For a constitutional violation to be flagrant, Nurse Anderson, Sheriff Richardson, or Mr. Ondricek must have violated Ms. Miller's clearly established constitutional rights of which a reasonable person would have known."[1] ECF No. 209 at 11.

Because the parties largely agree on the inclusion of this paragraph, the court will return this paragraph to the jury instructions.

## II.   DEFENDANTS' OBJECTIONS TO VERDICT FORM

### A.   *Type of Verdict Form*

Defendants first object that the court's proposed verdict form is essentially a general verdict form rather than a special verdict form because it does not address all of the possible issues of fact related to the parties' respective claims and defenses that the jury must resolve. In essence, Defendants seem to be seeking special interrogatories on all of the fact issues underlying the claims and defenses. But "[t]he submission of special interrogatories lies within the discretion of the trial court and will not be reversed absent an abuse of discretion" *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1101 (10th Cir. 1991) (citation omitted); *see also United States v. Stegmeier*, 701 F.3d 574, 580 (8th Cir. 2012) ("The use of a special verdict form is reviewed for abuse of discretion."). And there is no abuse of discretion in denying requested special interrogatories where "the instructions given adequately guide[] the jury's deliberations." *Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471, 1483 (10th Cir. 1985). Because the court's jury instructions adequately cover the factual issues raised by Defendants, the court

---

[1] The court notes that Plaintiffs concurred with this instruction, except that Plaintiffs would have removed the words "clearly established." Based on the wording in *Jensen ex rel. Jensen v. Cunningham*, 250 P.3d 465, 482 (Utah 2011), the court includes the phrase "clearly established" in the instruction. *See id.* ("This element is not satisfied unless the conduct violates 'clearly established' constitutional rights 'of which a reasonable person would have known.'" (citations omitted)).

declines to expand the verdict form, but instead relies on the extensive jury instructions to guide the jury.

### B.    Punitive Damages

Defendants also object to the court's inclusion of punitive damages on the proposed verdict form, arguing that the issue of punitive damages should be bifurcated. But as Defendants conceded at oral argument, whether to bifurcate the issue of punitive damages or include punitive damages on the initial verdict form lies within the sound discretion of the court. And Defendants failed to identify any prejudice they might face from the inclusion of a punitive damages question on the verdict form. The court thus exercises its discretion to include punitive damages.

### C.    Claim Three

Finally, Defendants urge the court to remove Stella from claim three on the verdict form. They argue that Stella has not adequately alleged that she suffered a deprivation of her state constitutional rights. Plaintiffs counter that Defendants have known for a long time that the state constitutional claim was alleged against both Stella and Miller. And Plaintiffs argue that, while Stella has no independent claim against Defendants under the Utah Constitution, Utah law allows Stella to collect loss of consortium damages related to her daughter's wrongful death as a result of an alleged violation of the Utah Constitution.

The court has already addressed this argument in its prior order. *See* ECF No. 197 at 7-10. Moreover, the court has assiduously separated on the verdict form both the liability and damages on Miller's state claim from the liability and damages on Stella's state claim. Should Stella recover, and either this court or an appeals court later determines that Stella did not have a viable claim against Defendants, any damages awarded to Stella would be easily severable from any damages awarded to Miller.

### III.    PLAINTIFFS' OBJECTIONS TO JURY INSTRUCTIONS

Plaintiffs submit five objections to the jury instructions. They do not object to the verdict form. The court addresses the objections to the jury instructions as follows.

#### A.    Pretrial Detainees

Plaintiffs object to the sentence in Final Instruction No. 26 that states that "[p]retrial detainees are entitled to the same degree of protection against the denial of medical care as that afforded to convicted inmates." Plaintiffs worry that introducing the idea of convicted inmates and the level of care to which they are entitled could confuse the jury and/or prejudice them against Miller. The court agrees that the concept of convicted inmates and the level of care to which they are entitled is not relevant to Miller's claims. Accordingly, the court adopts Plaintiffs' proposed instruction: "The government has an obligation to provide medical care for those whom it is punishing by detention, including pretrial detainees (persons who have been charged with a crime but not convicted)."

#### B.    Delay in Care

Plaintiffs argue that the serious medical need instruction (originally at Final Instruction No. 27, prong 1) fails to encompass the serious medical need standard when dealing with delays in care. In *Redmond v. Crowther*, 882 F.3d 927, 939 (10th Cir. 2018), the Tenth Circuit held that "[a] delay in medical care is only sufficiently serious" for purposes of the objective component "if the plaintiff can show the delay resulted in substantial harm." Accordingly, the court adds the language from *Redmond* to the first prong of Final Instruction No. 27.

#### C.    Ruptured Spleen

Plaintiffs request a statement clarifying that Anderson did not need to know Miller was suffering from a ruptured spleen to satisfy the second prong of Final Instruction No. 27.

Specifically, Plaintiffs request that the court add the sentence "This does not require, however, that Nurse Anderson knew or suspected that Heather Miller was suffering from a ruptured spleen or from any specific medical condition." The court agrees that Plaintiffs need only prove that Anderson was aware of serious risk to Miller's health and safety, not that Anderson specifically knew that Miller ruptured her spleen. The court has slightly reworded the sentence suggested by Plaintiffs in the interest of clarity. The court will insert the following sentence into Final Instruction No. 29 (formerly prong 2 of Final Instruction No. 27): "This does not require that Anderson knew or strongly suspected that Miller was suffering from a ruptured spleen in particular, but rather that Anderson knew of or strongly suspected an excessive risk to Miller's health and safety."

### D.   Consciously Failed

Plaintiffs express concern that the phrase "consciously failed" in prong 3 of Final Instruction No. 27 suggests a requirement that Plaintiffs prove an intent to harm. Plaintiffs are correct that "[d]eliberate indifference does not require a finding of express intent to harm," but rather that "it is enough that the official acted or failed to act *despite his knowledge of a substantial risk* of serious harm." *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (citations omitted). In other words, the level of intent lies somewhere between "negligence at one end and purpose or knowledge at the other." *Id.* (citation omitted) The court adjusts the instruction accordingly, using the wording directly from *Mata*.

Plaintiffs also suggest a rewording of this prong to reduce confusion for the jury. The rewording does not materially alter the instruction. The court uses the proposed rewording as a guide in revising the instruction.

### E.      Failure to Train

Plaintiffs express concern that the wording of Final Instruction No. 31 suggests that failure to train is a required component of a municipal policy or custom. Accordingly, Plaintiffs request that the court change "includes" to "can also include" to indicate that it is one of several options. The court agrees that this clarifies the instruction and does not constitute a material change. Accordingly, the court makes the requested change.

## IV.   SUA SPONTE CHANGES

The court also initiated changes to Final Instruction No. 27 and several items on the verdict form after again reviewing the controlling caselaw.

First, the court removed the explanatory paragraphs from Final Instruction No. 27 and created individual instructions that address the elements of the claim against Anderson in more detail. *See* Final Instruction Nos. 28-30. The court also changed the language in elements 2 and 3 from "serious medical need" to "substantial risk of serious harm" or "serious risk to Miller's health and safety." This language more accurately reflects controlling caselaw. *See, e.g., Mata*, 427 F.3d at 752 ("[T]o meet the subjective prong of the deliberate indifference test, Ms. Mata was required to provide evidence supporting an inference that defendants knew about and disregarded a substantial risk of harm to her health and safety."); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("[W]e . . . hold that a prison official may be held liable . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

Second, the court added a paragraph to Final Instruction No. 29 (which reflects the language previously in prong 2 of Final Instruction No. 27) that accurately states Tenth Circuit caselaw regarding inferences of knowledge from circumstantial evidence and obviousness. *See*

*Mata*, 427 F.3d at 752 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." (quoting *Farmer*, 511 U.S. at 842)); *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("[I]f a risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it." (citation omitted)).

Third, the court added a paragraph to Final Instruction No. 30 (which reflects the language previously in prong 3 of Final Instruction No. 27) that provides additional guidance to the jury on inferences of conscious disregard. *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) ("If a prison doctor, for example, responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard.").

Fourth, the court rearranged the instruction regarding causation (formerly prong 4 of Final Instruction No. 27). The new placement accounts for the fact that "nominal damages are mandatory upon a finding of a constitutional violation." *Stoedter v. Gates*, 704 F. App'x 748, 757 (10th Cir. 2017) (unpublished); *see also Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1241-42 (10th Cir. 2010) ("[C]ourts often have declared that nominal damages are available in § 1983 cases when . . . . the plaintiff is unable to show actual injury.").

As to the verdict form, the court adjusted the language in the liability questions to tie the questions more closely to the claim. And the court separated the question of liability for Stella from the question of liability for Miller on the third claim. Previously, the verdict form had separated only the question of damages, not liability.

To the extent the parties object to the aforementioned revisions by the court, they may file objections by the close of business on Friday, July 14, 2022. The court will set aside time to discuss objections during the week of trial.

The court also made some grammatical changes in assorted instructions and adjusted the numbers in the internal references. Should the parties find erroneous internal references, they should alert the court.


DATED July 14, 2022.


BY THE COURT


Jill N. Parrish
United States District Court Judge