IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CYNTHIA STELLA, and the ESTATE OF HEATHER MILLER,<br><br><div align="center">Plaintiffs,</div><br>v.<br><br>DAVIS COUNTY, SHERIFF TODD RICHARDSON, MARVIN ANDERSON, JAMES ONDRICEK,<br><br><div align="center">Defendants.</div> | **MEMORANDUM DECISION AND ORDER DENYING DAVIS COUNTY'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL**<br><br>Case No. 1:18-cv-00002-JNP<br><br>District Judge Jill N. Parrish |

Before the court are a motion for judgment as a matter of law and a motion for new trial filed by Defendant Davis County. ECF No. 257. The County brings these motions pursuant to Fed. R. Civ. P. 50 and 59. For the reasons set forth below, the court DENIES both motions.

## BACKGROUND

On July 18, 2022, the court began a five-day jury trial on Cynthia Stella ("Stella") and the Estate of Heather Miller's ("Miller") allegation that Davis County and its co-defendants violated both the Utah and U.S. Constitutions by failing to provide Miller sufficient medical care while she was incarcerated in Davis County Jail and by failing to adopt nursing protocols that would have prevented Miller's death. At the close of Plaintiffs' case in chief, Defendants moved for judgement as a matter of law under Fed. R. Civ. P. 50(a). In their motion, Defendants requested that the court dismiss both Plaintiffs' claim for punitive damages and Stella's claim for relief under the Utah State Constitution. The court deferred ruling on these issues until after the jury returned its verdict, as permitted by Fed. R. Civ. P. 50(b).

On July 22, 2022, the jury returned a verdict finding Defendants Marvin Anderson ("Anderson") and Davis County liable for violating Miller's rights under the Eighth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983") and Davis County liable for violating Miller's rights under Article I, Section 9 of the Utah Constitution. ECF No. 236. The verdict awarded $8 million to Heather Miller's Estate and $2 million to Stella.

On August 1, 2022, the court ruled on Defendants' Rule 50(a) motion. ECF No. 239. The decision declined to address Plaintiffs' eligibility for punitive damages because the jury had not awarded Stella or Miller's Estate this category of damages, *Id*. at 2, but it granted Defendants' request for judgment as a matter of law on Stella's claim under the Utah Constitution "because Stella suffered no distinct injury as a result of the government's actions." *Id*. The result of the court's decision was to reduce the jury's $10 million award to an $8 million award.

Pursuant to the jury's verdict and the subsequent judgment as a matter of law, on September 27, 2022, the court entered final judgment in favor of Miller's Estate against Marvin Anderson in the amount of $300,000 and against Davis County in the amount of $7.7 million. ECF No. 252. On October 21, 2022, Davis County filed the post-trial motions at issue in this memorandum decision. ECF No. 257.

## ANALYSIS

## I.    MOTION FOR JUDGMENT AS A MATTER OF LAW

Davis County asks the court to alter its judgment pursuant to Rule 59(e). Rule 59(e) permits a party to file a motion to alter or amend a judgment within twenty-eight days after judgment is filed. "A Rule 59(e) motion to alter or amend the judgment should be granted only 'to correct manifest errors of law or to present newly discovered evidence.'" *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997); *see also Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) ("Rule 59(e) motions may be granted when 'the court has misapprehended the facts, a

party's position, or the controlling law.'"). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Nelson*, 921 F.3d at 929.

The County's Rule 59(e) motion presents four challenges to the judgment delivered post-trial: (a) whether the existence of a § 1983 remedy bars recovery under the Utah Constitution; (b) whether the lack of a finding of individual liability under the Utah Constitution bars municipal liability under the Utah Constitution; (c) whether the court lacks subject matter jurisdiction over the Miller Estate's state constitutional claims because of the Utah Governmental Immunity Act ("UGIA"); and (d) whether there is sufficient evidence to support Davis County's liability. The court analyzes each question below.

## A. DOES AN EXISTING REMEDY BAR STATE CONSTITUTIONAL RECOVERY?

The jury found that Davis County violated Miller's rights under the unnecessary rigor provision of the Utah Constitution and awarded Miller's Estate $3.85 million in compensatory damages for this injury. ECF No. 236. It also found that Davis County violated Miller's rights under the federal Constitution and awarded the Estate $3.85 million for this injury. The County now argues that Miller's Estate cannot maintain its state constitutional claim because the state claim's second element requires that "a plaintiff must establish that existing remedies do not redress his or her injuries." *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cty. Sch. Dist.*, 16 P.3d 533, 538 (Utah 2000). According to the County, the Estate's award for their § 1983 claim qualifies as an existing remedy that could have redressed its state constitutional injury. The court disagrees and declines to reduce the Estate's damages by $3.85 million based on this reasoning.

As an initial matter, the court must decide whether the County argues for judgment as a matter of law on legal or factual grounds in order to determine whether it may properly take up

this issue on a Rule 59(e) motion. If the County purely disputes the legal basis for judgment, the court may not engage in review of its argument because the County waived its right to a challenge on this ground by failing to raise its objection prior to the entry of judgment.[1] *Nelson*, 921 F.3d at 929. If the County is pursuing a factual challenge, the court may engage in review of Defendants' argument because an objection based on factual sufficiency only became available after the parties presented evidence at trial and it could not "have been raised in prior briefing."[2] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

At hearing, the County seemed to vacillate between asserting that its argument was a legal challenge and a factual challenge. Defendant's written briefing was no clearer about the basis for its objection. In the end, though, the court finds that the County advanced its objection on factual

---

[1] The county claims that it did not fail to make an objection based on the "existing remedy" element because it submitted a special verdict form that would have avoided a double recovery. *See* ECF No. 125-4 at 8 (question 22). The court disagrees. Defendant never explained to the court that it should adopt this question to avoid double recovery. Moreover, this question, which asked the jury to jointly award state and federal constitutional damages instead of calculating them separately, would not have solved the "existing remedies" issue because the jury would still have been able to find Defendant liable for both state and federal claims by checking those boxes on the verdict form. The County could have appropriately objected on legal grounds, for example, by requesting a jury instruction explaining that § 1983 provided an adequate existing remedy or by arguing the issue at summary judgment.

[2] Plaintiffs argue that Defendant waived its factual argument by failing to object to inconsistencies in the verdict while the jury remained present and available to resolve discrepancies. *See Resol. Tr. Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993) ("[F]ailure to object to general jury verdicts on the ground of inconsistency before the jury is discharged constitutes waiver."). The County replies that it was under no obligation to object to the verdict at this time because the jury returned its verdict using a special verdict form. *Thompson v. State Farm Fire & Casualty* Co., 34 F.3d 932, 944 (10th Cir. 1994) ("[W]hen the verdicts are special verdicts a party is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court."). Rather than take up the contested issue of whether the jury form was special or general in order to decide whether Defendant waived its right to dispute the verdict, the court assumes that the verdict form was special, that Defendant did not waive its ability to object, and addresses the substance of Defendant's motion to reconsider. Since the court ultimately agrees with Plaintiff on the substantive merits of Defendant's motion for judgment as a matter of law, the court need not decide the verdict form issue in order to resolve this motion.

4

grounds. In other words, the court believes that Defendant attempts to argue that the *jury* was incorrect to find that the County was both liable under § 1983 and that Plaintiffs met the requirements of the "existing remedy" element of the Utah constitutional claim.

The key language in Defendant's briefing that compels the court to this conclusion is the County's analysis of *Ostler v. Harris*, No. 2:18-CV-00254, 2019 WL 2409633 (D. Utah June 7, 2019), and *Asay v. Daggett Cty.*, No. 2:18-CV-00422, 2019 WL 181358 (D. Utah Jan. 11, 2019). In order to show that it could not object to the court's jury instructions and verdict form at an earlier point in proceedings and that it had not waived its "existing remedy" defense, the County explains that *Ostler* and *Asay* held that factual findings are necessary to allow a court to determine whether a § 1983 award serves as an adequate existing remedy for a state constitutional claim. *See Ostler*, 2019 WL 2409633, at * 4 ("Because the case is only at the motion-to-dismiss stage, paring the Utah constitutional claims at this stage would be premature."); *Asay*, 2019 WL 181358, at *7 ("If, after discovery, it is determined that Asay's § 1983 claims adequately redress his injuries then the unnecessary rigor claim will be dismissed at that time."). According to Defendant, pursuant to these holdings, courts can only decide whether to dismiss a state constitutional claim on "existing remedy" grounds *after* a jury returns a verdict or once there are factual findings. This is a clear indication that *facts* are at issue in Defendant's motion rather than *law*. It reveals that the foundation of Defendant's complaint is that the jury decided to render an inconsistent verdict by finding that Plaintiff fulfilled the "existing remedy" element and that the court should correct this error in fact finding. The court therefore finds that Defendant's objection is factual. Thus, it

proceeds to analyze whether the jury could properly find that the Plaintiffs met their burden to prove that adequate existing remedies were not available for their state constitutional claim.[3]

Courts in the District of Utah routinely conclude that "where a plaintiff's federal remedies fully redress [a] state constitutional violation, the state constitutional claim[] should be dismissed. *McCubbin v. Weber Cty.*, No. 1:15-CV-132, 2017 WL 3394593, at *23 (D. Utah Aug. 7, 2017) (collecting cases from the District of Utah to show a trend). "The Utah Supreme Court established this requirement to 'ensure that courts use their common law remedial power cautiously and in favor of existing remedies.'" *Spackman*, 16 P.3d at 538. But whether § 1983, in particular, provides a complete federal remedy for a state constitutional claim "remains an 'open question in Utah.'" *McCubbin*, 2017 WL 3394593, at *23 (quoting *P.J. ex rel. Jensen v. Utah*, No. 2:05-CV-00739-PGC, 2006 WL 1702585, at *14 (D. Utah June 16, 2006).

"At the most fundamental level, the standards for state and federal constitutional claims are different because they are based on different constitutional language and different interpretive case law." *Jensen ex rel. Jensen v. Cunningham*, 250 P.3d 465, 477 (Utah 2011). This creates scenarios where the constitutional remedies provided by § 1983 may not neatly overlap with those available under the Utah Constitution. In practice, courts in the District of Utah have recognized the differences between remedies available under the state and federal constitutions. In *Asay*, for example, a district court refused to grant a motion to dismiss a state constitutional claim that may have overlapped with a federal constitutional claim because factual issues could arise that might enable a jury to find the defendant liable under the Utah Constitution but not the Federal Constitution. 2019 WL 181358, at *7. Still, when deciding whether a state constitutional remedy

---

[3] The court bypasses any argument that it should have instructed the jury differently because this is an issue of law that Defendant waived by failing to object earlier during proceedings.

is unavailable under § 1983, the court must remember that "the crucial issue is not whether the two constitutions have 'different contours,' but whether existing remedies redress the plaintiffs' injuries." *McCubbin*, at *23 (citing *Cavanaugh v. Woods Cross City*, No. 1:08-cv-32-TC-BCW, 2009 WL 4981591, at *6 n.8 (D. Utah Dec. 14, 2009) (unpublished), *aff'd*, 625 F.3d 661 (10th Cir. 2010). In other words, differences between the Utah and federal Constitutions do not necessarily mean that the remedies available to a given plaintiff are different under each cause of action.

Plaintiffs brought their state constitutional claim under Article I, § 9 of the Utah Constitution. This provision states in part that "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor." Although the clause "closely approximates the language of the Eighth Amendment," the Utah Supreme Court has held that it has no federal counterpart. *Dexter v. Bosko*, 184 P.3d 592, 595 (Utah 2008). While there have been "few opportunities to interpret or apply the unnecessary rigor clause," there is no doubt that it goes beyond the Eighth Amendment to the U.S. Constitution by protecting prisoners "against unnecessary abuse . . . that is 'needlessly harsh, degrading or dehumanizing.'" *Id*. (quoting *Bott v. Deland*, 922 P.2d 732, 737 (Utah 1996)). Indeed, in *Dexter* the Utah Supreme Court clarified that "[t]he restriction on unnecessary rigor is focused on the circumstances and nature of the process and conditions of confinement. By contrast, the cruel and unusual punishment clause in the state constitution is directed to the sentence imposed." *Id*. One concrete example of the consequences of this difference is that "[t]orture may be cruel and unusual but strict silence during given hours may not. Strict silence, however, may impose unnecessary rigor or unduly harsh restrictions on the service of one's otherwise proper sentence." *Id*.

Though the differences between the right to be free from unnecessary rigor and the right to be free from cruel and unusual punishment are not crystal clear, the court must accept that the jury

concluded that Miller's "unnecessary rigor" injury was not adequately compensated under § 1983 and the Eighth Amendment. Before sending the jury to deliberate on its verdict, the court informed its members that for Miller's Estate to prevail on an unnecessary rigor claim it was required to meet three elements, including "that existing remedies do not redress Plaintiffs' injuries." ECF No. 243 at 41. The jury was also instructed that double recovery for a single injury was prohibited and that "each item of damages may be awarded only once, regardless of the number of claims alleged." *Id*. at 47. Additionally, the court's verdict form reinforced the notion that "if Miller suffered the same injury or injuries for both claims, she may only collect damages for each injury once." ECF No. 236 at 9. Indeed, when the jury filled out the verdict form, the jurors were required to confirm, in response to question 12, that the damages they awarded under Miller's state claim did not compensate the same constitutional injury as her § 1983 claim. *Id*. If the jury followed these instructions, it must have concluded that Miller suffered one constitutional injury that was redressable only under the Utah Constitution and a separate constitutional injury that was redressable under both the U.S. and Utah Constitutions. This is entirely possible since the "unnecessary rigor" clause of the Utah Constitution is more expansive than the U.S. Constitution's ban on cruel and unusual punishment. *See Dexter*, 184 P.3d at 595. Defendants argue that the jury may not have understood its instructions, or that it may have simply ignored them, but to adopt this assumption would be to go beyond the proper role of the court on a Rule 59(e) motion. Indeed, courts have an obligation to "reconcile the jury's findings, by exegesis if necessary, . . . before [they] are free to disregard the jury." *Johnson v. Ablt Trucking Co., Inc.*, 412 F.3d 1138, 1143 (10th Cir. 2005); *see also Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special

interrogatories consistent, they must be resolved that way"). Such a reconciliation of the jury's factual findings is possible here.

In brief, because some difference exists between the scope of the remedies available under the Utah Constitution and those available under the U.S. Constitution, the court must presume that the jury found that $3.85 million of its award to Miller's Estate remedied a state claim with no other available remedy. As a result, the court rejects Defendant's factual objection and allows the jury's verdict to stand.

### B. DOES LACK OF INDIVIDUAL LIABILITY BAR MUNICIPAL LIABILITY UNDER THE UTAH CONSTITUTION?

Davis County argues that it is not liable to Miller's Estate under the Utah Constitution because a court may not hold a municipality "liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002). Here, the jury did not find any individual state officer liable for denying Miller her state constitutional rights. Thus, the County contends that Miller's state claim must be dismissed as a matter of law. The court declines to do so.

The Utah Supreme Court directs trial courts to adopt the § 1983 standard when determining municipal liability under the Utah Constitution. *Kuchcinski v. Box Elder Cty.*, 450 P.3d 1056, 1067 (Utah 2019). This standard requires plaintiffs to "plead and prove against the municipality that municipal actors committed a flagrant violation against the plaintiff," but it does not require plaintiffs to "identify a specific municipal employee in order to demonstrate that a flagrant violation of his or her constitutional rights occurred." *Id.* at 1064. When a plaintiff does not name a specific municipal employee as responsible for a deprivation of rights, she may establish municipal liability by proving "that a deliberately indifferent County policy caused the violation." *Id.* at 1072.

9

Here, the jury was instructed that they had to find that a deliberately indifferent policy caused Miller's injury in order to hold Davis County liable for a state constitutional violation. ECF No. 243 at 66. After receiving this instruction, the jury returned a verdict against Davis County on the Estate's state law claim. ECF No. 236 at 7. The jury is entitled to a presumption that they understood the court's instructions unless there is compelling evidence otherwise. *See Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1306 (10th Cir. 2003). No such evidence has been presented by the County. Thus, the court presumes that the jury found that a deliberately indifferent county policy caused a violation of Miller's constitutional rights and it declines to dismiss the Miller Estate's state constitutional claim as a matter of law.

### C. DOES THE COURT LACK SUBJECT MATTER JURISDICTION OVER THE MILLER ESTATE'S STATE CONSTITUTIONAL CLAIMS?

Davis County contends that this court lacks jurisdiction over the Miller Estate's state claim because the Estate failed to file a notice of claim within one year of Miller's death as required by the UGIA.[4] *See* Utah Code Ann. § 63–30–13. While it is true that the Estate did not file a notice of claim, the County's "argument is without merit and requires little analysis because the [UGIA] does not apply to claims alleging state constitutional violations." *Jensen ex rel. Jensen v. Cunningham*, 250 P.3d at 479.

To argue that the UGIA applies to state constitutional claims, Davis County relies on an unpublished Tenth Circuit case. *See Jensen v. Reeves*, 3 F. App'x 905 (10th Cir. 2001). In *Jensen v. Reeves*, the court noted that the state legislature "could impose rules and regulations regarding remedies for constitutional violations, as long as those rules do not unreasonably impair the

---

[4] Under the UGIA, "all claims against a political subdivision and its employees are barred unless a notice of claim is filed with the appropriate entity within one year after the claim against that entity or its employees arises." *Jensen v. Reeves*, 3 F. App'x 905, 911 (10th Cir. 2001) (citing Utah Code Ann. § 63–30–13).

constitutional right at issue." *Id*. at 912. Defendants therefore assert that the UGIA's procedural limitations apply to constitutional claims even if the statute does not substantively prevent plaintiffs from bringing constitutional claims. But the Tenth Circuit decided *Jensen v. Reeves* before the Utah Supreme Court took up the issue in *Jensen ex rel. Jensen v. Cunningham*. 250 P.3d at 479. There, the Court clarified that the UGIA simply does not apply to constitutional claims in any way. *Id*. Only the Utah Supreme Court's determination on this issue is binding authority. *See Sterling v. Constantin*, 287 U.S. 378, 396 (1932) (state courts have the "final word" on interpretations of state law and state constitutions). Indeed, the Tenth Circuit quickly recognized that its decision in *Jensen v. Reeves* had been superseded by the Utah Supreme Court in *Tiscareno v. Anderson*, 421 F. App'x 842 (10th Cir. 2011). There, the Circuit explicitly acknowledged that a "[plaintiff's] state law claim, alleging a violation of the Utah Constitution, is not barred by her failure to file a notice of claim." *Id*. at 843.

There is no doubt that this court retains jurisdiction over the Estate's state constitutional claims even though no notice of claim was ever filed.

### D.  IS FEDERAL AND STATE CONSTITUTIONAL LIABILITY UNSUPPORTED BY THE EVIDENCE?

Davis County argues that the court should dismiss each of the Miller Estate's successful claims as a matter of law because the verdict delivered by the jury was not supported by the evidence presented at trial. Specifically, the County contends that there was insufficient evidence for the jury to conclude that it acted with "deliberate indifference" because it did not have actual or constructive notice that a lack of training or medical protocols was substantially certain to result in a violation of Miler's rights.[5] *See Kuchcinski v. Box Elder Cty.*, 450 P.3d 1056, 1066 (Utah

---

[5] The Estate's state and federal constitutional claims both required a showing of deliberate indifference to establish municipal liability. *See* ECF No. 243 at 60, 66.

2019) (explaining that plaintiffs must "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."); *see also Schneider v. City of Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (explaining that "the Supreme Court require[s] a plaintiff to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."). Defendant asserts that the evidence presented at trial was insufficient because undisputed testimony from Anderson, Todd Richardson ("Richardson"), and Dr. Kennon Tubbs ("Dr. Tubbs") established that the County could not have been on notice that a short fall from a bunk bed would result in a spleen rupture since this specific type of injury is incredibly rare in such circumstances. *See* Anderson Tr. 171:22-24; Richardson Tr. 253:19-54:5; Tubbs Tr. 558:8-59:22. The court disagrees.

Plaintiffs produced more than sufficient evidence to show that the County was on notice that a lack of training or medical protocols was substantially certain to result in a constitutional injury. As an initial matter, the likelihood that an inmate would suffer the *specific injury Miller suffered* is beside the point. To prevail on its constitutional claims, Miller's Estate merely needed to offer evidence that the County knew it was providing a level of care that was "substantially certain to result in a constitutional violation, and it consciously or deliberately [chose] to disregard the risk of harm." *Kuchcinski*, 450 P.3d at 1068. Plaintiffs offered ample evidence to meet this burden. They elicited testimony from Richardson that the County had a policy that required the jail to create and adopt nursing protocols, Richardson Tr. 229:2-9, and that Richardson had followed this policy until 2012, at which point he abandoned the existing protocols and did not adopt any replacement, Richardson Tr. 229:10-15. Moreover, Richardson admitted that without nursing protocols in place, a jail runs a substantial risk that its nursing staff may miss essential steps in the provision of care. Richardson Tr. 245:23-46:17; 257:14-58:25.

12

Plaintiffs also elicited crucial testimony from an expert on the management of jails, Todd Vinger ("Vinger"). Vinger testified that "it's an essential function to have policies and procedures" and that having protocols is "the first step you must take in order to have a medical unit." Vinger Tr. 521:22-22:22. Vinger went on to explain that operating a jail without nursing protocols is "dangerous," "risky," and makes it "highly likely that mistakes can be made." Vinger Tr. 525:6-26:25. The jury could have reasonably relied on this evidence to find that when the County refused to adopt nursing protocols it understood that this decision was substantially certain to result in unconstitutionally deficient care for an inmate. Thus, the court holds that the Miller Estate's federal and state constitutional claims are supported by sufficient evidence.

## II.     MOTION FOR NEW TRIAL

Under Rule 59(a), "[t]he court may, on motion, grant a new trial . . . after a jury trial." The Rule permits courts to grant new trials in instances where a losing party has claimed "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving," and where these errors "may raise questions of law." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). When considering a motion for a new trial based on insufficiency of evidence, all evidence must be viewed in the light most favorable to the prevailing party. *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006). Because such a motion "involves a review of the facts presented at trial," district court rulings are reviewed under the abuse of discretion standard. *Id*. at 1157.

Courts generally will not grant Rule 59(a) motions on issues that are sprung upon it only after judgment. They adhere to the principle that "a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice will result." *Cyprus Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*, 638 F. App'x 751, 754 n.1 (10th Cir. 2016) (quoting *United States v. Walton*, 909 F.2d 915, 924 (6th Cir. 1990)). Thus,

"a party must lay the necessary predicate to a motion for new trial during the trial." *Guidance Endodontics, LLC*, 749 F. Supp. 2d 1235, 1256 (D.N.M. Oct. 14, 2010).

Davis County's motion for new trial presents four challenges to the judgment delivered post-trial. It argues: (a) that the jury was prejudiced by the court's alleged decision to allow Stella to perjure herself on the stand; (b) that the size of the verdict in this case is not supported by the evidence; (c) that the court mishandled the admissibility of evidence regarding Miller's lost income and that such evidence is insufficient for a compensatory award of lost income; and (d) that the inclusion of Stella's state constitutional claim on the verdict form prejudiced the jury. The court analyzes each issue in turn.

## A. DID THE COURT PREJUDICE THE JURY BY SUBORNING PERJURY?

Davis County argues that a new trial is warranted because the court did not allow it to impeach Stella using her interview with the Attorney General's office. Specifically, Defendant contends it was prejudiced because the jury was not allowed to hear Stella's admissions that Miller was involved in the solicitation of prostitution in Reno and that she knew Miller used methamphetamine. According to the County, this evidence would have shown that Stella perjured herself at trial by testifying that Miller solely wished to move out of Reno to take an IT job, that her home was unconditionally open to Miller upon her return to Utah, and that she was unaware of Miller's methamphetamine use until after Miller's death. The court declines to grant a new trial based upon this complaint.

Before trial, the court issued an order on several motions in limine regarding Defendants' attempts to introduce evidence of Miller's drug use and solicitation of prostitution. ECF No. 152. In its order, the court ruled that it would exclude all evidence of Miller's involvement in prostitution under Federal Rule of Evidence 403 because the prejudicial effect of this evidence substantially outweighed its probative value. *Id*. at 6. Conversely, the court ruled that it would

allow evidence of Miller's drug use under Rule 403 because its prejudicial effect did not substantially outweigh its probative value. Still, while the court permitted Defendants to introduce Miller's drug history, it explained that it would "not tolerate defense counsel engaging in character assassination via evidence of Miller's drug abuse." *Id.* at 7. To that end, the court barred the introduction of cumulative evidence related to methamphetamine. *Id.* at 8.

At trial, Defendants pushed the boundaries of the court's order. Initially the court granted defense counsel significant latitude to cross-examine Stella about her relationship with Miller. Counsel used this leeway to ask Stella why Miller had moved back to Utah after living in Reno. Stella answered by explaining that her daughter had returned to Utah to search for an IT job and because "[s]he didn't like where her life was heading." Stella Tr. 308:20. Stella also admitted that Miller "didn't like the people that she was affiliated with at the time anymore. She was finding out that her friends weren't as good of friends as they could have been." Stella Tr. 308:22-24. These answers were apparently not enough for defense counsel. They repeatedly pushed for more details pertaining to why Miller did not like the people she was affiliated with and why "[h]er life had gone into the tanks. . . ." Stella Tr. 308:19. The court interrupted this cross-examination once it became clear that counsel was attempting to elicit testimony about Miller's solicitation of prostitution and cumulative evidence regarding her drug use in violation of the aforementioned evidentiary order. Court Tr. 309:24-25.

After the court informed defense counsel that they needed to move to their next set of inquiries, counsel again attempted to present evidence of Miller's prostitution and cumulative evidence of her methamphetamine use via a new line of questions. Specifically, Defendants sought to introduce these facts by impeaching Stella's prior testimony at trial using her interview with the Attorney General's office. Defense counsel began by asking Stella why she had previously

testified that she did not know Miller had regularly used methamphetamine when during her interview with the Attorney General's office she had stated that she understood methamphetamine was Miller's "drug of choice." Trentadue Tr. 313:6-7. In response, Stella attempted to explain that she did not remember using those words to describe Miller's drug use. Stella Tr. 313:8-11. At this point, defense counsel asked the court for permission to use the transcript from the Attorney General's office interview to refresh Stella's memory of her past statements and the court allowed it. Court Tr. 313:17-21. After refreshing Stella's memory, counsel asked, once more, whether she had stated that methamphetamine was Miller's drug of choice. Trentadue Tr. 314:12-15. Stella replied that she told the Attorney General's office that "if [Miller] did drugs, that would be the choice." Stella Tr. 314:16. After this answer, defense counsel moved to their next line of questioning without prompting. The court never prevented defense counsel from introducing additional evidence of Miller's methamphetamine use during this portion of Stella's cross-examination.

Defense counsel next attempted to question Stella about her statements to the Attorney General's office regarding Miller's reasons for leaving Reno. Counsel claimed that their goal with this line of questioning was to impeach Stella's testimony at trial (that Miller left Reno to find an IT job) with her testimony to the Attorney General (that Miller left to escape prostitution) in order to undermine her credibility as a witness. The court immediately shut down cross-examination on this topic after Plaintiffs objected that the Defendants were merely attempting to introduce prejudicial evidence of Miller's involvement in prostitution. Court Tr. 323:1. In sustaining this objection, the court noted that defense counsel was treading into territory clearly disallowed by its evidentiary order. Court Tr. 322:8-13; *see* ECF No. 152. In response, Defense counsel argued that cross-examination on Miller's departure from Reno was necessary because Stella had perjured

herself by solely attributing Miller's move to her desire to find a job in IT and by failing to explain that prostitution had played a role in her decision. Trentadue Tr. 318:8-17. Defense counsel also maintained that Stella had perjured herself when she testified that her home was always open to Miller when, in fact, her home was only open to Miller on the condition that Miller ended her involvement in prostitution. Trentadue Tr. 320:11-17. The court was unconvinced by both of defense counsel's arguments. It pointed out that, at trial, Stella had actually testified that Miller left Reno to look for an IT job *and* to escape bad influences. Court Tr. 319:7-16; *see also* Stella Tr. 308:22-24. While Stella's testimony did not include the detail that Miller was involved in prostitution, her testimony did not qualify as perjury because prostitution was included in the "bad influences" that Miller was attempting to escape. Court Tr. 319:7-16. The court also explained that the fact Stella had placed a single condition on her daughter's ability to live with her was not dispositive of whether Stella cared for Miller. Court Tr. 322:19-23.[6] The court reasoned that the conditions Stella placed on Miller's ability to live in her home, thus, had little probative value and was outweighed by the prejudicial effect of any mention of prostitution. Though the court did not believe that Stella had committed perjury or that it needed to allow testimony pertaining to Miller's involvement in prostitution, it still permitted Defendants to make a record of its charge for appellate purposes by questioning Stella outside of the presence of the jury. Court Tr. 320:4-10. Defendants chose not to question Stella further on her statements to the Attorney General's office, but, with the court's permission, it did lodge the transcript of Stella's interview on the docket. Trentadue Tr. 321:16-17; Court Tr. 322:5-8.

---

[6] "Well, I think, Mr. Trentadue, parents oftentimes have children who engage in activities of which they do not approve. I don't think that that means that they no longer have a loving relationship or that they care about their children." Court Tr. 322:19-23.

In sum, defense counsel attempted to introduce evidence of Miller's solicitation of prostitution and methamphetamine use. The court refused to allow the jury to hear evidence pertaining to prostitution because defense counsel's introduction of such evidence violated prior evidentiary orders. The court never prevented defense counsel from introducing evidence of Miller's methamphetamine use during the portion of Stella's cross-examination related to the Attorney General's investigation. The court stands behind both its evidentiary order and its decisions at trial for the reasons explained above. Therefore, a new trial is not warranted.

**B.   DID THE JURY RETURN A VERDICT WITH DOUBLE OR EXCESSIVE DAMAGES?**

The County requests a new trial on grounds that the jury's $7.7 million verdict against it is impermissibly duplicative. Defendant's theory is that the jury awarded double recovery by dispersing separate $3.85 million awards for the Estate's state and federal constitutional claims even though both of these claims arise out of a single harm. The court declines to order a new trial for this reason.

"Damages are to be apportioned between causes of action only if 'there are distinct harms' or a 'reasonable basis' exists for 'determining the contribution of each cause to a single harm.'" *Osterhout v. Bd. of Cty. Commissioners of LeFlore Cty., Oklahoma*, 10 F.4th 978, 994 (10th Cir. 2021). "Where a single injury gives rise to more than one claim for relief, a plaintiff may recover his damages under any claim, but he may recover them only once." *Id*. at 995. If a jury awards duplicate damages, "the court, either *sua sponte* or on motion of a party, should reduce the judgment by the amount of the duplication." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1235 (10th Cir. 2000).

Here, the County alleges that the Estate's constitutional claims both impermissibly relate to a single harm, the death of Miller. This is not so. "When a jury is instructed not to award duplicative damages and it returns a total damage figure within the range of evidence, [courts are

unwilling to disturb or second guess the jury's verdict." *N. Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1113 (10th Cir. 2009). The jury in the present case was instructed not to award duplicative damages in Jury Instruction No. 44.[7] ECF No. 243 at 70. This alone is enough for the court to give the jury the benefit of the doubt and accept its damages amount (so long as the award is not excessive). But even if the existence of this jury instruction was insufficient, there is another strong signal that the jury's award was not duplicative. Question 12 of the verdict form instructed that "[i]n calculating the total amount of damages, [the jury should] not include the same damages twice. That is, if Miller suffered the same injury or injuries for both claims, she may only collect damages for each injury once." ECF No. 236 at 9. Even with this warning, the jury awarded Miller's Estate $7.7 million. The court cannot assume that the jury ignored its verdict form. *N. Am. Specialty Ins. Co.*, 579 F.3d at 1113. Instead, it reads the verdict in a light most favorable to sustaining liability and finds that jury concluded each constitutional claim warranted a $3.85 million award for a distinct harm.

In the alternative, the County contends that a new trial is warranted because the jury's $7.7 million verdict is excessive. For the court to order a new trial due to an excessive verdict, a defendant must meet the "heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence." *Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998). With the exception of an award that is "so excessive as to shock the judicial conscience . . . the jury's determination of the fact is considered inviolate." *Id.*

The court was not shocked by the size of the damage awards to Miller's Estate. To show that the size of the jury's verdict was reasonable, the Estate cites several cases involving deaths

---

[7] The text of the jury instruction is as follows: "Double Recovery Prohibited: Plaintiffs seek compensatory damages from Anderson and Davis County under more than one claim. However, each item of damages may be awarded only once, regardless of the number of claims alleged."

caused by governments resulting in similar awards. *See Burke v. State of Okla.*, No. CJ2003-6690-NIGHTING, 2007 WL 942709 (Okl. Dist. Jan. 19, 2007) (awarding roughly $20 million for a child's death); *Higgins v. City of Albuquerque*, JVR No. 1306040011, 2013 WL 2405348 (N.M. Dist. Mar. 15, 2013) (Awarding $7,642,560 in compensatory damages for a fatal police shooting);[8] *Browder v. City of Albuquerque*, 2017 WL 11614685 (N.M. Dist. Apr. 10, 2017) (awarding $8.5 million for the death of one child and injury of another in a car crash involving a police officer).[9] Additionally, the court notes that Judge Jenkins recently awarded similar damages in wrongful death bench trial in this district. *See Michaud v. United States*, JVR No. 2302160011, 2023 WL 2042224 (D. Utah Jan. 27, 2023) (awarding $10.55 million in compensatory damages, the vast majority of which was non-economic, under the FTCA). These cases illustrate that the jury's award was not outrageously out of step with damages awarded in similar cases.[10]

Ultimately, given the evidence presented and the damages suffered, the award in this litigation does not shock the conscience and a new trial is not warranted.

### C. DID THE JURY IMPROPERLY CALCULATE LOST INCOME?

Davis County argues for a new trial because the jury allegedly computed lost income damages improperly. According to the County, several of the court's evidentiary decisions at trial

---

[8] Defendants note that the damages in *Higgins* included punitive damages. While this is true, compensatory damages still totaled $7,642,560.

[9] Defendant claims that *Browder* was an exceptional case because it involved the torture of a child. The court sees no evidence that this was the case. Defendant also notes that this case was unrepresentative of a normal verdict because it was settled. But the court generally expects settled cases to involve lower damages than a case resolved by a jury verdict.

[10] Indeed, the court was more shocked by defense counsel's argumentation during the hearing on this motion. The court asked how much defense counsel believed Miller's life was worth. Counsel replied that it was worth somewhere in the ballpark of $500,000 because an incarcerated individual's life is worth less than that of a free individual. The court strongly disagrees with this analysis. The worth of a person's life is *not* dictated by their lowest moments.

led to the jury's erroneous calculations. The court examines each of these alleged evidentiary missteps in turn.

First, Davis County requests a new trial on grounds that the court incorrectly and prejudicially allowed Miller's Estate to present a claim for lost income even though it produced no evidence showing that Miller was likely to find long-term employment. This is not so. Stella testified that Miller was capable of work and that her employment history included providing IT support to her family business. Stella Tr. 306:7-25. While this is admittedly weak evidence in support of Miller's employment prospects, it is enough to satisfy the low burden required to survive a Rule 59(a) motion. *See Escue*, 450 F.3d at 1156 ("We make all reasonable inferences in favor of the non-moving party.").[11] In brief, there is sufficient evidence for a jury to find that Stella would have found long-term employment if not for her death.

Second, the County contends that a new trial is warranted because the court prejudicially prohibited Defendants' loss of income expert, accountant Richard Hoffman ("Hoffman"), from testifying about the effect of drug use and poor mental health on Miller's earning capacity. The court previously decided that while Hoffman was qualified to opine as an expert on the discount rate for future wages and Miller's personal consumption amount, it would not allow him to testify as to Miller's mental health and drug use because he was not a mental health or drug addiction expert. ECF No. 197 at 12. Experts may only offer opinions regarding topics on which they are qualified. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R.

---

[11] Davis County also points out it was barred from showing the jury that Stella told investigators Miller was bipolar and suffered from ADHD, which may have reduced her employment options. These facts admittedly undermine Plaintiffs' arguments for lost income damages, but even if they were presented to the jury, it is not obvious they would have changed the verdict. The court stands by its decision not to admit this evidence under Rule 403 due to its prejudicial effect. ECF No. 152 at 6-7.

Evid. 702) (en banc) ("[T]he district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."). The court declines to find that its previous ruling limiting Hoffman's testimony was erroneous.

Third, the County requests a new trial because the court prejudicially eliminated an instruction regarding "net accumulations" that would have directed the jury to reduce Miller's loss of income damages over the course of her working life due to her payment of personal expenses and support for her surviving descendants. *See* ECF No. 219-1. The court removed this instruction because whether a jury should reduce a plaintiff's damages due to her payment of personal expenses and support for surviving descendants is a fact issue rather than a legal issue that the jury ought to be instructed on. *See* Court Tr. 821:18-20 ("I think it becomes an issue of the jury finding the facts based on the testimony, and you had an expert testify to that."). The court's decision to exclude this instruction is supported by the fact that, when reviewing the issue at trial, it could find no example of a court ever using such an instruction in a case involving a § 1983 claim. Court Tr. 821:9-11. In sum, the court holds that its handling of the loss of income issue does not warrant a new trial.

### D. DID STELLA'S STATE CONSTITUTIONAL CLAIM PREJUDICE THE JURY?

Finally, Davis County contends that it is entitled to a new trial because it was unduly prejudiced when the court submitted Stella's sole state constitutional claim to the jury. Defendants had previously submitted a Rule 50(a) motion for judgment as a matter of law on this claim, ECF No. 228, but the court declined to rule on the issue before the jury returned its verdict. The jury ultimately found Davis County liable to Stella for $2 million on this state claim. ECF No. 236 at 6. After the verdict, the court ruled on the County's Rule 50(a) motion and dismissed Stella's claim as a matter of law. ECF No. 239. Davis County now maintains that the total judgment against it was inflated because the jury was forced to consider a cause of action that was not viable.

The court is unpersuaded by this argument. While it is certainly true that the jury was exposed to Stella's non-viable claim, the County offers no reasonable explanation as to why this would inflate the compensatory damages the jury awarded to Miller's Estate. The County only contends that the court's decision to send this cause of action to the jury could have created prejudice because the jury was instructed to determine loss of consortium damages based, in part, upon Stella's life expectancy. ECF No. 243 at 74. But this argument is unpersuasive since the court would have offered a loss of consortium instruction regardless of whether it sent Stella's state constitutional claim to the jury. There is no evidence that Stella's state constitutional claim inflated the jury's verdict. If anything, it may have reduced the award on other claims. Therefore, the court finds that a new trial is not warranted.

## CONCLUSION & ORDER

For the aforementioned reasons, the court DENIES Davis County's motion for judgment as a matter of law and motion for a new trial.

DATED August 18, 2023

BY THE COURT

Jill N. Parrish
United States District Court Judge