IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CYNTHIA STELLA, and the ESTATE OF HEATHER MILLER,<br><br>                Plaintiffs,<br>v.<br><br>DAVIS COUNTY, SHERIFF TODD RICHARDSON, MARVIN ANDERSON, JAMES ONDRICEK,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER PARTIALLY GRANTING AND PARTIALLY DENYING PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES**<br><br>Case No. 1:18-cv-00002-JNP<br><br>District Judge Jill N. Parrish |

Before the court is a motion for award of attorney's fees filed by Cynthia Stella ("Stella") and the Estate of Heather Miller ("Miller") (collectively, "Plaintiffs") pursuant to 42 U.S.C. § 1988(b). ECF No. 253. For the reasons set forth below, the court GRANTS IN PART and DENIES IN PART the motion and orders Marvin Anderson ("Anderson") and Davis County (collectively, "Defendants") to pay $728,256 in attorney's fees to Plaintiffs.

## BACKGROUND

On September 27, 2022, the court entered judgment in this case following a jury trial in which Defendants Anderson and Davis County were found liable for violating Miller's rights under the Eighth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983") and Davis County was found liable for violating Miller's rights under Article I, Section 9 of the Utah Constitution. ECF No. 252. When a plaintiff prevails on a § 1983 claim, she is entitled to attorney's fees pursuant to 42 U.S.C. § 1988(b). Plaintiffs filed a motion requesting these fees on October 5, 2022. ECF No. 253. Along with their motion, Plaintiffs filed several sworn declarations in support of an award of fees, including declarations from their attorneys, Tad Draper ("Draper")

and Daniel Baczynski ("Baczynski"). ECF Nos. 253-1, 253-2. The attorney declarations detailed Draper and Baczynski's hourly rates. They also contained the attorneys' time logs for the case. Baczynski billed 732.4 hours at a rate of $400 per hour and Draper billed 768 hours at a rate of $450 per hour.[1] Based on these numbers, Plaintiffs billed a base total of $638,560, however, Plaintiffs also requested that the court apply a 19% multiplier to this amount due to their risk of loss, length of the case, and their counsels' exceptional success. The multiplier brings Plaintiffs' total attorney's fee request to $759,886.40.

## EVIDENTIARY OBJECTIONS

Plaintiffs submitted declarations and affidavits from Draper, Stella, Baczynski, and Colin King ("King") in support of their request for attorney's fees. Defendants object to the introduction of this evidence on several grounds, all of which the court now addresses in turn.[2]

## I.   ADMISSIBILITY OF UNSWORN AFFIDAVITS

Plaintiff filed two sets of declarations from Stella and Draper—one set with their motion for attorney's fees and one set with their reply memorandum. *See* ECF Nos. 253-2, 253-3, 260-1, 260-2. The only notable difference between the two sets of declarations is that the first set did not include language indicating that the declarations were sworn "under penalty of perjury" while the second set included such language. Defendants contend that the court may not consider either set of declarations because the first set was unsworn and the second set was filed late. The court does

---

[1] When calculating their billed hours, both attorneys subtracted 25 hours from their logs as an act of billing discretion. ECF No. 253 at 4.

[2] The court notes that Defendants made several objections to *arguments* made in Plaintiffs' reply memorandum. *See* ECF No. 264 at 6-7. According to DUCivR 7-1(b)(1)(B), parties may only lodge evidentiary objections to *new evidence* in sur-reply memoranda. The Utah Local Rules do not allow parties to lodge objections to *arguments* in sur-replies. DUCivR 7-1(b)(1)(B). Consequently, the court ignores all of Defendants' objections to Plaintiffs' *arguments* in their evidentiary objection memorandum. ECF No. 264 at 6-7.

not address whether the first set of declarations is admissible because Plaintiffs recognized and sought to remedy their potential error by submitting corrected declarations, but it must take up Defendants' objection that the court may not consider the second set of declarations because they were untimely filed.

The District of Utah's Local Rules state that:

> Unless otherwise provided by statute or extended by the court under Fed. R. Civ. P. 6(b), a motion for attorney's fees authorized by law must be filed and served *within 14 days* after (i) entry of a judgment; or (ii) an appeals court remand that modifies or imposes a fee award. Such motion must conform to the provisions DUCivR 7-1 of these rules. The motion must (i) state the basis for the award; (ii) specify the amount claimed; and, (iii) *be accompanied by an affidavit of counsel* setting forth the scope of the effort, the number of hours expended, the hourly rates claimed, and any other pertinent supporting information that justifies the award.

DUCivR 54-2(f) (emphasis added). Because the second set of declarations was not filed within 14 days of the entry of judgment, Defendants contend that the court must ignore them.

The court is disinclined to exclude the amended declarations merely because they were filed after the 14-day deadline. "A district court undoubtedly has discretion to sanction a party . . . for failing to comply with local or federal procedural rules." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003) (citation omitted). And trial courts have substantial discretion in choosing how to sanction a litigant for violating the local rules. *Meade v. Grubbs*, 841 F.2d 1512, 1519 (10th Cir. 1988). Courts focus on three factors when determining the degree of sanctions to apply when there is a violation: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; [and] (3) the culpability of the litigant." *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1396 (10th Cir. 1988). Sanctions should be narrowly tailored to accord with "the judicial system's strong predisposition to resolve cases on their merits." *Id*. Here, no sanctions are warranted because (1) Defendants were not prejudiced since they had access to the substance of Plaintiffs' declarations before the 14-day deadline, (2) the judicial process was

not impacted by Plaintiffs' clerical error, and (3) Plaintiffs' mistake is a small one that could have occurred at any law firm, "no matter how well run." *Id.* Thus, the court declines to disregard the amended Stella and Draper declarations because they were filed late. To do so would be "overkill."[3] *Id.*

## II.    ADMISSIBILITY OF BACZYNSKI'S DECLARATION

Defendants argue that the court should disregard paragraphs 4, 7, 8, and 9 of the Baczynski declaration, ECF No. 253-1, because they are conclusory, self-serving, and lack foundation. These paragraphs describe Baczynski's experience practicing civil rights law, his reputation with local media as an expert on medical care in Utah jails and prisons, and his observations regarding the difficulty plaintiffs experience when attempting to find representation in civil rights cases in Utah.

Defendants provide no analysis to support any of their objections. As noted by this court in its memorandum decision on summary judgment, "it is the objecting party's burden to 'make its objection clear; the trial judge need not imagine all the possible grounds for an objection.'" ECF No. 60 at 7 (citing *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 960-61 (10th Cir. 1993)). Defendants do not meet this burden. Further, even if the court were to supply Defendants' missing analysis, it would not find that these paragraphs are conclusory or lacking in foundation. Each paragraph is well evidenced by Baczynski's recollections of his personal experience.

---

[3] Defendants also briefly argue that the court should disregard the Draper declaration, in particular, because it did not "set forth the scope of the effort, [and] number of hours expended" in trying the case as required by DUCivR 54-2(f). This argument is specious. Paragraph 9 of the amended declaration clearly sets out the scope of counsels' effort on the case – "For Dan and me, this case has taken a great deal of our focus, time, resources and pre-occupation for over five years." ECF No. 260-1 at 4. Additionally, paragraph 12 affirms "that the fees requested in the Motion and time logs are both reasonable and appropriate." *Id.* Defendants contend that the court simply cannot know what "logs" Draper is attempting to incorporate by reference, but it is obvious that Draper is referring to the time logs that were attached to his original declaration. Clearly Draper's amended declaration swears to the accuracy of those billed hours and they are incorporated by reference. Thus, the amended Draper declaration meets the "evidentiary" requirements of DUCivR 54-2(f).

4

Moreover, Defendants' allegation that Baczynski's testimony is self-serving does not mean it is inadmissible. Rather, this argument goes to the weight of the evidence. Thus, the court overrules Defendants' objections to the Baczynski declaration.

### III.   ADMISSIBILITY OF DRAPER'S DECLARATION

Defendants argue that the court should disregard the entirety of Draper's declaration, ECF No. 260-1, on grounds of irrelevance because Draper did not claim that he had any experience litigating civil rights cases. The court is perplexed by this argument. While Draper admits that the present litigation is his first civil rights case, this is not grounds to exclude his declaration. Indeed, Draper's declaration contains relevant facts, such as the hours and rates required to calculate the lodestar amount. Therefore, the court overrules this objection.

### IV.   ADMISSIBILITY OF STELLA'S DECLARATION

Defendants argue the court should disregard paragraph 4 of the Stella declaration, ECF No. 253-3, because it is conclusory, self-serving, and hearsay. This paragraph details Stella's "extreme difficulty" in finding an attorney to take her case. *Id*. It also includes statements by anonymous attorneys explaining why they refused to take this case.

Stella's claim that she had difficulty locating an attorney is not, as an initial matter, conclusory. Stella testified that attorneys were unwilling to take her case based upon personal experiences that she details in paragraphs 4 and 6.[4] Additionally, Defendants' allegation that Stella's testimony is self-serving does not mean that it is inadmissible. Rather, this goes to the weight of the evidence. Finally, while Defendants are right that several statements that Stella alleges attorneys made about the viability of her claim are hearsay, the fact that each attorney she

---

[4] It is worth noting for clarity that the Stella Declaration does not contain a paragraph 5 and contains two paragraphs labeled 7. ECF No. 253-3 at 3.

spoke with did not take her case is not hearsay. Thus, the court will disregard non-sworn attorney statements explaining *why* Stella's case was turned down, but not her testimony that she had difficulty locating an attorney.

## V.    ADMISSIBILITY OF KING'S AFFIDAVIT

Defendants argue that the court should disregard paragraphs 6, 7, and 8 of the King affidavit, ECF No. 253-4, because they are conclusory and lack foundation. These paragraphs explain that King is familiar with billing rates in matters similar to the one before this court, note that it is King's experience that rates between $350 and $550 per hour are normal in such cases, state that King is familiar with Draper and Baczynski's work on this case, and recommend a rate between $450 and $550 per hour for their work.

Once more, Defendants fail to meet their burden to raise legitimate objections because they provide no analysis to support their evidentiary concerns. *See Angelo*, 11 F.3d at 960-61. Even had Defendants articulated the reasons for their objections in detail, the court would overrule each because King clearly and properly relied on his personal experience in reaching the conclusions contained within each paragraph.

## VI.    ADMISSIBILITY OF BILLING RECORDS

Finally, Defendants contend that the court should disregard the time logs attached to the Draper and Baczynski declarations because they are inadmissible summaries of the hours worked by Plaintiffs' counsel rather than contemporaneous billing records. Specifically, Defendants argue that these records are inadmissible because they are hearsay, they violate the best evidence rule, they are irrelevant, and they were prepared solely for the purpose of litigation. Each of these objections is overruled.

First, the time logs are not hearsay because their accuracy is sworn to by counsel testifying as to their own knowledge regarding the hours they worked in this matter. *See* Fed. R. Evid. 801(c).

Second, the time logs do not violate the best evidence rule as they are merely statements describing Draper and Baczynski's personal knowledge of the hours they worked. Counsel does not seek to use these time logs to describe the contents of some different original writing, thus the best evidence rule does not apply. *See* Fed. R. Evid. 1002. Third, evidence of the hours that Draper and Baczynski worked on this case is clearly relevant because it provides information necessary to compute the lodestar amount.[5] Fourth, the fact that these time logs were prepared for the purposes of litigation does not mean they are inadmissible.[6] Such a sweeping ruling excluding all such prepared evidence would make it impossible for any attorney to prevail on a motion for attorney's fees.[7] This would be an absurd result. In sum, the court rejects Defendants' objections as to counsels' time logs.

## ANALYSIS

The Civil Rights Attorney's Fees Awards Act allows prevailing parties in civil rights cases, including suits brought under 42 U.S.C. § 1983, to seek reimbursement for attorney's fees so long as those fees are reasonable. *See* 42 U.S.C. § 1988(b). Although a court's power to award such fees is discretionary, that discretion narrows once a plaintiff demonstrates that she is a "prevailing

---

[5] Insofar as Defendants argue that these logs are not relevant because they were not created contemporaneously with the work each attorney performed, the court rejects this argument. Both Draper and Baczynski swear in their declarations that notes of their billed hours were contemporaneously maintained and that the filed logs are an accurate reflection of these notes. ECF Nos. 253-1 at ¶ 12, 253-2 at ¶ 10.

[6] Insofar as Defendants argue that the logs are untrustworthy because they were prepared in anticipation of litigation, this goes to the weight of the evidence, not its admissibility.

[7] Indeed, *United States v. Miller*, the Ninth Circuit case cited by Defendants for the proposition that evidence prepared in anticipation for litigation may be excluded, only states that *business records* may be excluded where there is no evidence demonstrating their accuracy or trustworthiness, nor any testimony regarding preparation of the records. 771 F.2d 1219 (9th Cir. 1985). Such is not the case here as Draper and Baczynski testify as to their logs' preparation and both have sworn to their accuracy. Additionally, the logs are introduced not as business records but as sworn statements as to counsels' own knowledge of the hours they worked. ECF No. 260 at 4.

party." *See Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997). This is because "when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have [her] vindication of these rights eviscerated by an obligation to pay [her] attorney's reasonable fees." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

Plaintiffs must prove two elements for a successful fee request under § 1988(b): "(1) that the claimant was the 'prevailing party' in the proceeding; and (2) that the claimant's fee request is 'reasonable.'" *Robinson*, 160 F.3d at 1280 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In this case, there is no question that Miller's Estate was the prevailing party. The Estate was awarded $4.15 million in compensatory damages under § 1983 after winning two of the four federal civil rights claims brought in the case.[8] This certainly qualifies as success on a "significant issue in litigation which achieve[d] some benefit [the plaintiff] sought in bringing the suit." *Dahlem by Dahlem v. Bd. of Educ. Denver Pub. Sch.*, 901 F.2d 1508, 1511 (10th Cir. 1990). Thus, to resolve this motion, the court primarily examines the second element for a successful fee request—whether a plaintiff has established that its billing requests are "reasonable."

To determine the reasonableness of a fee request, the court begins by calculating the "lodestar amount." *Robinson*, 160 F.3d at 1281 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-65 (1983). The lodestar amount is presumed to reflect a "reasonable" fee. *Id*. It is calculated by multiplying attorney hours "reasonably expended" by an attorney's "reasonable hourly rate." *See Hensley*, 461 U.S. at 433. Plaintiffs bear the burden of demonstrating that their counsels' hours and rates are reasonable. *See Robinson*, 160 F.3d at 1281. The court now examines whether Plaintiff meets these burdens.

---

[8] Miller's Estate was awarded an additional $3.85 million on its state constitutional claim.

## I.     HOURS EXPENDED

To show that their counsel's claimed hours expended on a case are reasonable, courts require plaintiffs to provide "meticulous, contemporaneous time records" that reveal "all hours for which compensation is requested and how those hours were allotted to specific tasks." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). Plaintiffs must also make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Here, Plaintiffs submit time logs showing that Baczysnki spent 732.4 hours and Draper spent 768 hours on this case (after reducing their totals by twenty-five hours each as an exercise of billing discretion). Both attorneys swear that the hours they submitted were recorded contemporaneously with their work, and each time log includes descriptions of how counsel used their hours. ECF Nos. 253-1 at ¶ 12, 260-1 at ¶ 10. Still, Defendants lodge several complaints regarding the "reasonability" of Plaintiffs' billable hours and request that the court reduce Plaintiffs' hours for purposes of calculating the lodestar amount. Each argument is addressed in turn.

### A.  NON-COMPENSABLE TIME

Defendants argue that the court should reduce Plaintiffs' hours because their attorneys logged time for non-compensable tasks. Specifically, Defendants point out that opposing counsel impermissibly billed for the time they spent managing public relations and traveling to attend depositions and hearings. ECF No. 255 (citing *Utah International v. Dep't of Interior*, 643 F. Supp. 810, 831 n.41 (D. Utah 1986) ("hours spent on the public relations aspect of [a] case, i.e., time spent by counsel communicating with the press and other news media" are non-compensable.); *Thomas v. Board of Ed.*, 505 F. Supp. 102, 104 (N.D.N.Y., 1981) (finding that all billed hours were reasonable "except for the twenty-one hours of traveling time.").

Plaintiffs agree that the 6.7 hours Draper spent on media time is non-compensable. ECF No. 260 at n.5. But they contest that hours related to travel to and from hearings and depositions are non-compensable. The Tenth Circuit has "recognized the compensability of necessary travel time, though a trial court has discretion to apply a reduced hourly rate if the time is otherwise unproductive." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1106 (10th Cir. 2010) (citing *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990)). In accordance with this case law, the court will not reduce counsels' billed hours for travel. While the court retains the discretion to reduce counsels' hourly rate for travel, Defendants do not provide any evidence or make any argument that counsels' travel time was unproductive. As such, the court also declines to exercise it discretion to apply a reduced hourly rate for travel time.

## B. LACK OF CONTEMPORANEOUS TIME RECORDS

As previously noted, the party requesting attorney's fees must keep "contemporaneous time records" that reveal "all hours for which compensation is requested and how those hours were allotted to specific tasks." *Ramos*, 713 F.2d at 553. Defendants assert that Plaintiffs failed to comply with this requirement because the billed time Plaintiffs' counsel submitted was not recorded contemporaneously with work performed during the case. But Defendants offer no evidence or analysis to back up this allegation. Indeed, Defendants' theory is directly contradicted by Draper and Baczynski's sworn declarations that the hours in their logs were recorded contemporaneously with the work they performed and later compiled into spreadsheets. ECF Nos. 253-1 at ¶ 12, 253-2 at ¶ 10. The court will not second guess counsels' statements merely because Defendants are suspicious as to their truth.

Insofar as Defendants contend that Plaintiffs must provide the exact time records they produced contemporaneously with their work (rather than a sworn-to spreadsheet summary) the court also rejects this argument. Both the First and Second Circuits have determined that when

submitted billing is merely *based on* contemporaneous records, this "falls sufficiently within the meaning of 'contemporaneous.'" *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1161 (2d Cir. 1994); *see Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 296–97 (1st Cir. 2001).[9] While the parties provide no Tenth Circuit law directly addressing this issue, the court is persuaded by this outside authority. Thus, it will not reduce Plaintiffs' billed hours for failure to provide contemporaneous records.[10]

### C.  Hours Spent on Unsuccessful Claims

Defendants contend that Plaintiffs are not entitled to recover fees for hours expended by counsel in furthering (1) their unsuccessful claims against James Ondricek and Sheriff Todd Richardson and (2) their failed claims for punitive damages. According to Defendants, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved,'" therefore the court cannot award attorney's fees for hours corresponding to these efforts. *Hensley*, 461 U.S. at 435 (citing *Davis v. Cty. of Los Angeles*, No. 73-63-WPG, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974)).

Defendants misread the case law regarding this issue. In the Tenth Circuit, district courts may not reduce an "attorney's fee request if successful and unsuccessful claims are based on a 'common core of facts.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995). Indeed, the

---

[9] Defendants submit a Tenth Circuit case holding that "it would not be an abuse of discretion for a district court to require contemporaneous time records." *Carter v. Sedgwick Cty., Kan.*, 929 F.2d 1501, 1506 (10th Cir. 1991). But this case neither establishes how the Tenth Circuit defines "contemporaneous time records," nor requires a district court to dive into the roughest versions of an attorney's records. Moreover, the case also states that it was never the Tenth Circuit's intention to "require contemporaneous records . . . as a per se absolute requirement." *Id*. at 1506.

[10] The court recommends, however, that all parties adopt reliable methods for tracking their hours. For instance, storing paper with handwritten hours on looseleaf paper in a folder is prone to produce errors. And in a multi-year case, this practice can heighten the risk that accurate contemporaneous billing records will be lost.

Supreme Court has stated that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Here, Plaintiffs' claims all arose from the same common core of facts—Miller's injury, Defendants' insufficient medical care, and Miller's resulting death. Though Plaintiffs did not prevail on all claims related to these facts, they are still entitled to attorney's fees for the hours properly billed on this case because their unsuccessful claims are closely tied to their successful claims.

### D.  EXCESSIVE HOURS

Defendants argue that Plaintiffs billed excessive hours for certain tasks that should have taken less time to complete. Specifically, they assert that, because "[t]his was not a complicated case" and it did not "present new and/or novel questions of law," the total 1,500.4 hours of work billed by Plaintiffs was unreasonable. ECF No. 255 at 7. As examples of excessive billing, Defendants cite the fact that Plaintiffs' counsel billed half-an-hour for reviewing notices of appearance and asked to be compensated for calling Stella on the anniversary of Miller's death. They also submit copies of Plaintiffs' counsels' time logs with yellow highlighting to point out entries they believe are excessive. ECF Nos. 255-1, 255-2.

As an initial matter, the court declines to reduce Plaintiffs' requested hours simply because this case was not complex enough to warrant 1,500.4 hours of legal work. This dispute lasted five years, involved a motion for summary judgment, went up to the Tenth Circuit on interlocutory appeal, required extensive pre-trial motion practice, and ended in a jury trial. The supposition that this case was straightforward is, frankly, absurd.

Still, upon detailed review of Defendants' highlighted version of the time logs, the court recognizes that Draper over-billed in a few isolated instances. First, the court agrees that Draper should not have billed 0.6 hours solely to call his client on the anniversary of Miller's death on

December 10, 2021. While laudable from a human perspective, this billing is excessive and will be reduced to zero. Second, the court agrees that billing 0.5 hours to review notices of appearance between March 9, 2018 and March 13, 2018 was excessive. Notices of appearance are simple filings that do not require substantive review. The court reduces this billed time by 0.4 hours. Third, Draper billed two blocks of time—11.7 hours and 15.1 hours—for trial on July 20, 2022. These hours are an impossibility as they add up to more than 24 hours. The court suspects that they were entered as a clerical mistake. At hearing, Draper confirmed that this was likely the case. Because it is the movant's burden to establish that submitted times are accurate and because Plaintiffs waived these hours at hearing, the court subtracts 26.8 hours from Draper's total hours. Fourth, on September 20, 2021, Draper billed a second set of impossible hours—27.5 hours to be exact. This was likely another clerical error, as admitted by Draper. Once more, the court subtracts all of these hours. Fifth, Draper billed two blocks of 8.4 hours for trial preparation on September 21, 2021. In total, this added up to a heavy 16.8 hours of work on a single day. The court highly suspects that Draper accidentally billed the same hours twice because both blocks of time are identical. As a result, it subtracts another 8.4 hours from Draper's total.[11]

Beyond these reductions, the court did not identify any other obvious instances of excessive billing. This is the case because Defendants' highlighting of opposing counsels' time logs was fundamentally unhelpful. Indeed, many of Plaintiffs' counsel's time entries were highlighted with no explanation as to why. Defendants seemed to have expected the court to construct arguments

---

[11] At hearing, Defendants also pointed out that on August 20, 2018, Draper billed for a total of 15.7 hours. They believe this was too many hours for a realistic day. Draper stood by this billing when questioned by the court and stated, in substance, that his hours before taking depositions were long. It is also important to note that Draper did not block bill for these hours. The 15.7 hours in question were split between five separate tasks. Thus, the court does not subtract these hours from Draper's total.

on their behalf. With the exception of the few clear time inconsistencies described above, which could not be overlooked, the court declines to make arguments for Defendants that they did not make themselves. In sum, the court finds that Baczynski did not bill excessive hours and that Draper excessively billed 63.7 hours.

### E. BLOCK BILLING

Defendants contend that the court should reduce Plaintiffs' billed hours because of their rampant use of block billing. "So-called block billing consists of attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of time each task took. Use of this rather imprecise practice may be strong evidence that a claimed amount of fees is excessive." *Flying J Inc. v. Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009). District courts have discretion to reduce hours when they find that "block billing indicates an unreasonable claim." *Id*.

Defendants submitted copies of Plaintiffs' counsels' time logs with green highlighting to indicate potential instances of block billing. ECF No. 255-1, 255-2. After reviewing the highlighted logs, the court declines to reduce Plaintiffs' hours due to this practice. Plaintiffs labeled most of the hours that Defendants indicate could qualify as block billing with sufficient specificity. Those few instances of billed time that Plaintiffs did not label with specificity and that do qualify as block billing were entirely billed by Draper and are almost universally described as "trial prep" or "deposition preparation," often with an additional descriptor. The court recognizes that it is difficult to bill for trial and deposition preparation hours with specificity because attorneys do not necessarily prepare for these events by completing discrete tasks that are easily entered into a spreadsheet. Even if the court believed that Draper could have described his work in more detail, it realizes that preparing for a deposition or trial is time-intensive work. Thus, there is little reason to suspect that Draper inflated his hours and could have completed his work diligently while billing

14

substantially less time. In sum, excessive block billing was not evident in counsels' time logs, so the court declines to reduce Plaintiffs' requested hours for this reason.

### F. DUPLICATION OF SERVICES

Defendants argue that the court ought to reduce opposing counsels' hours because they billed for the duplication of services. Specifically, they contend that Baczynski overbilled when he submitted hours for depositions conducted by Draper and that Draper overbilled when he submitted hours for a summary judgment hearing handled by Baczynski.

In the Tenth Circuit, one "factor the court should examine in determining the reasonableness of hours expended is the potential duplication of services." *Case v. Unified School Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (quoting *Ramos*, 713 F.2d at 554). "For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." *Id*. But while courts should reduce time for truly duplicative work, "[t]ime spent by two attorneys on the same general task is not . . . per se duplicative. Careful preparation often requires collaboration and rehearsal . . . ." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1077 (10th Cir. 1998). Indeed, district courts in this Circuit have held that it is not always unreasonable to have two attorneys bill for time spent at a deposition or hearing. *Nieto v. Kapoor*, No. CIV 96-1225 MV/JHG, 2001 WL 37125028, at *10 (D.N.M. June 12, 2001). The reasonability of this practice turns on whether a plaintiff can "justify the presence of more than one lawyer. . . ." *Kelley v. City of Albuquerque*, No. CIV. 03-507 JBACT, 2005 WL 3663515, at *7 (D.N.M. Oct. 24, 2005).

Here, Plaintiffs can justify the presence of two attorneys at depositions and hearings, as well as the work that each attorney performed to prepare for these events. Plaintiffs explain that while Baczynski did not ask questions during the depositions in this matter, he took notes during Draper's interactions with witnesses so he could confer about potential questions during breaks.

Similarly, Plaintiffs contend that Draper contributed to the summary judgment oral argument by taking notes and conferring with Baczynski on different points to raise during the hearing. Defendants do not provide any analysis indicating that either of these practices was unnecessary. Ultimately, the court will not reduce Plaintiffs hours for duplication of services because it finds that Plaintiffs have provided sufficient justification for billing the time of two attorneys during depositions and the summary judgment hearing.

### G. WORK RESULTING FROM PLAINTIFFS' FAILURE TO COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE

Defendants finally argue that the court should reduce Plaintiffs' fee award by the number of hours their counsel spent responding to Defendants' motion in limine regarding Plaintiffs' failure to disclose their damages evidence, ECF No. 86, and responding to the ensuing court-ordered discovery. Defendants contend that opposing this motion in limine was a violation of the Federal Rules of Civil Procedure. The court declines to reduce the attorney's fee award for this reason. Defendants offer no case law to support a reduction in fees based on what amounts to a violation of discovery rules. Further, the court never found that Plaintiffs violated the Federal Rules of Civil Procedure by simply arguing against the disclosure of a certain class of evidence. Indeed, the court's order on this issue only partially granted Defendants' motion in limine. ECF No. 148.

### H. TOTAL REDUCTION OF HOURS

After reviewing each of Defendants' arguments for reducing Plaintiffs' requested hours, the court concludes that, for purposes of this motion, Draper logged 70.4 excessive hours and Baczynski logged no excessive hours. Although Draper and Baczynski already reduced their billing by 25 hours as an act of discretion, the court declines to take this into account for its own reduction. After subtracting excessive hours from Plaintiffs' *requested* hours, the court ultimately

16

finds that it must calculate the lodestar amount using reasonable hour totals of 732.4 hours for Baczynski and 697.6 hours for Draper.

## II.   HOURLY RATE

In order to calculate the lodestar amount, this court must set reasonable fee rates for the prevailing attorneys. "[R]easonable fees under § 1988 are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). As with calculating reasonable hours, the burden is on the moving parties to establish reasonable hourly rates. *Robinson*, 160 F.3d at 1281. Plaintiffs argue that hourly rates of $450 for Draper and $400 for Baczynski are reasonable for civil rights attorneys of similar experience practicing in the Salt Lake City metropolitan area. To support these proposed rates, Draper and Baczynski offer declarations explaining their typical rates and background in practicing law. ECF Nos. 253-1, 260-1. Plaintiffs also submit a declaration by Colin King, a practicing civil rights attorney in the District of Utah, which states that $450-$550 per hour (more than what is proposed by Plaintiffs) is a reasonable billing rate for this case. ECF No. 253-4. Finally, Plaintiffs cite case law from the District of Utah finding similar rates reasonable. ECF No. 253 at 4-5 (citing *M.D. v. Anthem Health Plans of Kentucky*, No. 217-CV-00675-JNP-CMR, 2020 WL 1369410, at *3 (D. Utah Mar. 23, 2020) (approving a rate of $450); *Saenz Mencia v. Allred*, No. 2:11-CV-200, 2017 WL 4480836, at *4 (D. Utah Oct. 6, 2017) (approving a rate of $450); *Mglej v. Gardner*, No. 2:13-CV-00713-CW, 2022 WL 2065588, at *3 (D. Utah June 8, 2022) (approving rates in a range of $330-$425); *Morrison v. Express Recovery Servs., Inc.*, No. 1:17-CV-51, 2020 WL 3791893, at *3 (D. Utah July 7, 2020) (approving rates in a range of $350-$450)).

Defendants respond to Plaintiffs' evidence with four arguments. First, they assert that Plaintiffs did not provide enough evidence to establish that their proposed rates were reasonable. Defendants specifically complain that Plaintiffs did not submit resumes for their attorneys and that

portions of the declarations they submitted are inadmissible. These arguments are unpersuasive. Plaintiffs' counsel provided sufficient descriptions of their legal experience in their declarations and nearly all of the information contained in Plaintiffs' declarations is admissible for the reasons detailed above.

Second, Defendants argue that Plaintiffs' attorneys overstate their experience in their declarations. To support this contention, Defendants submit that they searched WestLaw for state and federal cases in which Plaintiffs' counsel had participated and found that Baczynski has appeared in just twelve cases and Draper has appeared in only seven cases. Putting aside the fact that searching the incomplete WestLaw database is not a reliable method for determining whether an attorney has experience practicing law, the court performed the same search and found that WestLaw contains records of Baczynski and Draper's involvement in substantially more cases than represented by Defendants. It is clear to the court that WestLaw and Plaintiffs' counsels' declarations are not in conflict.[12]

Third, Defendants contend that the cases cited by Plaintiff to show that courts in this District have previously awarded similar rates are not analogous to the present dispute because the plaintiffs in those cases, unlike this one, "made the necessary showing to justify such an award." ECF No. 255 at n.31. This argument is unpersuasive because Plaintiffs, here, have clearly shown that they are entitled to attorney's fees. Defendants also point out that only one of the cases cited by Plaintiffs is a civil rights case. *See Mglej*, 2022 WL 2065588. This argument has some merit, but Defendants still fail to explain why this court should disregard the fact that this civil rights case found that an hourly rate of $425 was reasonable.

---

[12] The court is not required to address the question of whether a WestLaw search with no supporting sworn affidavit is admissible for purposes of this proceeding because this evidence does not change the outcome of the motion.

Fourth, at hearing, Defendants' counsel stated that it was his experience that in Salt Lake City billing rates are much lower than Plaintiffs claim in their declarations. This evidence was not sworn under oath, nor does the court believe that defense counsel is fully privy to the billing practices of plaintiffs' attorneys in the region. As such, the court disregards defense counsel's representations regarding reasonable billing rates.

Because Plaintiffs provide substantial evidence to support their proposed rates and Defendants do little to contest these numbers, the court approves rates of $450 per hour for Draper and $400 per hour for Baczynski.

## III.   FEE ENHANCEMENT

After the lodestar has been calculated, the court has discretion to increase or decrease the reasonable attorney's fee amount based on several factors. *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1356 (10th Cir. 1992). While enhancements beyond the lodestar amount are certainly available on a motion for attorney's fees, courts have traditionally "viewed them with caution." *Id.* (citing *Ramos*, 713 F.2d at 558). Here, Plaintiffs argue for a 19% enhancement based on the riskiness of this litigation, costly delays in its proceedings, and the excellent results counsel obtained at trial. The court examines these reasons for an upward departure from the lodestar amount and concludes that a fee enhancement is warranted.

In the Tenth Circuit, "if the trial court specifically finds that there was a real risk-of-not-prevailing issue in the case, an upward adjustment of the lodestar may be made." *Id.* at 1357 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 730 n.11 (1986)). Still, courts should only enhance attorney's fees in "exceptional cases." *Id.* at 1360. An "exceptional case" is one where "prior to the litigation, the attorney for the prevailing party was confronted with a 'real risk of not prevailing.'" *Id.* (citing *Delaware Valley*, 483 U.S. at 729-30). The court analyzes the risk of not prevailing by (i) considering the law in effect at the time the suit

was filed and the extent to which the law was unsettled, and (ii) considering the extent to which the outcome of the case depended on resolution of disputed material facts. *Id*. "Once a real risk of not prevailing has been demonstrated, the party seeking to enhance the lodestar must also come forward with evidence that, absent an enhancement, 'the plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Id*. (citing *Delaware Valley*, 483 U.S. at 729-31). Plaintiffs can make such a showing by simply providing evidence "that [they] encountered actual difficulty in securing counsel." *Id*. (citing *Delaware Valley*, 483 U.S. at 731 n.12).

Here, Plaintiffs maintain that this case presented significant risk of loss and non-payment to counsel because it revolved around several disputes of material fact. Specifically, Plaintiffs point out that they were tasked with carrying a particularly heavy burden because they needed to prove that a government official acted with "deliberate indifference" and were required to overcome qualified immunity. ECF No. 253 at 6 (citing *Keith v. Koerner*, No. 11-CV-2281-DDC-JPO, 2015 WL 4920283, at *12 (D. Kan. Aug. 18, 2015), *aff'd in part, rev'd in part*, 843 F.3d 833 (10th Cir. 2016) ("plaintiff has failed to meet her 'heavy' burden to show that Koerner violated her constitutional rights."); *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1140 (D.N.M. 2012) ("the qualified immunity test is a very high burden for the plaintiff.")).

Having established that there was a real risk of loss, Plaintiffs offer evidence that Stella experienced substantial difficulties obtaining counsel. Stella's declaration states that she was unable to find counsel after visits with several attorneys. ECF No. 253-3 at ¶4. The declaration also maintains that one attorney even withdrew from the case after agreeing to represent Stella because of time considerations and financial risk. *Id*. at ¶6. Separately, Baczynski's declaration also explains that Stella had difficulty finding counsel to take her case. ECF No. 253-1 at ¶9. In

Baczynski's experience, this was not unusual because "[t]here are few attorneys in Utah who specialize and are willing to take civil rights cases. It is particularly difficult to find representation where the potential plaintiff was incarcerated." *Id*. Ultimately, this evidence is enough to meet the burden for obtaining a fee enhancement.[13]

Even if Plaintiffs did not prevail on their argument for an enhancement based on risk of loss, they could still win an enhancement by showing that a substantial delay in the resolution of these proceedings merits a deviation from the lodestar amount. As the Tenth Circuit has explained,

> Plainly, expenses of doing business continue during litigation and delayed payment may work a hardship on the attorney who is not compensated regularly for work completed. Similarly, compensation received years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed. To deny an attorney compensation for delay in payment in cases where the time involved in conscientious representation has been great and the litigation has been protracted would plainly run contrary to the purposes underlying the civil rights statute.

*Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990) (cleaned up). Of course, an award of enhanced fees for delay is cognizable only in "exceptional cases." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010). But the present case has dragged on longer than most. Plaintiffs filed their complaint on January 3, 2018, resolved summary judgment motions in 2019, and then waited nearly three years for trial due to Defendants' fruitless interlocutory appeal[14] and the onset of the COVID-19 Pandemic.[15] These lengthy delays, some of which were a result of Defendants' litigation strategy, are the type that justify an award of enhanced fees.

---

[13] Defendants fail to dispute that obtaining local counsel in similar civil rights cases is difficult or explained why there was minimal risk that Plaintiffs would lose this case. The court declines to construct such arguments on Defendants' behalf to protect them from a fee enhancement.

[14] The Tenth Circuit dismissed this appeal for lack of jurisdiction. ECF No. 79.

[15] Defendants argue that this delay was due more to the impact of COVID-19 than its interlocutory appeal so the court should not require it to pay additional fees. This may be true, but the Pandemic

Finally, even were Plaintiffs unable to show that they were entitled to an enhancement based on delay and risk of loss, Plaintiffs could still establish a case for enhanced fees through the excellent results that they obtained at trial. According to the Supreme Court,

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Hensley*, 461 U.S. at 435. Here, Plaintiffs' counsel clearly obtained excellent results as Plaintiffs appear to have won the largest civil rights verdict ever in the District of Utah. Upon consideration of the riskiness of this litigation, the costly delays in proceedings, and the excellent results counsel obtained at trial, the court exercises its discretion to grant an upward deviation from the lodestar amount.

When courts elect to award an enhancement, they must decide the amount of deviation from the lodestar "using a method that is reasonable and objective." *Perdue*, 559 U.S. at 555. Here, Plaintiffs propose that the court use the rate of inflation between the commencement of the case and "date of payout" to determine this amount. ECF No. 253 at 8. It is unclear what Plaintiffs mean by "the date of payout," but the court believes that the date of the filing of this motion serves as a suitable replacement. Using the inflation rate during the case is a reasonable and objective method to set the enhancement percentage considering that "compensation received years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed."[16] *Smith*, 921 F.2d at 1122 (10th Cir. 1990) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989)) (describing potential grounds for upholding a district

---

only accounts for one year of the more than four and a half years it took for this court to enter judgment.

[16] The court notes that this enhancement covers the lodestar increase resulting from the risk of the case, delay in judgment, and excellent outcome.

court's decision to enhance attorney's fees to account for delay in payment). The court finds that 20% reflects the inflation rate from the time of the complaint's filing to filing of the present motion.[17] Thus, the court will apply a 20% multiplier to the lodestar amount when calculating the attorney's fees that Defendants must pay to Miller's Estate.

## CONCLUSION & ORDER

After extensive review of the briefing on this motion, the court concludes that Draper is entitled to attorney's fees for 697.6 hours of work at a rate of $450 per hour and Baczynski is entitled to attorney's fees for 732.4 hours of work at a rate of $400 per hour. The court also decides to enhance each attorney's fee award by 20%. When total attorney fees are calculate using those numbers, the court finds that Draper is owed $376,704 and Baczynski is owed $351,552. Thus, the court GRANTS IN PART and DENIES IN PART Plaintiffs' motion. It reduces Plaintiffs' requested award and ORDERS Defendants to pay Miller's Estate $728,256 in attorney's fees.

Additionally, the court ORDERS Plaintiffs to submit briefing on any supplementary attorney's fees they wish to request for any work performed on post-trial motions that was not reflected in the present motion for attorney's fees. Plaintiffs shall have 30 days to file such a request for fees. Plaintiffs and Defendants are each limited to five pages of briefing. Plaintiffs need not submit a reply brief.

---

[17] The U.S. Bureau of Labor Statistics calculates that a dollar in January 2018 has roughly the equivalent buying power as $1.20 in October 2022. U.S. *Bureau of Labor Statistics CPI Inflation Calculator*, https://www.bls.gov/data/inflation_calculator.htm (last visited August 18, 2023). This is slightly higher than Plaintiffs' requested free enhancement.

DATED August 18, 2023

BY THE COURT

Jill N. Parrish
United States District Court Judge